**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **CHARLES CRANFIELD,** individually and on behalf of all others similarly situated, | ) ) ) | **CASE NO.1:16CV1273** |
| Plaintiff, | ) ) | **JUDGE CHRISTOPHER A. BOYKO** |
| vs. | ) ) | |
| **STATE FARM FIRE & CASUALTY COMPANY,** | ) ) ) | **OPINION AND ORDER** |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter comes before the Court following Defendant State Farm Fire & Casualty Company's ("State Farm") Motion to Dismiss with prejudice (ECF DKT # 8) Plaintiff Charles Cranfield's class action lawsuit. (ECF DKT # 1, Ex. 1). For the following reasons, the Court grants this motion.

**Procedural Background**

On April 22, 2016, Cranfield filed a class action lawsuit alleging one count of Breach of Contract against State Farm with the Cuyahoga County Court of Common Pleas. (ECF DKT # 1,

1

Ex. 1). State Farm gave notice of removal to the Northern District of Ohio. (ECF DKT # 1). State Farm then moved the Court to certify a question to the Supreme Court of Ohio clarifying whether Ohio law requires insurers to exclude labor costs from depreciation calculations when determining the actual cash value ("ACV") of damaged property. (ECF DKT # 7). State Farm also moved to dismiss the case with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF DKT # 8). Cranfield opposed the Motion to Dismiss (ECF DKT # 10) and the Motion to Certify a Question to the Supreme Court of Ohio. (ECF DKT # 11). State Farm filed replies to both motions. (ECF DKT # 13; ECF DKT # 14). On December 2, 2016, this Court ordered State Farm's question sent to the Supreme Court of Ohio (ECF DKT # 18), and dismissed the case. (ECF DKT # 19). On February 22, 2017, the Supreme Court of Ohio declined to certify the question (ECF DKT # 23, Ex. 1), and Cranfield motioned to reopen the case in federal court. (ECF DKT # 22).

**Factual Background**

Cranfield's home was damaged by a storm on October 14, 2014 and he submitted a claim to State Farm requesting coverage. (ECF DKT # 1, Ex. 1 at 4). An adjuster inspected the damage and an estimate for repair was sent to Cranfield. (ECF DKT # 1, Ex. 1 at 5). The total estimated cost to repair the damage, the replacement cost value, was $4,044.86. (ECF DKT # 1, Ex. 1 at 14). State Farm calculated the depreciation amount at issue in this case to be $1,348.57. (ECF DKT 1, Ex. 1 at 14). It subtracted this amount and Cranfield's deductible of $1,854.00 from the replacement cost value to arrive at a Net ACV of $842.29, which Cranfield received in two payments. (ECF DKT #1, Ex. 1 at 14).

Cranfield's policy had a two-step loss settlement provision which provided that State

Farm would pay the ACV at the time of loss. (ECF DKT # 8, Ex.2 at 17) ("(1) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property . . . ."). Once the repair was completed, State Farm would pay the additional amount that the policy owner actually spent. (ECF DKT # 8, Ex. 2 at 17 ) ("(2) when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property . . . .").

Cranfield takes issue with the manner in which State Farm calculated ACV. (ECF DKT # 1, Ex. 1 at 6). He claims that its inclusion of labor along with materials in the depreciation calculation resulted in an ACV payment that was less than he was contractually entitled. (ECF DKT # 1, Ex. 1 at 6).

## Law and Analysis

1.  **Legal Standard**

    a.  **Motion to Dismiss**

    A complaint may be dismissed if the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). If the complaint contains insufficient, speculative factual allegations, or states a claim that is implausible on its face, it should be dismissed. *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept the factual allegations in the complaint as true, and construe the complaint in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Hill v. Blue Cross and Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005).

    b.  **Application of Ohio Law**

    When federal jurisdiction is based upon diversity, courts apply the law of the forum state.

*Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Ala. Farmers Co-op. v. Jordan*, 440 F. App'x 463, 465 (6th Cir. 2011).  When the state's highest court has not weighed in on an issue, lower court decisions are persuasive, but not controlling. *King v. Order of United Commercial Travelers of America*, 333 U.S. 153, 160–61 (1948); *Honeywell Int'l, Inc. v. Lutz Roofing Co.*, 433 F. App'x 399, 405 (6th Cir. 2011).

