# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT CLEVELAND

| | |
|---|---|
| **CHARLES CRANFIELD, etc., et al.,** | **CASE NO. 1:16-CV-01273** |
| Plaintiffs, | **JUDGE CHRISTOPHER A. BOYKO** |
| -vs- | **PLAINTIFFS' BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVES, AND APPOINTMENT OF CLASS COUNSEL** |
| **STATE FARM FIRE & CASUALTY COMPANY,** | |
| Defendant. | |

Patrick J. Perotti, Esq. (#0005481)
DWORKEN & BERNSTEIN CO., LPA
60 South Park Place
Painesville, OH 44077
Phone: (440) 352-3391
Fax: (440) 352-3469
Email: pperotti@dworkenlaw.com

James A. DeRoche (#0055613)
GARSON JOHNSON LLC
2900 Detroit Avenue
Van Roy Building 2nd Floor
Cleveland, OH 44113
Phone: (216) 696-9330
Fax: (216) 696-8558
Email: jderoche@garson.com

R. Eric Kennedy (#0006174)
Daniel P. Goetz (#0065549)
WEISMAN, KENNEDY & BERRIS CO., L.P.A.
1600 Midland Building
101 Prospect Ave., West
Cleveland, OH 44113
Phone: (216) 781-1111
Fax: (216) 781-6747
Email: ekennedy@weismanlaw.com
Email: dgoetz@weismanlaw.com

Erik D. Peterson (PHV)
MEHR, FAIRBANKS & PETERSON
TRIAL LAWYERS, PLLC
201 West Short Street, Suite 800
Lexington, KY 40507
Telephone: 859-225-3731
Facsimile: 859-225-3830
Email: edp@austinmehr.com

Stephen G. Whetstone (#0088666)
WHETSTONE LEGAL, LLC
P.O. Box 6
2 N. Main Street, Unit 2
Thornville, Ohio 43076
Telephone: 740.974.7730
Facsimile: 614.829.307
Email: steve@whetstonelegal.com

*Counsel for Plaintiffs and the Putative Class*

i

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

FACTUAL BACKGROUND .................................................................................. 2

   I.   PLAINTIFFS' AND ADDITIONAL CLASS REPRESENTATIVES' POLICIES AND INSURANCE CLAIMS ........................................................................ 2

     A.  State Farm withheld non-material depreciation from Charles Cranfield ............... 2

     B.  State Farm withheld non-material depreciation from Condominium at Northpointe Association ........................................................................ 5

     C.  State Farm withheld non-material depreciation from Christina Ermidis. ............. 5

   II.  STATE FARM UNIFORMLY USES XACTIMATE TO CALCULATE ACV ........ 6

   III.  STATE FARM REFUNDED DEPRECIATED LABOR COSTS TO CERTAIN KENTUCKY AND ALABAMA POLICYHOLDERS ................................. 8

ARGUMENT ...................................................................................................... 10

   I.   STANDARD OF REVIEW ................................................................... 10

   II.  CLASS MEMBERSHIP IS ASCERTAINABLE ..................................... 12

   III.  THE CLASS SATISFIES THE REQUIREMENTS OF RULE 23(a). .......... 13

     A.  Numerosity Is Established. ............................................................. 13

     B.  Common Issues Of Law And Fact Abound. ...................................... 15

     C.  The Proposed Class Representatives' Claims Are Typical Of The Class' Claim. . 17

     D.  Adequacy Is Established. ................................................................ 18

   IV.  THE CLASS SATISFIES THE REQUIREMENTS OF RULE 23(b)(3). ....... 19

     A.  Common Issues of Law and Fact Predominate ................................. 19

     B.  A Class Action Is A Superior Means Of Adjudicating This Case. ......... 25

CONCLUSION ................................................................................................... 29

## **TABLE OF AUTHORITIES**

**Cases**

*Adams v. Anheuser-Busch Companies, Inc.*, 2012 WL 1058961 (S.D. Ohio 2012)..................... 11

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ................................................................. 19, 25

*American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974) ............................................. 11

*Amgem Inc. v. Conn. Ret. Plans and Trust Funds*, 133 S. Ct. 1184 (2013) ................................. 11

*Anderson v. United Financial Systems Corp.*, 281 F.R.D. 292 (N.D. Ohio 2012)....................... 22

*Arnold v. State Farm Fire and Casualty Company*, 2020 WL 6879271 (S.D. Ala. Nov. 23, 2020)
.............................................................................................................................................. passim

*Bailey v. City of Broadview Heights*, 2009 WL 10722779 (N.D. Ohio 2009) ............................ 17

*Barber Auto Sales, Inc. v. United Parcel Service Co., Inc.*, Case No. CV 06-J-4686-NE, 2009
WL 10688014 (N.D. Ala. 2009) ............................................................................................... 14

*Baughman v. State Farm Mut. Auto. Ins. Co.*, 88 Ohio St.3d 480, 727 N.E.2d 1265 (2000)....... 12

*Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008)..................................................... 21

*Butler v. Sears, Roebuck & Co.*, 727 F.3d 796 (7th Cir. 2013) ............................................ 20, 25

*Carder Buick-Olds Co., Inc. v. Reynolds & Reynolds, Inc.*, 148 Ohio App.3d 635, 775 N.E.2d
531 (2nd Dist. 2002) ................................................................................................................. 12

*Cope v. Metro. Life Ins. Co.*, 82 Ohio St.3d 426, 696 N.E.2d 1001 (1998) ................................ 12

*Copton v. Budget Rent A Car Corp.*, 197 F.R.D. 502 (N.D. Ala. 2000) ...................................... 11

*Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 100 S.Ct. 1166, (1980) ................................ 26

*Dickens v. GC Servs. Ltd. P'ship*, 706 F.App'x 529 (11th Cir. 2017)................................... 26, 27

*Disability Law Center v. Utah*, Case No. 2:15-CV-00645, 2016 WL 5396681 (D. Utah 2016).. 14

*Farmers Union Mut. Ins. Co. v. Robertson*, 370 S.W.3d 188 (Ark. 2010)................................... 29

*Fisher v. Ciba Specialty Chems. Corp.*, 238 F.R.D. 273, 300 n.61 (S.D. Ala. 2006) ................. 18

*Givens v. Van Devere, Inc.*, 2012 WL 4092738 (N.D. Ohio 2012)............................................. 11

*Grayer v. Kennametal Inc.*, 2018 WL 3640996 (N.D. Ohio 2018) ............................................. 21

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir.1992)...................................................... 18

*Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d at 455 (6th Cir. 2020) .................................. passim

*Hicks v. State Farm Fire and Cas. Co.*, 751 F.App'x. 703 (6th Cir. October 15, 2018) ....... passim

*Hicks v. State Farm Fire and Cas. Co.*, Case No. 14-CV-53, 2019 WL 846044, at *5 (E.D. Ky. Feb. 21, 2019) ........................................................................................................................ passim

*Ibe v. Jones*, 836 F3d. 516 (5th Cir. 2016) ............................................................................... 14

*In re Am. Med. Sys.*, 75 F.3d at 1082 ................................................................................... 17, 18

*In re BancorpSouth, Inc.*, 2016 WL 5714755 (6th Cir. 2016) ..................................................... 10

*In re HealthSouth*, 257 F.R.D. at 271-72 ................................................................................... 11

*In re Inter-Op Hip Prosthesis Liability Litigation*, 204 F.R.D. 330 (N.D. Ohio 2001) ............... 20

*In re Monumental Life Ins. Co.*, 365 F.3d 408 (5th Cir. 2004) ............................................. 23, 25

*In re National Prescription Opiate Litigation*, 2021 WL 320754 (N.D. Ohio 2021) .................. 13

*In re Polyurethane Foam Antitrust Litigation*, 314 F.R.D. 226 (N.D. Ohio 2014) ..................... 12

*In re Quorum Health Corporation*, 2019 WL 3949704 (6th Cir. 2019) ...................................... 11

*In re Scrap Metal Antitrust Litigation*, 2004 WL 7340436 (N.D. Ohio 2004) ............................ 17

*In re Telectronics Pacing Sys.*, 172 F.R.D. 271, 283 (S.D. Ohio 1997) ...................................... 18

*In re Whirlpool Corp. Front–Loading Washer Prods. Liab. Litig.*, 678 F.3d 409 (6th Cir.2012) 11

*In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation*, 722 F.3d 838, 850 (6th Cir. 2013) ..................................................................................................... 10, 14, 15

*In re: Whirlpool Corp. Front Loading Washer Prod. Liability Litigation*, 45 F.Supp.3d 706 (N.D. Ohio 2014) .............................................................................................................. 2

*Jones v. GEICO*, Case No. 6:17-CV-891, 2019 WL 1490703 (M.D. Fla. April 4, 2019) ............ 12