**2.     No Ambiguity Exists in the Contract**

Generally, courts examine insurance contracts as a whole and presume that the parties' intent can be construed based on the language that they used. *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003); *Kelly v. Med. Life Ins. Co.*, 509 N.E.2d 411, 413 (Ohio 1987). However, when confronted with allegations of ambiguity, courts should objectively and thoroughly examine contracts to attempt to determine their meaning. *State v. Porterfield*, 829 N.E.2d 690, 692 (Ohio 2005).  The absence of definitions does not necessarily make terms ambiguous. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 652 N.E.2d 684, 686 (Ohio 1995).  Instead, courts must give undefined terms their plain and ordinary meaning unless it results in absurdity, or unless another meaning is "'clearly evidenced from the face or overall contents' of the agreement." *Sunoco, Inc. v. Toledo Edison Co.*, 953 N.E.2d 285, 292–93 (Ohio 2011) (quoting *Alexander v. Buckeye Pipe Line Co.*, 374 N.E.2d 146 (Ohio 1978) (paragraph two of the syllabus)); *Miller v. Marrocco*, 504 N.E.2d 67, 69 (Ohio 1986).  Courts also examine Ohio case law involving undefined terms. *Auto-Owners Ins. Co. v. Merillat*, 854 N.E.2d 513, 517 (Ohio Ct. App. 2006).

Ambiguity exists when a term is subject to more than one reasonable interpretation. *King v. Nationwide Ins. Co.*, 519 N.E.2d 1380, 1383 (Ohio 1988); *Buckeye Union Ins. Co. v. Price*

313 N.E.2d 844, 846 (Ohio 1974). Ambiguous provisions "will be construed strictly against the insurer and liberally in favor of the insured." *King*, 519 N.E.2d at 1383. However, courts cannot create ambiguity if none exists. *Lager v. Miller-Gonzalez*, 896 N.E.2d 666, 669 (Ohio 2008); *Alexander v. Buckeye Pipe Line Co.*, 374 N.E.2d 146, 150 (Ohio 1978).

      a.      **Plain Meaning Analysis of ACV**

To determine whether State Farm's depreciation calculation breached the contract, the Court examines the term ACV, which is undefined within the policy. (ECF DKT #1, Ex. 1 at 5). Giving the wording in the policy its natural and reasonable construction, ACV is not ambiguous.

"ACV" has been defined as "[r]eplacement cost minus normal depreciation" or fair market value. Black's Law Dictionary (10th ed. 2014). Either of these definitions could fit within the contract clause without resulting in absurdity. In fact, in the estimate provided to Cranfield that was included with the Complaint, State Farm defined "Net ACV" in a similar manner. (ECF DKT # 1, Ex. 1 at 13) ("The repair or replacement cost of the damaged part of the property less *depreciation* and *deductible*.") (emphasis in original).

Cranfield seeks to limit the definition of ACV to exclude labor from depreciation. However, there is nothing within the text of the contract to indicate that this was the intent of the parties at the time that the contract was formed. Further, the plain meaning of depreciation is inclusive of labor. The ordinary meaning of "depreciation" has been defined as "[a] reduction in the value or price of something; specif., a decline in an asset's value because of use, wear, obsolescence, or age." Black's Law Dictionary (10th ed. 2014). A "depreciation method" is "[a] set formula used in estimating an asset's use, wear, or obsolescence over the asset's useful life or some portion thereof." *Id.* As evidenced by *Black's Law Dictionary*, depreciation commonly

5

focuses on the value of the whole product, rather than the component parts. *Graves v. Am. Family Mut. Ins. Co.*, 686 F. App'x 536, 540 (10th Cir. 2017) (noting that *Black's Law Dictionary* outlines ten depreciation methods that all "focus on the asset itself and various approaches to determining its value as a whole."). Therefore, as used in the policy, ACV cannot reasonably be interpreted to exclude labor from a depreciation calculation.