*Kendrick v. Std. Fire Ins. Co.*, 2010 U.S. Dist. LEXIS 135694 (E.D. Ky. Sep. 30, 2010) ........... 25

*Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir. 2004) ............................................. 21, 27

*Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332 (11th Cir. 1984) ................................. 17

*Lindquist v. Farmers Ins. Co.*, No. 06-59, 2008 WL 343299, at *3 (D. Ariz. Feb. 6, 2008) ....... 13

*McKeage v. TMBC*, 847 F.3d 992, 997, 1000 (8th Cir. 2017) ..................................................... 13

*Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1305 (11th Cir. 2008).............................................. 21

*Mitchell v. State Farm Fire & Casualty Company*, 954 F.3d 700 (5th Cir. 2020)............. 1, 16, 18

*Mitchell v. State Farm*, 327 F.R.D. at 560 (N.D. Miss. 2018)................................................. passim

*Moore v. Walter Coke, Inc.*, 294 F.R.D. 620 (N.D. Ala. 2013)................................................... 13

*Musial Offices, Ltd. v. Cuyahoga Cty.*, 8 N.E.3d 992 (8th Dist. 2014) ....................................... 18

*Palombaro v. Emery Federal Credit Union,* 2017 WL 3437559 (S.D. Ohio 2017) ................... 12

*Parkway Assocs., LLC v. Harleysville Mut. Ins. Co.*, 129 F.App'x 955, 962-63 (6th Cir. 2005.. 21

*Perry v. Allstate Indemnity Company*, 953 F.3d 417 (6th Cir. 2020) ......................................... 1, 8

*Phillips v. Philip Morris Companies Inc.*, 298 F.R.D. 355 (N.D. Ohio 2014) ........................... 14

*Proctor & Gamble Co. v. Rikos*, 136 S. Ct. 1493 (2016) ........................................................... 12

*Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347 (6th Cir. 2011) ................................... 20

*Rikos v. Proctor & Gamble Co.,* 799 F.3d 497 (6th Cir. 2015)................................. 12, 13, 15, 17

*Roper v. Consurve, Inc.*, 578 F.2d 1106 (5th Cir. 1978) ....................................................... 28, 29

*Roth v. GEICO Gen. Ins. Co.*, No. 16-cv-62942 (S.D. Fla. Mar. 26, 2019)................................. 28

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159 (11th Cir. 2010) ............................................................................................................................ 26

*Slade v. Progressive Security Ins. Co.*, 856 F.3d 408 (5th Cir. 2017)......................................... 12

*Smith v. Triad of Ala., LLC*, No. 14-324, 2017 WL 1044692 (M.D. Ala. Mar. 17, 2017).... passim

*Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67 (E.D.N.Y. 2004) .................................... 12

*Stuart v. State Farm Fire and Casualty Company*, 910 F.3d 371 (8th Cir. 2018)................ passim

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) ........................................................ 21

*Veneers v. Avis Budget Car Rental, LLC*, 723 F.App'x. 807 (11th Cir. 2018)............................ 12

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ..................................................... 15, 17, 19

*Whiteamire Clinic, P.A. Inc. v. Cartridge World North America, LLC*, 2019 WL 3423154 (N.D. Ohio 2019) ........................................................................................................................... 20

*Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350 (11th Cir. 2009)............................................. 29

*Willis v. Big Lots, Inc.*, 242 F.Supp.3d 634 (S.D. Ohio 2017)....................................................... 17

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012) ........................................ passim

**Other Authorities**
Newberg § 3.11 ......................................................................................................... 14

Newberg § 3.18 ......................................................................................................... 15

Newberg § 4:87 ......................................................................................................... 26

Newberg at ¶ 3:29 ..................................................................................................... 17

**Rules**
Fed. R. Civ. P. 23(a) ........................................................................................... 18, 20

Rule 25(a)(1) ............................................................................................................. 18

Rule 26 ....................................................................................................................... 18

**Regulations**
O.A.C. 3901-1-54 ........................................................................................................6

The Sixth Circuit's precedent setting ruling that Defendant State Farm Fire and Casualty Company ("State Farm") may not depreciate the cost of labor or other non-materials in determining its actual cash value ("ACV") payment obligations controls the present case. *Cranfield v. State Farm Fire & Cas. Co.*, 798 F.App'x. 929, 930 (6th Cir. 2020) ("an Ohio insurer may not deduct the cost of labor depreciation pursuant to an actual cash value insurance policy that does not expressly provide for such deductions"). The Sixth Circuit reached the identical conclusion in *Perry v. Allstate Indemnity Company,* 953 F.3d 417 (6th Cir. 2020); *see, also, Mitchell v. State Farm Fire & Casualty Company,* 954 F.3d 700 (5th Cir. 2020); *Hicks v. State Farm Fire and Cas. Co.,* 751 F.App'x. 703 (6th Cir. October 15, 2018). State Farm has lost on this issue in every state where ACV equals the cost of repair less depreciation.

And "[c]ourts in jurisdictions where labor depreciation has been found to be unlawful have uniformly found that common issues predominate in cases challenging insurers' depreciation of labor costs" and have certified classes. *Hicks v. State Farm Fire and Cas. Co.*, Case No. 14-CV-53, 2019 WL 846044, at *5 (E.D. Ky. Feb. 21, 2019), *aff'd,* 965 F.3d 452 (6th Cir. 2020). Like other courts, the Sixth Circuit has already rejected State Farm's attempt to block class certification under identical circumstances. *Hicks v. State Farm Fire and Casualty Company,* 965 F.3d 452 (6th Cir. 2020); *Mitchell v. State Farm Fire & Casualty Company,* 954 F.3d 700 (5th Cir. 2020); *Stuart v. State Farm Fire and Casualty Company,* 910 F.3d 371 (8th Cir. 2018); and *Arnold v. State Farm Fire and Casualty Company*, 2020 WL 6879271 (S.D. Ala. Nov. 23, 2020) (class certification granted), *leave to appeal denied sub. nom. State Farm Fire & Casualty Company v. Arnold,* Case No. 20-90029-E (11th Cir. January 26, 2021).

Sixth Circuit authority requires this case to be certified as a class action, defined:

All Defendant State Farm policyholders under any property policies issued by Defendant who made: (1) a structural damage claim for property located in the State of Ohio; and (2)

which resulted in an actual cash value payment from which "non-material depreciation" was withheld from the policyholder; or which should have resulted in an actual cash value payment but for the withholding of "non-material depreciation" causing the loss to drop below the applicable deductible.

    a.  In this definition, "non-material depreciation" means application of either the "depreciate removal," "depreciate non-material" and/or "depreciate O&P" option settings within Xactimate software.

    b.  The class period for the proposed class is the maximum time period as allowed by applicable law.[1]

    c.  The class excludes all claims arising under policy forms expressly permitting the "depreciation" of "labor" within the text of the policy form and any claims in which the initial actual cash value payment exhausted the applicable limits of insurance.

    d.  Excluded from the Class are: (1) all persons or entities that received payment from Defendant in the full amount of insurance shown on the declarations page; (2) Defendant and its affiliates, officers or directors; (3) members of the judiciary and their staff to whom this action is assigned; and (4) Plaintiffs' counsel.

Plaintiffs and proposed class representatives request this Court i) certify the Class, as defined above; ii) appoint Cranfield, Condominium at Northpoint Association and Christina Ermidis as class representatives; and iii) appoint Plaintiffs' counsel as Class Counsel.

## FACTUAL BACKGROUND

## I.    PLAINTIFFS' AND ADDITIONAL CLASS REPRESENTATIVES' POLICIES AND INSURANCE CLAIMS

### A.  State Farm withheld non-material depreciation from Charles Cranfield

State Farm insured Cranfield's home in Beachwood, Ohio under a standard form "Homeowners Policy," form FP-7955 (the "Cranfield Policy") that requires State Farm to "pay only the actual cash value at the time of the loss of the damaged part of the property," and once

---

[1] Cranfield filed the original complaint on April 22, 2016.  The statute of limitations for written contract is 8 years under Ohio Rev. Code 2305.06, so the class period for purposes of notice should be transactions where the ACV payment was made on or after April 22, 2008.  While Defendant has raised an affirmative defense of a shorter contractual limitation, Plaintiffs' evidence of fraudulent concealment and tolling presents a common issue for trial. *In re: Whirlpool Corp. Front Loading Washer Prod. Liability Litigation,* 45 F.Supp.3d 706, 721-23 (N.D. Ohio 2014). Cranfield presents that issue, and State Farm deposed him extensively on that issue.

repairs are completed "pay the covered additional amount … actually and necessarily spen[t] to repair or replace the damaged part of the property…." Complaint, Exhibit 2; Dkt. # 8-2, PageID # 183.(the policy forms used by State Farm in Ohio are attached as Exhibit 8, and do not materially differ, i.e., none define ACV or depreciation).