Ambiguity is also determined by "reference to the language itself, the specific context in which that language is used, and the broader context of the [contract] as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997); *McCarthy v. Bronson*, 500 U.S. 136, 139 (1991). Placing the term depreciation within the definition of ACV as used in the contract at issue, it is clear that depreciation is intended to include labor as well as materials. The property that the contract insures is Cranfield's home. The policy does not separately insure the labor and building materials, but the sum total of these parts. *See, e.g., Redcorn v. State Farm Fire & Cas. Co.*, 55 P.3d 1017, 1021 (Okla. 2002) ("[The Plaintiff] insured a roof surface, not two components, material and labor. He did not pay for a hybrid policy of actual cash value for roofing materials and replacement costs for labor."). Because the Court cannot create an ambiguity when none exists, the Court finds that the term ACV is unambiguous and that State Farm's inclusion of labor in depreciation did not breach the contract. *Shifrin v. Forest City Enters.*, 597 N.E.2d 499, 501 (Ohio 1992) ([C]ourts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties.").

b.  **Ohio Case Law Analysis of ACV**

When contractual terms are undefined, courts also look to Ohio case law to determine their meaning. *Hewitt v. L. E. Myers Co.*, 981 N.E.2d 795, 800 (Ohio 2012) (reviewing case law

6

interpreting the phrase at issue); *Shear v. W. Am. Ins. Co.*, 464 N.E.2d 545, 548–49(Ohio 1984). Here, support also exists for finding ACV is unambiguous. The term ACV has been used in Ohio insurance case law for over 150 years. *See, e.g.,Good v. Buckeye Mut. Fire Ins. Co.*, 2 N.E. 420, 433 (Ohio 1885); *Ashland Mut. Fire Ins. Co. v. Housinger*, 10 Ohio St. 10,12 (Ohio 1859). Like *Black's Law Dictionary*, Ohio law has defined ACV to mean either the market value of the property at the time of the loss or the cost of repair or replacement less depreciation for age and condition. *Florea v. Nationwide Mut. Fire Ins. Co.*, No. 7908, 1983 WL 5030, at *3 (Ohio Ct. App. Jan. 28, 1983). Additionally, the exact same language found in the policy at issue has been determined to be clear and unambiguous by an Ohio appellate court. *Jenkins v. State Farm Fire & Cas. Co.*, No. 12-CA-5, 2012 WL 6681882, at *4 (Ohio Ct. App. Dec. 20, 2012) ("[T]he policy issued to appellant clearly and unambiguously provided that appellee would pay the actual cash value at the time of the loss to the damaged property . . . ."). While persuasive authority, these appellate court decisions lend support to a clear and unambiguous finding.

  **c. Analysis of Ohio Administrative Code Definition of ACV**

An analysis of the Ohio Administrative Code (OAC) also supports a clear and unambiguous definition of ACV. The OAC, in relevant part, states that "[t]he insurer shall determine actual cash value by determining the replacement cost of property at the time of loss, including sales tax, less *any* depreciation. . . ." Ohio Admin. Code § 3901-1-54(I)(2)(a) (2018) (emphasis added). Similar to contract interpretation, Ohio courts look first to see if the language of a statute is plain, unambiguous and conveys a clear and definite meaning. *State ex rel. Jones v. Conrad*, 750 N.E.2d 583, 587 (Ohio 2001). This is true, too, for analysis of the OAC. *Union Twp.-Clermont Cty., C.I.C., v. Lamping*, 31 N.E.3d 116, 123 (Ohio Ct. App. 2015).