Cranfield's home was damaged by water and he submitted a claim to State Farm. State Farm determined coverage existed and calculated its ACV obligation to Cranfield by determining the cost to repair the damaged portions of home, and then subtracting depreciation.  Second Amended Compl., Exhibit 3; Dkt. # 67-3. State Farm provided Cranfield with its final Xactimate report detailing its ACV calculation, which reflected: i) replacement cost value ("RCV") of $4,044.86; ii) less depreciation of $1,348.57; and iii) the resulting net ACV of $842.29 after application of the $1,854.00 deductible. Second Amended Compl. Exhibit 3; Dkt. # 67-3.

The problem is the type of depreciation State Farm deducted.  As the Sixth Circuit noted, State Farm told its customers it would depreciate property subject to wear, tear and obsolescence. *Cranfield,* 798 F.App'x. at 929.  Instead, State Farm also depreciated non-materials that do not 'wear, tear, or become obsolete,' which lowered State Farm's ACV payments.  And to mislead its customers, State Farm lied to them about what was included in depreciation and took affirmative steps to conceal its wrongful conduct.

First, when State Farm sent the estimate to its customers, it removed the box that discloses to the customer that State Farm is taking depreciation on things other than materials. Second, State Farm affirmatively lied to its customers about what it was depreciating.  Instead of telling them the truth—that depreciation would include items that wear and tear, but also items that do not, such as labor—State Farm falsely said that depreciation would be "**Depreciation** – The decrease in the value of property over a period of time due to wear, tear, condition, and obsolescence." Second

Amended Compl., Exhibit 3; Dkt. # 67-3.  That is false, since State Farm also depreciated things that are not property, and that do not wear and tear.  "A lay person confronted with State Farm's policy could reasonably interpret the term depreciation to include only the cost of materials," *Hicks,* 751 F.App'x. 709, and State Farm took affirmative steps to state and reinforce that false perception to mislead its policyholders.

State Farm's customers had no way to know that State Farm was depreciating non-materials and subtracting it from their ACV payment.  For example, when specifically asked, State Farm representatives—from simple agents, up to corporate executives—could not tell from the paperwork State Farm provided if non-materials were depreciated and by how much. *See, e.g.*, Attached Deposition excerpts of State Farm personnel Tyler McKitterick P57-59. 61, Exh. 1b; Alice Sandvick P94:23-95:5, Exh. 1c;  Harold Walton P38:11-40:9, Exh. 1d; and Donald Vinciguerra, Exh. 1e.

The foregoing was not accomplished randomly. State Farm has thousands of customers and employed a sophisticated computer system to process claims in a uniform fashion.  State Farm used a single estimating program called Xactimate to produce a uniform estimate form it provided to insureds like Mr. Cranfield.  Tom Moss pp.14-15. State Farm treated the class members the same by surreptitiously depreciating 'non-materials' that do not wear, tear or become obsolete. Each customer received a lower ACV payment than they had the right to be paid.

For people like Cranfield, who never went back for RCV, their damage is the wrongful depreciation, plus interest from the date it was withheld to the date of judgment in their favor. Policyholders like Northpointe, who received a deficient ACV payment and later returned to State Farm and were paid RCV, are entitled to interest on the amount of wrongfully withheld

depreciation, from the date of the deficient ACV payment to the date they received the RCV payment, plus interest. *Hicks,* 965 F.3d at 463.

### B. State Farm withheld non-material depreciation from Condominium at Northpointe Association

The Condominium at Northpointe Association owns a condominium complex in Newark, Ohio (the "Complex") insured by State Farm.  A copy of the policy was attached to the Plaintiff's proposed Third Amended Complaint as Exhibit 4, Dkt. # 76-1. The Complex suffered substantial storm damage on or about April 2, 2016. Northpointe submitted a claim to State Farm and a State Farm adjuster inspected the damage to prepare an estimate of the cost to repair or replace the damage. State Farm submitted repair estimates determining that Northpoint had suffered damage in the amount of $452,594.61. Exhibit 9. State Farm reduced Northpointe's ACV payment by $209,626.09 for depreciation, and after subtracting the deductible State Farm made a $173,957.22 ACV payment to Northpointe on June 6, 2016. After Northpoint made repairs and requested State Farm pay the withheld depreciation, State Farm paid Northpointe $278,637.39 on July 25, 2016. The $278,637.39 included improperly withheld depreciation, which State Farm should have paid on June 6, 2016. Northpointe lost the interest value on that money. *Hicks,* 965 F.3d at 463.

### C. State Farm withheld non-material depreciation from Christina Ermidis.

Christina Ermidis' home in Cleveland was insured by State Farm under the identical policy form as Mr. Cranfield.  The home suffered wind damage and Ms. Ermidis submitted a claim to State Farm.  State Farm confirmed she had sustained damage due to a covered peril and a State Farm adjuster inspected the damage and submitted an estimate to repair the damage. Exhibit 2 to Plaintiff's supplemental disclosure, Dkt. # 86-2. State Farm's adjuster determined that Ermidis had suffered loss and damage of $16,126.89. *Id.* State Farm reduced Ermidis' ACV payment by

$5,334.24 for depreciation. *Id.* After subtracting the deductible of $1,000, State Farm made a $9,792.65 net ACV payment to Ermidis; less than she was entitled to receive by contract.

## II.     STATE FARM UNIFORMLY USES XACTIMATE TO CALCULATE ACV

Ohio insurance regulations require property insurers to "determine actual cash value by determining the replacement cost of property at the time of loss" and then subtracting appropriate deprecation. O.A.C. 3901-1-54. To comply with this requirement State Farm used the common estimating program called Xactimate to determine the repair cost and calculate the ACV at the time of loss. Xactimate is a computer software program for determining construction and repair costs widely used by insurance companies. Through its uniform use of Xactimate "State Farm [i]s able to calculate labor depreciation in a common, automated manner." *Hicks*, 2019 WL 846044, at *3; *Stuart*, 910 F.3d at 374.  It is the "only estimating software" that State Farm uses nationwide. *Hicks*, 2019 WL 846044, at *3; Exhibit 1a, Deposition of Tom Moss P20; Exhibit 5a, Deposition taken in *Arnold*, P65:25-67:14. Xactimate allows State Farm to apply uniform default settings to all of its estimates. Exhibit 1a, Tom Moss Depo. p. 14; Exhibit 5c, Declaration of State Farm representative Lisa O'Toole ¶ 3. State Farm has been using Xactimate to calculate the ACV of structural claims since the 1990s. Exhibit 5d, Deposition of Juan Guevera, Jr. P24:6-8; Exhibit 5b, Deposition of Lisa O'Toole P46:16-47:12.  "Using Xactimate software State Farm has exclusively used since 1990, State Farm inputs the adjuster's reconstruction cost estimate—the 'replacement cost value' or RCV—and depreciated costs for both materials and labor."  *Hicks,* 965 F.3d at 455.

Xactimate prompts an adjuster to enter data into various data fields from drop down menus, check boxes and other prompts seeking text, numbers or codes. Once the claim data is entered, the software calculates replacement cost, depreciation and actual cash values. *Id.* at ¶

15. Xactimate provides an insurer with options as to what costs to depreciate when determining ACV, reflected in this Xactimate screen shot:



*Id.* at ¶ 21; *See also Hicks,* 965 F.3d at 456-57.

As expected, the depreciation of building *materials* is undertaken by Xactimate through the "depreciate materials" function. On the other hand, the withholding of labor costs is undertaken through use of the "Depreciate non-material" and/or "depreciate removal" settings. Exh. 2, Plaintiffs' Expert Johnson at ¶¶ 19-21. Whether or not to depreciate non-material items or removal labor is independent from adjusters' determinations of the age or condition of any building component. Exh. 1b, O'Toole Deposition at 179:23-180:12.

Many insurance companies do not use the "Depreciate Non-Material" or "Depreciate Removal" settings., Many of the 70+ property insurers for which Plaintiff's expert Toby Johnson has adjusted claims do not use the "Depreciate Non-Material" or "Depreciate Removal" settings in Xactimate.  Exh. 2, Plaintiffs' Expert Johnson, at ¶ 22. State Farm admits during the proposed class period, State Farm set its Xactimate settings in Ohio to depreciate labor and other non-material costs.  Tom Moss P33:24-35:4. State Farm uniformly turned on the "Depreciate Non-material" and "Depreciate Removal" buttons. *Id*.