7

Here, the Court finds that the regulation outlining the method to determine ACV is clear and unambiguous. Further, because the regulation states "less *any* depreciation," a plain meaning analysis of ACV in this regulation requires an inclusive definition of depreciation. "Read naturally, the word 'any' has an expansive meaning . . . ." *United States v. Gonzales*, 520 U.S. 1, 5 (1997); *Wachendorf v. Shaver*, 78 N.E.2d 370, 374 (Ohio 1948) (stating that a statute "may not be restricted, constricted, qualified, narrowed or abridged"). There are no stated limitations or exclusions. Therefore, it is reasonable for the Court to interpret depreciation to include labor as well as materials. *See also Hicks v. State Farm Fire & Cas. Co.*, No. 18-5104, 2018 WL 4961391, at *16 (6th Cir. Oct. 15, 2018) (Griffin, J., dissenting) ("because the plain meaning of the ACV regulation broadly provides for any and all depreciation, it is not ambiguous and State Farm may depreciate materials and labor when calculating ACV.").

Looking at the OAC section as a whole supports this analysis. Subsection (b) states:

> [i]f the insured's interest is limited because his property has nominal or no economic value, or a value disproportionate to replacement cost less depreciation, the insurer is not required to comply with paragraph (I)(2)(a) of this rule regarding the determination of actual cash value. However, the insurer shall provide upon the insured's request, a written explanation of the basis for limiting the amount of recovery along with the amount payable under the policy.

Ohio Admin. Code § 3901-1-54(I)(2)(b) (2018). If depreciation includes labor, then it is possible that the property could eventually have nominal or no economic value. However, because of subsection (b), all is not lost for the insured. Rather, subsection (b) allows the ACV determination to be set aside, ensuring that the insured can still recover the loss.

Subsection (b) protects the insured in instances where the ACV calculation would deem property worthless. However, to exclude labor from depreciation would result in an

8

interpretation in which property would always have economic value. This would make portions of subsection (b) meaningless. One of the basic tenets of statutory construction is that a statute or regulation's drafters intended for all of its parts to have meaning. *Boley v. Goodyear Tire & Rubber Co.*, 929 N.E.2d 448, 452 (Ohio 2010) (quoting *State ex rel. Myers v. Bd. of Educ. Of rural Sch. Dist. of Spencer Twp.*, 116 N.E. 516, 517 (Ohio 1917) ("No part [of a statute] should be treated as superfluous unless that is manifestly required, and the court should avoid construction which renders a provision meaningless or inoperative.")). Since the regulation should not be interpreted to negate this subsection, depreciation necessarily includes labor.

        d.        **Persuasive Authority**

An Ohio court has weighed in on this issue. In *Ingram v. Liberty Ins. Corp.*, a trial court found ambiguity in the contract. *Ingram v. Liberty Ins. Corp.*, No. 16CVH06-5538, slip op. at 6 (Ohio Ct. Com. Pl. Mar. 13, 2018). In making this determination, the court reasoned that the Ohio legislature, administrative agencies and courts have not explicitly addressed whether depreciation includes labor costs. *Id.* at 5. The court then looked to "the policies announced in the multitude of Ohio case law concerning the contours of the insurer-insured relationship as well as the decisions of other state and federal courts on this particular issue for guidance." *Id.* After doing so, the court determined that there were at least two ways to interpret depreciation and therefore found the policy ambiguous. *Id.* at 5–6.

While this is an Ohio case, state trial court decisions are not controlling when the state's highest court has not ruled on the issue. *Comm'r v. Estate of Bosch*, 387 U.S. 456, 465 (1967); *Honeywell*, 433 F. App'x at 405. It does not appear from the opinion that the court used the plain meaning doctrine to determine whether an ambiguity exists, as is required by Ohio law.

9

*Ingram*, slip op. at 5; *see Sunoco*, 953 N.E.2d at 292. Additionally, while the court indicates that it looked to Ohio case law, no specific instances or case citations were provided to demonstrate the "policies . . . concerning the contours of the insurer-insured relationship." *Ingram*, slip op. at 5. Therefore, the perfunctory analysis provided in the opinion is unpersuasive.

Recently, the Sixth Circuit held in *Hicks v. State Farm Fire & Cas. Co.* that the ACV should be calculated by excluding labor from depreciation. *Hicks*, 2018 WL 4961391, at *1. The language of the contract at issue in *Hicks* is the same as that in the instant case. *Id.* However, the Sixth Circuit's decision is not controlling here. This Court must apply Ohio law and *Hicks* was decided using Kentucky law. Further, the *Hicks* opinion is unpublished and not binding on future Sixth Circuit or lower court decisions. *Bell v. Johnson*, 308 F.3d 594, 611 (6th Cir. 2002). As a result, *Hicks* can be distinguished from the case at hand.