State Farm produced an Excel spreadsheet that provides detailed data about the insurance claims at issue here, including the amount and type of depreciation withheld when calculating ACV. That spreadsheet, bearing bates number SFCRANFIELD00005462, is being filed (by manual filing due to its size) as Exhibit 3. That spreadsheet identifies by claim number tens of

thousands of insurance claims during the class period in which State Farm depreciated non-materials when determining ACV payments. The spreadsheet contains, among other fields: claim number, replacement cost, actual cash value, net actual cash value payment, total depreciation, material depreciation, non-material depreciation, sales tax depreciation, etc. An example of the extracted data for three claims is shown on Exhibit 4.

Under the Sixth Circuit's *Cranfield* and *Perry* decisions the only items State Farm should have depreciated when calculating ACV are materials and sales tax, and so excess deprecation wrongfully taken by State Farm equals total deprecation minus material depreciation and sales tax depreciation. Those numbers are contained in the Xactimate data for each estimate. In addition, ACV can be re-calculated by simply loading the estimate into Xactimate and unchecking the boxes associated with "Depreciate Non-Material," "Depreciate Removal," and "Depreciate Overhead and Profit," re-running the estimates, and determining the difference between the two estimates. Exh. 1a, Moss Depo. p37:23-38:9; Exh. 2, Plaintiffs' Expert Johnson at ¶¶ 46-48. That is precisely what State Farm did when it refunded wrongfully withheld depreciation in Kentucky and Alabama, and can likewise be done on a class-wide basis here.

## III.   STATE FARM REFUNDED DEPRECIATED LABOR COSTS TO CERTAIN KENTUCKY AND ALABAMA POLICYHOLDERS

State Farm cannot seriously claim customers cannot be identified and remedied through a class action when State Farm did exactly that in several states. See Exhibit 6, Summary of Refund Programs. The Sixth Circuit, in affirming class certification in *Hicks*, specifically discussed the extensive labor depreciation refund program undertaken by State Farm in Kentucky. *Hicks*, 965 F.3d at 456-57. As the Sixth Circuit explained:

> For its 2015 [Kentucky] refund program, State Farm applied objective standards through its long-employed Xactimate program and readily ascertained the number of claimants to be repaid labor depreciation. Those same objective standards may

also serve as inputs for Plaintiffs' proposed class definition. State Farm had all the necessary information to identify the Kentucky claims to be refunded during the gap period, to make the simple changes to the parameters in Xactimate to calculate the ACV reimbursements for those 1,854 claimants, and to assure that labor depreciation would not be subtracted from replacement cost estimates in the future. The class is ascertainable by reference to the same objective criteria.

*Id*. at 465.

State Farm created a similar refund program in Alabama. First Xactware provided this data to State Farm in an Excel spreadsheet that identified ACV calculations made for Alabama losses where labor costs were depreciated.  Exh. 5c, O'Toole decl. at ¶4. To calculate deprecation refunds State Farm simply "re-r[a]n the estimate without application of depreciation to labor costs and determine[d] the difference between" that amount and the amount originally calculated, and then issued payments in the difference. Exh. 5c, O'Toole decl. at ¶ 8. State Farm issued supplemental payments ranging in amount from 41 cents to over $27,000. *Id*. at ¶ 13; Exh. 5g, Spreadsheet of State Farm refunds in Alabama Supplemental Payments Program.

State Farm also created a program to automatically "alert the team managers when an estimate is completed and depreciation is applied to non-material and removal items" on Alabama claims. Exh. 5e, Xactimate Procedures at pages 1-2; Exh. 1b, Depo. of O'Toole at 116:1-11. Once managers received a labor depreciation alert, if labor costs were depreciated "an adjust is necessary." Exh. 5e, Xactimate Procedures at page 1-2. To accomplish this "adjust" – the manager is directed to simply:

1. Note the Net Actual Cash Value Payment at the time of settlement.
2. Uncheck Depreciate Non-Material and/or Depreciate Removal.
3. Take the difference between the two.
4. Issue supplemental payment and document the file accordingly.

*Id*. Like the Alabama labor depreciation refund payments issued as part of State Farm's review, the manager could determine to the penny the labor depreciation to be refunded by simply

unchecking the "Depreciate Non-Material" and "Depreciate Removal" options in Xactimate, and then re-running the Xactimate calculation:



*Id*. State Farm's own process—for its Kentucky and Alabama labor depreciation refund program and to "adjust" claims for which labor was depreciated—is materially identical to Plaintiffs' expert Toby Johnson's method for calculating improper depreciation that Plaintiffs seek to recover for themselves and the Ohio class. Exh. 2, Plaintiffs' Expert Johnson, at ¶¶ 45-46.  Given State Farm's uniform claim's handling practices and computer systems nationwide, there is no basis to even suggest that the same method for calculating recovery does not apply here. Exh. 1e, Vinciguerra Depo., p. 34-36; Exh. 1a, Moss Depo., p. 13-14; and Exh. 1b, McKitterick Depo., p. 88-89.

## ARGUMENT

## I.  STANDARD OF REVIEW

"A district court has broad discretion to decide whether to certify a class."  *In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation*, 722 F.3d 838, 850 (6th Cir. 2013). To be certified under Rule 23, a putative class must satisfy each of the four requirements of Rule 23(a): numerosity; commonality; typicality; adequacy, and one of the three provisions of Rule 23(b). *In re BancorpSouth, Inc.*, 2016 WL 5714755, at *1 (6th Cir. 2016); *Hicks*, 2019 WL 846044, at *2 (E.D. Ky. 2019).

District courts should not make determinations on the merits at the class certification stage. *In re Quorum Health Corporation*, 2019 WL 3949704, at *1 (6th Cir. 2019); *In re HealthSouth*, 257 F.R.D. at 271-72. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.*, quoting *Amgem Inc. v. Conn. Ret. Plans and Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013). "[A] district court must resolve factual disputes necessary to class certification, but ... 'the court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits.'" *Givens v. Van Devere, Inc*., 2012 WL 4092738, at *5 (N.D. Ohio 2012), quoting *In re Whirlpool Corp. Front–Loading Washer Prods. Liab. Litig*., 678 F.3d 409, 417-18 (6th Cir.2012). "Courts should refrain from 'engag[ing] in free-ranging merits inquiries at the certification stage.'" *Hicks*, 2019 WL 846044, at *2, quoting *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013).

"Class certification is 'particularly appropriate' when the issues involved are common to the class as a whole, and when these issues turn on questions of law applicable in the same manner to each member of the class[]" as is the case here. *Adams v. Anheuser-Busch Companies, Inc*., 2012 WL 1058961, at *7 (S.D. Ohio 2012). In such instances, "the class action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23." *Bradshaw v. Pfizer, Inc*., 1997 WL 33446663, at *6 (N.D. Ohio 1997). "Rule 23 thus advances 'the efficiency and economy of litigation, which is a principal purpose of the procedure.'" *Id.*, quoting *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 553 (1974).

Claims involving interpretations of form contracts present "the classic case for treatment as a class action…" *Carder Buick-Olds Co., Inc. v. Reynolds & Reynolds, Inc*., 148 Ohio App.3d

635, 646 (2ⁿᵈ Dist. 2002); *Baughman v. State Farm Mut. Auto. Ins. Co.*, 88 Ohio St.3d 480 (2000) (certifying class based on uniform insurance contracts); *Cope v. Metro. Life Ins. Co.*, 82 Ohio St.3d 426 (1998) (same); *Veneers v. Avis Budget Car Rental, LLC*, 723 F.App'x. 807, 815 (11th Cir. 2018)("form contracts are ideal for class treatment."). Class certification is also appropriate for policyholder disputes involving claim payment math formulae, where an independent variable in the claim payment formula can be isolated and corrected if found to breach an insurance policy. *E.g.*, *Slade v. Progressive Security Ins. Co.*, 856 F.3d 408 (5th Cir. 2017) (allowing class of 15,000 policyholders who calculated damages by "rerunning Defendant's calculation of actual cash value but with a lawful base value"); *Jones v. GEICO*, Case No. 6:17-CV-891, 2019 WL 1490703 (M.D. Fla. April 4, 2019) (allowing class of 200,000 policyholders where insurer withheld title and tag transfer fees from actual cash value total loss auto claimants); *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 80 (E.D.N.Y. 2004) (certifying nationwide class of over 3 million policyholders where insurer withheld "betterment" from ACV auto claim payments).