Applying Kentucky law, the Sixth Circuit stated that "the State Farm policies [were] ambiguous because they [did] not define ACV but simply incorporate[d] Kentucky's ACV Regulation which does not define depreciation." *Id.* at *9. It is unclear from the decision whether Kentucky law requires undefined terms to be found ambiguous. However, under Ohio law undefined contract terms are not automatically deemed ambiguous. *Nationwide*, 652 N.E.2d at 686 (Ohio 1995). Instead, ambiguity is determined using plain meaning analysis. *Auto-Owners*, 854 N.E.2d at 517. As previously discussed, following a plain meaning analysis, State Farm's policy language is unambiguous under Ohio law.

Finding ambiguity, the Sixth Circuit then applied Kentucky's reasonable expectations doctrine, which construes ambiguous policy language in favor of the insured and "as laymen would understand it." *Hicks*, 2018 WL 4961391, at *9 (citations omitted). The court determined

10

that a layperson "could reasonably interpret the term depreciation to include only the cost of materials." *Id.* In support of this determination, the court cited *Black's Law Dictionary's* definition of "depreciation" as a reduction in value due to wear and tear, arguing that labor is not subject to wear and tear. *Id.* at *10–11.

However, as outlined above, the methods of depreciation listed in *Black's Law Dictionary* focus on the whole product, rather than the component parts. Labor's finished products are subject to wear and tear, and a reasonable insured individual should conclude that the finished product insured through his policy is subject to wear and tear. Therefore, the reasonable insured individual should conclude that labor is included in depreciation and this Court finds the Sixth Circuit's analysis unpersuasive.

The Sixth Circuit also found that depreciating labor would render a section of Kentucky's administrative code, which is substantially similar to OAC § 3901-1-54(I)(2), meaningless. *Id.* at *13. Instead, this Court finds the dissent's plain meaning analysis of Kentucky's code persuasive. The dissent argued that Kentucky law's definition of "ACV" as the "replacement cost of property at the time of the loss less depreciation, if any," lacks "any qualifying or limiting language constricting 'depreciation,'" and should be broadly defined to include labor. *Id.* at *15–16. This comports with this Court's analysis of the Ohio Administrative Code's ACV definition and with Ohio law, which prohibits the artificial limiting of statutory terms. *See, e.g., Stewart v. Vivian*, 91 N.E.3d 716, 721–22 (Ohio 2017) (finding that the legislature "did not qualify the term 'apology' with the word 'pure' or place any limitation on the meaning of the term 'apology' by specifically defining that term.").

Finally, this Court finds persuasive the current majority view among state and federal

11

courts that labor should be included in depreciation. *See In re State Farm Fire Cas. Co.*, 872 F.3d 567, 575-76 (8th Cir. 2017); *Graves*, 686 F. App'x at 540; *Riggins v. Am. Family Mut. Ins. Co.*, 281 F. Supp. 3d 785, 789 (W.D. Mo. 2017); *Basham v. United Servs. Auto. Ass'n*, No. 16-CV-03057-RBJ, 2017 WL 3217768, at *4 (D. Colo. July 28, 2017); *Ware v. Metro. Prop. & Cas. Ins. Co.*, 220 F. Supp. 3d 1288, 1291 (M.D. Ala. 2016); *Henn v. Am. Family Mut. Ins. Co.*, 894 N.W.2d 179, 190 (Neb. 2017); *Wilcox v. State Farm Fire & Cas. Co.*, 874 N.W.2d 780, 785 (Minn. 2016); *Redcorn*, 55 P.3d at 1018.

## **Conclusion**

Since no ambiguity exists in the contract and a calculation of the ACV could depreciate labor as well as materials, there is no breach of contract as a matter of law. Therefore, the Court grants State Farm's Motion to Dismiss with prejudice.

IT IS SO ORDERED.

s/ Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge

Dated: November 26, 2018