## II.    CLASS MEMBERSHIP IS ASCERTAINABLE

As an initial matter, the proposed class "must be precise, objective, and presently ascertainable." *In re Polyurethane Foam Antitrust Litigation*, 314 F.R.D. 226, 235 (N.D. Ohio 2014); *Rikos v. Proctor & Gamble Co.*, 799 F.3d 497, 525 (6th Cir. 2015), *cert. denied*, *Proctor & Gamble Co. v. Rikos*, 136 S. Ct. 1493 (2016) (the putative class must be "sufficiently ascertainable"); *Palombaro v. Emery Federal Credit Union*, 2017 WL 3437559, at *3 (S.D. Ohio 2017) (class must be "adequately defined and clearly ascertainable."). For a class to be ascertainable, the "class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537–38 (6th Cir. 2012) (citation

omitted).[2] The ascertainability analysis thus begins and ends with the definition of the proposed class. *In re National Prescription Opiate Litigation*, 2021 WL 320754, at *4 (N.D. Ohio 2021).

Here, the class definition has clearly objective criteria, defining class members by: (1) geography; (2) temporal date; (3) fact of an ACV payment on structural damage property claim; (4) application of a computer program's depreciation option settings to lower that payment; (5) by policy type (excluding policies that expressly provide for non-material depreciation); and (6) circumstance (applicable limits of policy reached by ACV payment). It is "administratively feasible for the Court to determine class membership if the class is defined by reference to objective criteria, and with reasonable accuracy." *In re National Prescription Opiate Litigation*, 2021 WL 320754, at *4 (N.D. Ohio 2021); *Hicks*, 2019 WL 846044, *7-8 ("Through the application of these objective criteria, it is administratively feasible to identify class members."); *Mitchell*, 327 F.R.D. at 560-61 (N.D. Miss. 2018) (concluding, in a nearly identical labor depreciation class action, "identifying class members would be based on a highly objective process… [and] sorting and working through State Farm claim records is a feasible process by which to identify the class members."). Like in *Hicks*, "[t]he class is ascertainable by reference to the same objective criteria" State Farm has used in its labor depreciation refund programs. *Hicks*, 965 F.3d at 465. Ascertainability is established here.

---

[2] *Accord, McKeage v. TMBC*, 847 F.3d 992, 997, 1000 (8th Cir. 2017) (ascertainability requirement satisfied where manual review of individual files identified approximately 100,000 class members); *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 525-26 (6th Cir. 2015) (finding class ascertainable where it "can be discerned with reasonable accuracy using Defendants' electronic records . . . , though the process may require additional, even substantial, review of files") (emphasis omitted), *cert. denied*, 136 S. Ct. 1493 (2016); *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 540 (6th Cir. 2012); *Lindquist v. Farmers Ins. Co.*, No. 06-59, 2008 WL 343299, at *3 (D. Ariz. Feb. 6, 2008) (class ascertainable where "class members can be identified by objective criteria that are contained in the claim files maintained by Defendants").

### III.    THE CLASS SATISFIES THE REQUIREMENTS OF RULE 23(a).

### A.  Numerosity Is Established.

To satisfy Rule 23(a)(1), a class must be so numerous that joinder is impracticable. "[N]o strict numerical test exists to define numerosity under Rule 23(a)(1), substantial numbers of affected consumers are sufficient to satisfy this requirement." *In re Whirlpool Corp.*, 722 F.3d at 852.  Impracticable joinder looks not only at numbers, but also "the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Ibe v. Jones*, 836 F3d. 516, 528 (5th Cir. 2016); 1 Newberg on Class Actions 5th Ed. § 3.11 (Nov. 2018 Update) (hereafter "Newberg"). "For instance, if individual claims are small and/or class members are financially unable to fund litigation themselves, individual joinder may be practically impossible." Newberg § 3.11. The likelihood that the class includes individual members with an uncertain ability to initially fund and/or eventually recover attorneys' fees also favors a finding of impracticable joinder. *See Disability Law Center v. Utah*, Case No. 2:15-CV-00645, 2016 WL 5396681 at *4 (D. Utah 2016). "[T]he numerosity requirement is satisfied where the exact size of the class is not known, but general knowledge and common sense indicate that the class is large." *Phillips v. Philip Morris Companies Inc.*, 298 F.R.D. 355, 362 (N.D. Ohio 2014); *e.g., Mitchell*, 327 F.R.D. at 561 (making common sense numerosity finding based on State Farm's standardized policy and its default depreciation settings within Xactimate for State of Mississippi).

Here, numerosity is easily satisfied.  State Farm does not dispute there are thousands of customers who meet the class definition.  This has been confirmed by the Plaintiffs' expert and the Ohio statewide claims spreadsheets produced by State Farm.  See, Exh. 2, Plaintiffs' Expert

Johnson at ¶55; and Exh. 3, Excel Ohio Claims Spreadsheets.  (Also, based on State Farm's approach in other depreciation cases, Plaintiffs do not expect State Farm to challenge numerosity.)

### B.  Common Issues Of Law And Fact Abound.

To demonstrate commonality, Plaintiff's "claims must depend upon a common contention…that is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[E]ven a single common question will do." *Id.* at 359 (citations and alterations omitted); *In re Whirlpool Corp.*, 722 F.3d at 853 ("[T]here need be only one common question to certify a class."). The Sixth Circuit has explained "[i]n other words, named plaintiffs must show that there is a common question that will yield a common answer for the class (to be resolved later at the merits stage), and that that common answer relates to the actual theory of liability in the case." *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 505 (6th Cir. 2015). "[T]he commonality requirement is not usually a contentious one … and is [] easily met in most cases." NEWBERG § 3.18[3]

As the Sixth Circuit held in *Hicks*, "Plaintiffs' claims share a common legal question central to the validity of each of the putative class member's claims; whether State Farm breached Plaintiffs' standard-form contracts by deducting labor depreciation from their ACV payments." *Hicks*, 965 F.3d at 458. Here, where State Farm has improperly withheld depreciation, the overarching and common question is, what is the remedy for those customers?  These cases have

---

[3] Notably, even if State Farm argues that it has some individualized defenses against certain policyholders, this does not defeat the commonality or typicality of the proposed class representatives' claims. *See Young,* 693 F.3d at 543 (rejecting insurers' argument that individualized defenses defeat typicality where plaintiffs alleged both a single practice and course of conduct by insurers that gave rise to claims of each class member and a single theory of liability); *Hicks*, 965 F.3d 452, 460 ("A class may be certified based on a predominant common issue 'even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'").

been repeatedly identified by federal courts as presenting "a common question well suited to classwide resolution." *Stuart*, 910 F.3d at 375; *Mitchell*, 327 F.R.D. at 561 ("The proposed class members, all of whom purchased insurance coverage from State Farm, each have a claim concerning the issue of whether State Farm breached its policy by depreciating labor costs in calculating actual cash value payments…. [C]ommonality is met.").

State Farm's common practice was to withhold depreciation from ACV payments to its insureds utilizing uniform settings for its Xactimate estimating software. Through the Xactimate estimating software program, State Farm can similarly recalculate actual cash value including no improper depreciation.

Just as in *Hicks, Stuart*, *Arnold* and *Mitchell*, the common question, posed in the context of State Farm's uniform claims handling practices, will yield a common answer for the entire class that goes to the heart of State Farm's liability. *Hicks*, 965 F.3d at 459 ("Plaintiffs' claims share a common legal question central to the validity of each of the putative class member's claims: whether State Farm breached Plaintiffs' standard-form contracts by deducting labor depreciation from their ACV payments … The district court did not abuse its discretion in finding that Plaintiffs satisfied Rule 23(a)'s commonality requirement."); *Stuart v. State Farm Fire & Cas. Co.,* 910 F.3d 371, 375 (8th Cir. 2018)("Plaintiffs' theory is that State Farm violated its contractual obligations by depreciating both materials and labor when calculating ACV, thereby reducing the size of their ACV payments. The viability of this theory is a common question well suited to classwide resolution."); *Mitchell v. State Farm Fire & Cas. Co.,* 954 F.3d 700, 710 (5th Cir. 2020) ("there is the common question of withholding labor depreciation"); *Arnold v. State Farm Fire and Casualty Company*, 2020 WL 6879271 at \*10 (S.D. Ala. Nov. 23, 2020) ("there is a common question to each class member—whether State Farm breached its standard-form insurance policy by

16

withholding labor depreciation when calculating its insureds' ACV payments"). Commonality is thus satisfied.

### C. The Proposed Class Representatives' Claims Are Typical Of The Class' Claim.

A putative class satisfies typicality it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Willis v. Big Lots, Inc*., 242 F.Supp.3d 634, 645 (S.D. Ohio 2017), quoting *In re Am. Med. Sys*., 75 F.3d at 1082; *Kornberg v. Carnival Cruise Lines, Inc*., 741 F.2d 1332, 1337 (11th Cir. 1984) ("if the claims or defenses of the class and the class representative arise from the same … pattern or practice and are based on the same legal theory."). Where resolution of the class representative's claim "will resolve the issue of liability as to claims brought by the class members, plaintiff's claim is typical." *Bailey v. City of Broadview Heights*,.2009 WL 10722779, at *3 (N.D. Ohio 2009). "[M]any courts have found typicality if the claims or defenses of the representatives and the members of the class stem from a single event or a unitary course of conduct, or if they are based on the same legal or remedial theory." *Rikos,* 799 F.3d at 509, quoting 7A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Fed. Prac. & Proc. § 1764 (3d ed. 2005).

"[T]he typicality element is not defeated by disparities in [certain] factual issues." *In re Scrap Metal Antitrust Litigation*, 2004 WL 7340436, at *6 (N.D. Ohio 2004); *Smith*, 2017 WL 1044692, at *8-9 (holding "[a]lthough the class members' damages are not identical, the facts and legal theories shared by their claims suffice to show typicality"); NEWBERG at ¶ 3:29. "Often, once commonality is shown typicality will follow as a matter of course." *Dockery*, 253 F. Supp. 3d at 850; *Rikos*, 799 F.3d at 509 (quoting *Dukes*, 564 U.S. at 349 n.5) ("[T]he commonality and typicality requirements of Rule 23(a) tend to merge.").

Here,  the proposed class representatives' claims arising from the underpayment of their actual cash value claims, which violate their standard-form contracts, are identical to the claims of the class and are thus typical.[4] *Hicks*, 2019 WL 846044, at *4 ("'Because Plaintiffs allege both a single practice or course of conduct on the part of [] Defendant [] that gives rise to the claims of each class member and a single theory of liability,' typicality is satisfied."); *Mitchell*, 954 F.3d at 709; *Arnold v. State Farm Fire and Casualty Company*, 2020 WL 6879271 **15-16 (S.D. Ala. Nov. 23, 2020).  Typicality is satisfied.

### D.  Adequacy Is Established.

Rule 23(a)(4) requires a showing that the "representative parties will fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a). This requirement encompasses two inquiries: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Young*, 693 F.3d at 543, quoting *In re Am. Med. Sys*., 75 F.3d 1069, 1083 (6th Cir. 1996); *Musial Offices, Ltd. v. Cuyahoga Cty*., 8 N.E.3d 992, 1001 (8th Dist. 2014), quoting *Hanon v. Dataproducts Corp*., 976 F.2d 497, 508 (9th Cir.1992) ("(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?");

---

[4] On November 11, 2020, Cranfield amended his Rule 26 disclosures to include Christina Ermidis, and providing information concerning her insurance claim and informing State Farm that Plaintiff intended to offer her as an additional class representative.  This is identical to the practice followed in *Arnold,* where on February 13, 2019, Arnold amended her disclosures to include Abney, Daniel, and Scruggs and indicated that she "may move to have [each of them] appointed as an additional class representative." *See, Arnold v. State Farm Fire and Casualty Company*, 2020 WL 6879271 at **20-21; 34 (S.D. Ala. Nov. 23, 2020)  (appointing Abney, Daniels, and Scruggs as additional class representatives.  Cranfield offered Northpointe and Ermidis for deposition to State Farm, but it chose not to depose them. Courts regularly appoint non-parties, like Northpointe and Ermidis here, as additional class representatives.  This is because there is no requirement in Rule 23 that they be a party. *Fisher v. Ciba Specialty Chems. Corp.*, 238 F.R.D. 273, 300 n.61 (S.D. Ala. 2006); *In re Telectronics Pacing Sys.*, 172 F.R.D. 271, 283 (S.D. Ohio 1997). "Furthermore, the class representatives, whether named in an individual action or not, will be bound by any judgment in the class action."  *Telectronics*, 172 F.R.D. at 283.

*Strawser*, 307 F.R.D at 613 (citation omitted) ("(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will prosecute the action.").

Cranfield, Northpointe and Ermidis are adequate class representatives as they "share interests with the class and have no substantial conflict of interest.  Their claims arise from the same practice—State Farm's depreciation of labor costs when calculating ACV—and the same standard-form insurance policies as the class members' claims." *Arnold v. State Farm Fire and Casualty Company*, 2020 WL 6879271 at *20 (S.D. Ala. Nov. 23, 2020).  Further, State Farm has deposed Cranfield, and has been provided disclosures in which the information for each of these has been provided.  Because the proposed class representatives and the putative class "share commonality and typicality, it follows, that [their] claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Strawser v. Strange*, CIVIL ACTION NO. 14-0424-CG-C (S.D. Ala. May. 21, 2015) at *13 (quoting *Dukes*, 564 U.S. at 349, n.5 (noting that commonality and typicality determinations tend to merge with Rule 23's adequacy requirement)).

Regarding counsel, the lawyers from the five law firms seeking to represent the proposed class have attached their resumes at Exh. 7a-f. This Honorable Court is familiar with many of them and their abilities in handling class actions.  Further, the Court record demonstrates clearly that counsel has zealously, effectively and successfully represented and litigated on behalf of the putative class.

## IV.    THE CLASS SATISFIES THE REQUIREMENTS OF RULE 23(b)(3).

### A.  Common Issues of Law and Fact Predominate

1. Resolution Of The Central Legal Issues Will Materially Advance The Litigation For All Class Members Alike.

Rule 23(b)(3)'s predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor*, 521 U.S. 591, 623-24 (1997). A plaintiff must show that the common issue or issues applicable to the class as a whole predominate over those issues subject to only individualized proof. *Hicks*, 965 F.3d 452, 459-460. "'To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof.' " *Young*, 693 F.3d at 544 (quoting *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352-53 (6th Cir. 2011)).

"[C]ommon issues need only *predominate*, not *outnumber* individual issues" to satisfy Rule 23. *In re Inter-Op Hip Prosthesis Liability Litigation*, 204 F.R.D. 330, 345 (N.D. Ohio 2001); *Smith,* 2017 WL 1044692, at *12 (emphasis added by court; internal quotation marks and citation omitted) (same). Predominance is not a matter of "counting noses." *Smith,* 2017 WL 1044692, at *15 (citation omitted); *Butler v. Sears, Roebuck and Co.*, 727 F.3d 796, 801 (7th Cir. 2013) (Predominance is not determined "by counting noses: that is, determining whether there are more common issues or more individual issues, regardless of relative importance.). Predominance is satisfied where the most critical questions in the case are common. *Hicks*, 965 F.3d 452, 459-460.

This dispute centers on a single, predominating question: regarding State Farm's standard-form insurance policy, based on it withholding labor depreciation when calculating its insureds' ACV payments, what remedy is proper for the named plaintiffs and the class members? Stated differently, when State Farm withheld an amount it should have paid had it not engaged in labor depreciation in the first place, what remedy is proper for the named plaintiffs and the class? This is a question that will be answered in the same fashion for each class member. The Sixth Circuit

found the predominance requirement satisfied in a nearly identical case because "a common contract question predominates—did State Farm withhold labor depreciation costs from class members' ACV payments in violation of Kentucky law." *Hicks*, 965 F.3d at 461-62; s*ee Whiteamire Clinic, P.A. Inc. v. Cartridge World North America, LLC.*, 2019 WL 3423154, at *5 (N.D. Ohio 2019) ("Regardless of how these remaining legal questions are answered, the fact that the same answer will apply in the same way to each member of the class shows that class-wide questions predominate over any individual claims."); *Mitchell*, 327 F.R.D. at 562 (finding predominance given "this claim is merely dependent on the amount State Farm owed its insureds under its policies in the first place yet deducted through labor depreciation, an amount calculated through State Farm's Xactimate system"). All other questions typically raised by State Farm to avoid class certification (albeit unsuccessfully)—*e.g.*, whether State Farm's breach is excused by the subsequent actions of a policyholder in either failing to make repairs or making full repairs below the prior deficient ACV payment[5]—merely "orbit around [this] central question," and thus do not preclude certification. *Smith,* 2017 WL 1044692, at *15.

Where "policies applied uniformly to all members of the prospective class, the Court finds that common issues predominate." *Grayer v. Kennametal Inc*., 2018 WL 3640996, at *8 (N.D. Ohio 2018); *Klay* 382 F.3d at 1257, *abrogated on other grounds, Bridge*, 553 U.S. 639 (where

---

[5] Contrary to State Farm's position, an insured's right to recover the ACV of her loss is unaffected by their later decision to undertake repairs or the cost of any such repairs. *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1305 (11th Cir. 2008) ("[The insureds] contracted for the actual cash value of their loss and their recovery is not tied to actually making the repair or replacement."); *accord, Stuart,* 910 F.3d at 374-76 ("If the insured … made repairs for less than the amount of the ACV payment, the insured was not obligated to remit overpayment to State Farm… the only dispute is over including labor depreciation in the calculation which is a discrete portion of the formula that is easily segregated and quantified"); *Parkway Assocs., LLC v. Harleysville Mut. Ins. Co*., 129 F.App'x 955, 962-63 (6th Cir. 2005 ("actual cash value is not calculated based upon what the insured ultimately pays to repair her property"). Regardless, the parties' dispute over this legal issue is itself a common legal dispute susceptible to class-wide resolution. *Stuart*, 910 F.3d at 376 (finding no abuse of discretion for district court to conclude State Farm's defenses based on actual repair costs and/or receipt of subsequent RCV payments could be resolved using common proof). Additional common legal disputes further support certification. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir. 2004), *abrogated on other grounds, Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).

corporate policies "constitute the very heart of the plaintiff's claims," as they do here, common issues predominate because those policies "would necessarily have to be re-proven by every plaintiff."; *Hicks*, 2019 WL 846044, at \*5. This is true "even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016); *Anderson v. United Financial Systems Corp.*, 281 F.R.D. 292, 298 (N.D. Ohio 2012) ("[T]he existence of individualized damages calculations does not preclude class certification."); *Smith,* 2017 WL 1044692, at \*14 ("it is hornbook law that individualized damages do not preclude class certification").

Courts repeatedly find that common issues predominate in cases challenging insurers' withholding of improper depreciation under the terms of standard-form insurance policies. *Hicks,* 953 F.3d at 463 ("On this record, and in light of our precedent and that of our sister circuits, the district court did not abuse its discretion in concluding that a common question predominates over individualized issues."; *Stuart,* 910 F.3d at 375-78 (finding "[i]t was not an abuse of discretion for the district court to conclude that plaintiffs' [labor depreciation] claims share a common, predominating question of law" that is "well suited to classwide resolution"); *Hicks*, 2019 WL 846044, at \*5-6 ("[c]ourts in jurisdictions where labor depreciation has been found to be unlawful have uniformly found that common issues predominate in cases challenging insurers' depreciation of labor costs."); *Mitchell*, 327 F.R.D. at 562-63 (finding predominance where "the issue is not whether the actual cash value payments paid by State Farm were reasonable or sufficient, but rather whether State Farm was entitled to deduct labor depreciation in the first place").

Under these circumstances, predominance is satisfied. The parties can and should resolve the overarching legal dispute in one fell swoop. On this the courts to have considered the issue have uniformly agreed.

2.  Class-Wide Damages Can Be Calculated Utilizing State Farm's Records.

As in the other certified State Farm labor depreciation class actions, this case involves the common matter that State Farm's improper withholding of labor costs resulted in a breach of its insurance policies, and that State Farm failed to pay the full actual cash value to class members at the time of loss as required under the policies. While such a showing is unnecessary to satisfy predominance, the relative ease with which class-wide damages can be calculated utilizing Xactimate is established. *See* Exh. 2, Plaintiffs' Expert Johnson at ¶ 4 ("it is quite simple to determine the amount of non-material depreciation withheld on any given property insurance claim…. I could easily calculate the amount of non-material depreciation that was withheld within the Xactimate file…. [T]his exercise can be accomplished, for an average homeowners' claim, within 2 to 3 minutes …."), *Id.* at ¶¶ 44-51.[6] The proposed class representatives' compensatory damages track their theory of liability and can be mechanically calculated for all class members. *Mitchell*, 327 F.R.D. at 563 (crediting similar expert testimony to conclude "the method by which Plaintiff's expert proposes damages can be calculated is nonetheless simple and adequate" but "even if it were to take the 15-20 minutes per claim, or the 3000 hours, as calculated by State Farm's expert O'Connor, this court finds that neither method preclude class certification. Predominance is met."); *cf. In re Monumental Life Ins. Co.*, 365 F.3d 408, 419 (5th Cir. 2004)

---

[6] Cranfield's expert also established that recalculating the ACV payments is unrelated to the individual adjusters' conclusions concerning the condition or other measurements and determinations concerning the policyholders' losses. *See* Exh. 2, Plaintiffs' Expert Johnson, at ¶ 53. State Farm has confirmed that the decision whether or not to depreciate non-material items or removal labor is wholly independent from adjusters' determinations of the age or condition of any building component. Ex. 5b, O'Toole Depo. at 179:23-180:12.

(certifying class despite fact that "thousands of grids must be constructed for the myriad of policy variations" where "defendants' records contain the information necessary to determine [damages]").

The relative ease with which class-wide damages can be calculated utilizing Xactimate is corroborated by the factual findings of numerous courts addressing State Farm's "uniform [labor depreciation] claim handling practices,"[7] and demonstrated by State Farm's own labor depreciation refund programs in several states, including Alabama and Kentucky. *Stuart*, 910 F.3d at 376 (recognizing that amount of withheld labor depreciation "is a discrete portion in the [ACV] formula that is easily segregated and quantified"); *Hicks*, 2019 WL 846044, at *3 ("through the Xactimate estimating software program, State Farm was able to calculate labor depreciation in a common, automated manner"); Each class member's damages can thus be measured by a common arithmetic formula: the labor depreciation withheld from an ACV payment—"amounts calculated through Xactimate (using default settings)"—plus pre-judgment interest. *Mitchell*, 327 F.R.D. at 563; *accord Stuart*, 910 F.3d at 376 (discussing same formula); *Hicks*, 2019 WL 846044, at *6 (same).

State Farm used this very same approach to determine refund payments issued through its labor depreciation refund programs in Alabama, Kentucky and Missouri. *See*, *supra*, Factual Background.

State Farm has described the general refund process as simply re-running or "recalculat[ing] the actual cash value for those specific repairs without application of 'non-material depreciation' and issu[ing] a supplemental ACV payment to the insured for the previously applied 'non-material depreciation.'" Exh. 5c at ¶ 5; *see also* Exh 5f at ¶ 5 (similarly describing Missouri

---

[7] *Hicks*, 2019 WL 846044, at *3.

refund program); Exh. 5h, State Farm Opposition to Plaintiffs' Request for "Pre-Clearance" of Supplemental Payments, filed in *Arnold v. State Farm* as Ex. FF (similarly describing Kentucky refund program). Under these circumstances, the potential need for individualized damages calculations does not preclude class treatment.

But even if this Court were to credit State Farm's anticipated argument that the calculation of damages in this case will require a more extensive individualized review of class member claim files than Plaintiff's expert reports—*i.e.*, "even if it were to take the 15-20 minutes per claim, or the expected 3000 hours, as calculated by State Farm's expert"—such a review is *not* an impediment to class certification. *Mitchell*, 327 F.R.D. at 563. "Otherwise, 'defendants against whom claims of wrongful conduct have been made could escape class-wide review due solely to the size of their businesses or the manner in which their business records were maintained.'" *Hicks*, 965 F.3d at 462 (quoting *Young*, 693 F.3d at 540). "'[T]he need to manually review files is not dispositive. If it were, defendants against whom claims of wrongful conduct have been made could escape class-wide review due solely to the size of their businesses or the manner in which their business records were maintained.'" *Young*, 693 F.3d at 540 (quoting *Kendrick v. Std. Fire Ins. Co.*, 2010 U.S. Dist. LEXIS 135694, at *38-39 (E.D. Ky. Sep. 30, 2010)). "[T]here is no sweat-of-the-brow exception" to the established rule permitting individualized damages calculations in class actions. *In re Monumental Life*, 365 F.3d at 419-20 Otherwise, "defendants would be able to escape liability for tortious harms of enormous aggregate magnitude but so widely distributed as not to be remediable in individual suits." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 1277 (2014). Predominance is met.

**B. A Class Action Is A Superior Means Of Adjudicating This Case.**

1. Superiority Is Routinely Met In Labor Depreciation Cases.

"The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Prods., Inc.*, 521 U.S. at 617, 117 S.Ct. 2231. "In considering whether the superiority requirement of Rule 23(b)(3) is satisfied, courts consider "the difficulties likely to be encountered in the management of a class action." *Young*, 693 F.3d 532, 545 (6th Cir. 2012). "Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device." *Id.*, quoting *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980); *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1184 (11th Cir. 2010) (In assessing superiority, courts consider "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs."). Numerous courts having undertaken this analysis in the labor depreciation context have concluded that "adjudicating the claims as a class is superior to alternatives." *E.g., Hicks,* 965 F.3d at 463-64; *Stuart*, 910 F.3d at 377. Nearly identical labor depreciation claims against State Farm were recently certified for class treatment, and upheld on appeal, precisely because adjudicating the claims as a class is superior to alternatives and the courts did not anticipate unreasonable difficulty in managing the class actions. *Id.* This Court should reach the same conclusion here.

2. Few, If Any, Individual Class Members Could Pursue Their Claims Against State Farm Outside Of This Class Action.

The U.S. Supreme Court has repeatedly recognized that the most compelling reason for finding superiority in a class action is the existence of a negative value suit—*i.e.*, "[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they

26

may employ the class-action device." *Deposit Guar. Nat'l Bank*, 445 U.S. 326, 339, (1980). *Smith v. Triad of Ala., LLC*, No. 14-324, 2017 WL 3816722, at *2 (M.D. Ala. Aug. 31, 2017) (recognizing in "'negative value' case, … '[a] class action is not only superior to other forms of litigation; it is the only form of litigation.'" (quoting NEWBERG § 4:87)); *see Dickens v. GC Servs. Ltd. P'ship*, 706 F.App'x 529, 538 (11th Cir. 2017) (requiring district courts to "meaningfully consider—the ways in which the high likelihood of a low per-class-member recovery militates in favor of class adjudication"). "This is especially true when the defendants are corporate behemoths with a demonstrated willingness and proclivity for drawing out legal proceedings for as long as humanly possible and burying their opponents in paperwork and filings." *Klay*, 382 F.3d at 1270-71. Without the class action mechanism, "aggrieved persons may be without any effective redress unless they may employ the class-action device." *Hicks*, 965 F.3d 452, 464, quoting *Young*, 693 F.3d at 545; *Dickens*, 706 F.App'x at 538 ("Moreover, absent class adjudication, defendants in cases where individual damages are low would be able to break the law with impunity, as most victims 'would be without effective strength to bring their opponents into court at all.").

This case presents a classic small value claim. Exh. 2, Plaintiffs' Expert Johnson, at ¶ 56 (reporting that State Farm electronic claims data "shows an average value of "Non-Material Depreciation" withholding, on a per claim basis and as stated on the last Xactimate estimate, of approximately $1,182.81"). "It would be incredibly difficult for class members to pursue a claim against Defendant outside of this class action." *Mitchell*, 327 F.R.D. at 564 (finding superiority of labor depreciation class action where majority of putative class members' claims value at or below $20,000, including named plaintiff's $738 claim); *see also Hicks*, 965 F.3d at 464 ("As the court correctly observed, the payment State Farm made to Kentucky homeowners for depreciation costs through its 2015 refund program were generally less than $1,000 and a 'significant portion' of the

27

refunds were for amounts 'less thanks the filing fee for initiating an action in state court.'" Further, the parties have uncovered no evidence than any class member has brought a separate claim for withheld non-material depreciation.

These considerations support the superiority of utilizing the class action device to resolve this matter. The principal purpose of the class action "is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. *Hicks*, 965 F.3d at 463-464, quoting *Young*, 693 F.3d at 545; *Mitchell*, 327 F.R.D. at 565 (Without class actions, individual suits "would ultimately 'waste judicial resources and leave most class members without an economically feasible remedy.'").

3. This Case Presents No Unusual Difficulties In Class Management.

Wrongful depreciation cases such as this are readily managed as class actions. *Hicks*, 2019 WL 846044, at *6-7, *affirmed* 965 F.3d 452; *Stuart*, 910 F.3d at 377; *Mitchell*, 327 F.R.D. at 565. Resolution of this litigation requires only analysis of the laws of a single state, standard form contract language, and the uniform conduct of a single insurer. The case "is peculiarly manageable." *Roper v. Consurve, Inc.*, 578 F.2d 1106, 1115 (5th Cir. 1978) (class action superior means of adjudicating class of plaintiffs who all "live[d] in one state" and whose addresses were kept on file by defendant); *Hicks*, 965 F.3d 452 (finding that superiority had been satisfied where a single issue, whether State Farm improperly depreciated labor costs, was to be litigated, and without a class action, individuals would be left with no economically feasible remedy).

Moreover, "after substantive rulings are made on the basic issues of liability and damage computation, the case is so manageable that a computer … can handle its Administration as distinguished from the ultimate computation which may in some instances require clerical

personnel." *Roper*, 578 F.2d at 1115.[8] And here we already have a clear Sixth Circuit decision on liability that State Farm applied improper depreciation in calculating and paying ACV. Ultimately, "[t]he task is not a particularly difficult one when compared to the work that [State Farm] ordinarily performs on its own computer. Under any theory the work involved in the refund computation procedure will represent only a small fraction of the work originally done on [the claims file] by [State Farm's Xactimate software]." *Id.* Indeed, State Farm's voluntary refund programs in Alabama, Kentucky and elsewhere prove manageability.

But even if this were not the case, "manageability" under Rule 23 "is a relative consideration," and "[t]here exists a strong presumption against denying class certification for management reasons." *Smith*, 2017 WL 3816722, at *2 (quoting *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1358 (11th Cir. 2009)). "'The inquiry is not 'whether this class action will create significant management problems,' but rather 'whether it will create relatively more management problems than any of the alternatives' to class resolution." *Id.* (same). "And because predominance of common issues makes class resolution more desirable, a court 'would be hard pressed to conclude that a class action is less manageable than individual actions' after finding predominance." *Id.* (quoting *Williams*, 568 F.3d at 1358).

The only alternative to class adjudication is neither a realistic nor practical one—*i.e.*, burdening the parties and the judicial system with tens of thousands of individual negative value suits serially addressing identical corporate conduct, standard-form policy language and legal issues. *Hicks*, 2019 WL 846044, at *6-7; *Mitchell*, 327 F.R.D. at 565; *Farmers Union Mut. Ins.*

---

[8] For example, in *Roth v. GEICO Gen. Ins. Co.*, the court certified the policyholder class and later entered summary judgment in favor of plaintiffs on their breach of contract claims. The court ordered the parties to undertake "a simple back-and-forth process to vet the final list of class members and their damages amounts," overseen by the magistrate, resulting in a final proposed judgment. *See generally Roth v. GEICO Gen. Ins. Co.*, No. 16-cv-62942, Order of Second Judgment and Final Judgment, No. 16-cv-62942 (S.D. Fla. Mar. 26, 2019); Roth, No. 16-cv-62942, Order and Judgment, No. 16-cv-62942 (S.D. Fla. Nov. 21, 2018). A similar process can be utilized here.

*Co. v. Robertson*, 370 S.W.3d 188 (Ark. 2010) (affirming certification of labor depreciation class action under Arkansas law, noting that "[t]he unnecessary burden of filing thousands of individual administrative complaints [ ] to resolve a single precise and common issue on contract interpretation is illogical"). "This is not the rare case where manageability concerns bar certification." *Smith*, 2017 WL 3816722, at *2.

## CONCLUSION

The courts (including the Sixth Circuit) hold that these cases should proceed as class actions.  For the above reasons, Cranfield respectfully requests that the Court: (1) certify the Class; (2) appoint him, Northpointe, and Ermidis as representatives of the Class; (3) appoint Patrick J. Perotti, James A. DeRoche, Erik D. Peterson, R. Eric Kennedy and Daniel Goetz, and Steve Whetstone as counsel for the Class; and (4) order the dissemination of class notice to the potential putative class members, at the Defendant's cost.  Pursuant to Local Rule 7.1(f), the instant Brief in Support for this Complex Designated case adheres to the 30-page limitation of that section.

Respectfully submitted,

/s/ *Patrick J. Perotti*_____
Patrick J. Perotti, Esq. (#0005481)
DWORKEN & BERNSTEIN CO., LPA
60 South Park Place
Painesville, OH 44077
Phone: (440) 352-3391
Fax: (440) 352-3469
Email:  pperotti@dworkenlaw.com

James A. DeRoche (#0055613)
GARSON JOHNSON LLC
2900 Detroit Avenue
Van Roy Building 2nd Floor
Cleveland, OH 44113
Phone:  (216) 696-9330
Fax:  (216) 696-8558
Email: jderoche@garson.com

R. Eric Kennedy (#0006174)
Daniel P. Goetz (#0065549)
WEISMAN, KENNEDY & BERRIS CO., L.P.A.
1600 Midland Building
101 Prospect Ave., West
Cleveland, OH 44113
Phone:  (216) 781-1111
Fax:  (216) 781-6747
Email:  ekennedy@weismanlaw.com
Email:  dgoetz@weismanlaw.com

Erik D. Peterson (PHV)
MEHR, FAIRBANKS & PETERSON
  TRIAL LAWYERS, PLLC
201 West Short Street, Suite 800
Lexington, KY 40507
Telephone:  859-225-3731
Facsimile:  859-225-3830
Email:  edp@austinmehr.com

Stephen G. Whetstone (0088666)
WHETSTONE LEGAL, LLC
P.O. Box 6
2 N. Main Street, Unit 2
Thornville, Ohio 43076
Telephone: 740.974.7730
Facsimile: 614.829.307
Email: steve@whetstonelegal.com

*Counsel for Plaintiffs and
the Putative Class*

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all registered parties or their counsel.

/s/ *Patrick J. Perotti*
PATRICK J. PEROTTI