# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES CRANFIELD, individually and on behalf of all other Ohio residents similarly situated, | ) ) ) ) | No. 1:16-cv-01273-CAB |
| Plaintiff, | ) ) | Hon. Christopher A. Boyko |
| v. | ) ) | |
| STATE FARM FIRE AND CASUALTY COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

## DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S
## BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Karl A. Bekeny (OH #0075332)
Benjamin C. Sassé (OH #0072856)
Elisabeth C. Arko (OH #0095895)
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113-7213
Telephone:   216.592.5000
E-mail:       karl.bekeny@tuckerellis.com
              benjamin.sasse@tuckerellis.com
              elisabeth.arko@tuckerellis.com

Joseph A. Cancila, Jr. (IL #6193252)
Jacob L. Kahn (IL #6296867) (*pro hac vice*)
Brian Neff (NY # 4304648) (*pro hac vice*)
Rachel F. Sifuentes (IL #6304016) (*pro hac vice*)
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison St., Suite 2900
Chicago, IL 60602
Telephone:  312.471.8700
E-mail:       jcancila@rshc-law.com
              jkahn@rshc-law.com
              bneff@rshc-law.com
              rsifuentes@rshc-law.com

*Attorneys for Defendant State Farm Fire and Casualty Company*

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

STATEMENT OF FACTS ......................................................................................... 3

I.      The Insurance Policies ................................................................................... 3

II.     The Named Plaintiffs' Individual Claims ..................................................... 4

        A.      Charles Cranfield ................................................................................ 4

        B.      The Condominium at Northpointe ...................................................... 5

III.    State Farm's Claims Handling Practices......................................................... 6

IV.     The Expert Testimony Offered By The Parties .............................................. 7

ARGUMENT ............................................................................................................. 9

I.      Certification of the Proposed Class is Not Mandated By *Hicks.* ................... 10

II.     Plaintiffs Have Failed to Establish Adequacy or Typicality........................... 11

        A.      Plaintiffs Have No Valid Individual Claim and Their Request to Appoint a Non-party With an Untimely Claim as Class Representative Also Fails. ........... 12

        B.      Cranfield and Northpointe are Not Appropriate Class Representatives for Insureds Whose Claims are Within the Applicable Limitations Period. .............. 16

        C.      Plaintiffs are Not Appropriate Class Representatives for Anyone Insured Under Other Types of Insurance Policies. ............................................. 17

III.    Plaintiffs Have Failed to Establish Superiority or Manageability. .................... 18

IV.     Plaintiffs Have Failed to Establish Predominance........................................... 19

        A.      Whether Each Claim is Timely is an Entirely Individualized Issue. .................... 20

        B.      Whether Policy Limits Were Paid is an Entirely Individualized Issue................. 23

        C.      Whether State Farm's Payment was Based on an ACV Estimate is an Entirely Individualized Issue. ............................................................. 23

        D.      Whether the Application of Non-Material Depreciation to an ACV Estimate Resulted in Injury is an Entirely Individualized Issue. ......................................... 24

    E.     Whether Insureds Who Were Paid Replacement Cost Benefits Are Entitled to Interest is an Entirely Individualized Issue. ...................................................... 28

    F.     Whether Additional, Claim-Specific Defenses Will Defeat Particular Claims Is an Entirely Individualized Issue. ......................................................... 30

CONCLUSION .................................................................................................................. 30

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. R.G. Indux. Supply*,
    611 N.E.2d 794 (Ohio 1993) ................................................14

*In re Am. Med. Sys. Inc.*,
    75 F.3d 1069 (6th Cir. 1996) ........................................9, 11, 12

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997).................................................11

*American Pipe & Construction Co. v. Utah*,
    414 U.S. 538 (1974).........................................13, 14, 15

*Amirhamzeh v. Chase Bank USA, N.A.*,
    No. CV 13-00527 BRO FFMX, 2013 WL 7219270 (C.D. Cal. Oct. 7, 2013) ........................14

*Anderson v. United Fin. Sys. Corp.*,
    281 F.R.D. 292 (N.D. Ohio 2012) ................................12, 19

*Arnold v. State Farm Fire & Cas. Co.*,
    No. 2:17-CV-00148-TFM-C, 2020 WL 6879271 (S.D. Ala. Nov. 23, 2020) ........................16

*Bailey v. Cumberland Cas. & Sur. Co.*,
    180 F. App'x 862 (11th Cir. 2006) ................................16

*Blount Fin. Servs., Inc. v. Walter E. Heller & Co.*,
    819 F.2d 151 (6th Cir. 1987) ................................2

*Brasher v. Allstate Indem. Co.*,
    No. 4:18-CV-00576-ACA, 2020 WL 4673259 (N.D. Ala. Aug. 12, 2020) ............3, 17, 27, 30

*Broussard v. Meineke Disc. Muffler Shops, Inc.*,
    155 F.3d 331 (4th Cir. 1998) ................................22

*Bushbeck v. Chicago Title Ins. Co.*,
    No. C08-0755JLR, 2011 WL 13100725 (W.D. Wash. Aug. 15, 2011) ................................22

*In re Carpenter Co.*,
    No. 14-0302, 2014 WL 12809636 (6th Cir. Sept. 29, 2014) ................................14

*China Agritech, Inc. v. Resh*,
    138 S. Ct. 1800 (2018).................................................15

*Cline v. Sunoco, Inc. (R&M)*,
    333 F.R.D. 676 (E.D. Okla. 2019) .......................................................................22

*Collins v. Auto-Owners Ins. Co.*,
    80 N.E.3d 542 (Ohio Ct. App. 2017) ..................................................................28

*Collins v. Vill. of Palatine, Illinois*,
    875 F.3d 839 (7th Cir. 2017) ..............................................................................14

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013)..........................................................................................9, 27

*Contos v. Wells Fargo Escrow Co., LLC*,
    No. C08-838Z, 2010 WL 2679886 (W.D. Wash. July 1, 2010)...........................22

*Cullen v. State Farm Mut. Auto. Ins. Co.*,
    999 N.E.2d 614 (Ohio 2013) ..............................................................................11

*Day v. NLO, Inc.*,
    798 F. Supp. 1322 (S.D. Ohio 1992) ..................................................................13

*Dennis v. JPMorgan Chase & Co.*,
    439 F. Supp. 3d 256 (S.D.N.Y. 2020)..................................................................15

*Elberon Bathing Co. v. Ambassador Ins. Co.*,
    389 A.2d 439 (N.J. 1978)....................................................................................27

*Fisher v. Ciba Specialty Chemicals Corp.*,
    238 F.R.D. 273 (S.D. Ala. 2006) ........................................................................16

*Gawne v. Casanova*,
    90 N.E.2d 444 (Ohio Ct. App. 1948)..................................................................14

*Griffith v. Comm'r of Soc. Sec.*,
    987 F.3d 556 (6th Cir. 2021) ..............................................................................10

*Guy v. Lexington-Fayette Urb. Cty. Gov't*,
    488 F. App'x 9 (6th Cir. 2012)............................................................................15

*Hicks v. State Farm Fire and Cas. Co.*,
    No. 14-CV-00053-HRW, 2019 WL 846044 (E.D. Ky. Feb. 21, 2019)...................2, 3, 18, 28

*Hicks v. State Farm Fire and Casualty Company*,
    965 F.3d 452 (6th Cir. 2020) ....................................................................... *passim*

*Hitt v. Arizona Beverage Co., LLC*,
    No. 08CV809WQH-POR, 2009 WL 4261192 (S.D. Cal. Nov. 24, 2009)..............16

*Holaway v. Protective Life Ins. Co.*,
No. 4:07-CV-109 (CDL), 2007 WL 2904162 (M.D. Ga. Oct. 3, 2007)..................................14

*Jenkins v. State Farm Fire and Cas. Co.*,
No. 1-16-0612, 2017 WL 2672549 (Ill. App. Ct. June 20, 2017) ...........................................13

*Jones v. Unum Life Ins. Co. of Am.*,
No. 4:06CV00547, 2006 WL 3462130 (E.D. Ark. Nov. 29, 2006)..........................................13

*Kartman v. State Farm Mut. Auto. Ins. Co.*,
634 F.3d 883 (7th Cir. 2011) .................................................................................................25

*Koch v. State Farm Fire and Cas. Co.*,
565 So. 2d 226 (Ala. 1990)....................................................................................................27

*Kuntz Drug Stores, Inc. v. Ohio Dep't of Pub. Welfare*,
No. 82AP-23, 1982 WL 4316 (Ohio Ct. App. Aug. 3, 1982)..................................................14

*Lidie v. State of California*,
478 F.2d 552 (9th Cir.1973) ...................................................................................................16

*Lindsey v. Normet*,
405 U.S. 56 (1972).................................................................................................................20

*Messer v. Saul*,
No. CV 7:19-093, 2020 WL 1860695 (E.D. Ky. Apr. 13, 2020) ...........................................15

*Miller v. Mercedes-Benz USA LLC*,
No. CV 06-05382, 2009 WL 1393488 (C.D. Cal. May 15, 2009) ..........................................16

*Mills v. Foremost Ins. Co.*,
269 F.R.D 663 (M.D. Fla. 2010)........................................................................................25, 28

*Mills v. Foremost Insurance Co.*,
511 F.3d 1300 (11th Cir. 2008) ..............................................................................................28

*Mitchell v. State Farm Fire and Cas. Co.*,
327 F.R.D. 552 (N.D. Miss. 2018), *aff'd*, 954 F.3d 700 (5th Cir. 2020).........................18, 29

*MRC Innovations, Inc. v. Lion Apparel, Inc.*,
152 N.E.3d 513 (Ohio Ct. App. 2020).....................................................................................30

*Nguyen v. St. Paul Travelers Ins. Co.*,
No. 06-4130, 2008 WL 4691685 (E.D. La. Oct. 22, 2008) .........................................25, 26, 27

*Parkway Assocs., Inc. v. Harleysville Mut. Ins. Co.*,
No. 3:99-cv-0161 (M.D. Tenn. Nov. 18, 2003).......................................................................28

*Parkway Assocs., LLC v. Harleysville Mut. Ins. Co.*,
 129 F.App'x 955 (6th Cir. 2005) ........................................28

*Paterson-Leitch Co. v. Insurance Co. of North America*,
 366 F. Supp. 749 (N.D. Ohio 1973)..............................................25, 26

*Perkins v. Falke & Dunphy, L.L.C.*,
 No. 25162, 2012 WL 6097104 (Ohio Ct. App. Dec. 7, 2012)................................21

*Phillips v. WellPoint Inc.*,
 No. 10-CV-00357-JPG, 2012 WL 4904523 (S.D. Ill. Oct. 15, 2012) ....................18

*Quezada v. Loan Ctr. of California, Inc.*,
 No. CIV. 2:0800177WBSKJM, 2009 WL 5113506 (E.D. Cal. Dec. 18, 2009).....................22

*Quinn v. Nationwide Ins. Co.*,
 281 F. App'x 771 (10th Cir. 2008) ........................................17

*Ramirez v. TransUnion LLC*,
 951 F.3d 1008 (9th Cir. 2020), *cert. granted in part,* 141 S. Ct. 972 (2020) ..........14

*Randleman v. Fid. Nat'l Title Ins. Co.*,
 646 F.3d 347 (6th Cir. 2011) ........................................19

*Rega v. Nationwide Mut. Ins. Co.*,
 No. 1:11-CV-1822, 2012 WL 5207559 (N.D. Ohio Oct. 22, 2012)......................16

*Rodney v. Nw. Airlines, Inc.*,
 146 Fed. App'x 783 (6th Cir. 2005) ........................................10

*Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*,
 863 F.3d 460 (6th Cir. 2017) ........................................19

*Sarmiento v. Grange Mut. Cas. Co.*,
 835 N.E.2d 692 (Ohio 2005) ........................................13

*Schaller v. Nat'l Alliance Ins. Co.*,
 496 F. Supp. 2d 890 (S.D. Ohio 2007) ........................................25

*Schmidt v. Ramsey*,
 860 F.3d 1038 (8th Cir. 2017) ........................................20

*Sierra Pac. Power Co. v. Hartford Steam Boiler Inspection & Ins. Co.*,
 490 F. App'x 871 (9th Cir. 2012) ........................................26

*Smith v. Barclay*,
 No. 11AP-798, 2012 WL 5378180 (Ohio Ct. App. Nov. 1, 2012)........................21

*Sprague v. Gen. Motors Corp.*,
    133 F.3d 388 (6th Cir. 1998) ................................................................11

*In re State Farm Fire and Cas. Co.*,
    872 F.3d 567 (8th Cir. 2017) ......................................................3, 10, 25

*Stiers v. State Farm Ins.*,
    No. 3:11-cv-437, 2012 WL 2405982 (E.D. Tenn. June 25, 2012) .........................29

*Stuart v. State Farm Fire and Cas. Co.*,
    910 F.3d 371 (8th Cir. 2018) .......................................................10, 28

*Taylor v. Midland Nat'l Life Ins. Co.*,
    No. 416CV00140SMRHCA, 2019 WL 7500238 (S.D. Iowa May 3, 2019).........................22

*In re Telectronics Pacing Sys., Inc.*,
    172 F.R.D. 271 (S.D. Ohio 1997) .............................................................16

*Treviso v. Nat'l Football Museum, Inc.*,
    No. 1:17CV472, 2018 WL 4608197 (N.D. Ohio Sept. 25, 2018) .............................18

*Vasquez v. Bradshaw*,
    345 F. App'x 104 (6th Cir. 2009) ...........................................................10

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)...................................................................9, 20

*Weidman v. Erie Ins. Grp.*,
    745 N.E.2d 292 (Ind. Ct. App. 2001)........................................................27

*West Virginia v. United States*,
    479 U.S. 305 (1987).......................................................................30

*In re Whirlpool Corporation Front-Loading Washer Product Liability Litigation*,
    45 F. Supp. 3d 706 (N.D. Ohio 2014)........................................................22

*White v. Baptist Mem'l Health Care Corp.*,
    699 F.3d 869 (6th Cir. 2012) ...............................................................12

*Wilcox v. State Farm Fire and Cas. Co.*,
    No. 14-2798, 2016 WL 6908111 (D. Minn. Sept. 7, 2016).......................................3

*Wright v. State Farm Fire and Cas. Co.*,
    No. 2:12-CV-409, 2013 WL 1945094 (S.D. Ohio May 9, 2013) .............................21

*Zemcik v. LaPine Truck Sales & Equip. Co.*,
    706 N.E.2d 860 (Ohio Ct. App. 1998).......................................................21

**Rules and Statutes**

28 U.S.C. § 2072(b) ................................................................................................20

Fed. R. Civ. P. 23 ........................................................................................... *passim*

Fed. R. Civ. P. 23(a) .........................................................................................11, 15

Fed. R. Civ. P. 23(b)(3)..........................................................................10, 18, 19, 22

**Other Authorities**

U.S. Const., Article III.............................................................................................14

## INTRODUCTION

Plaintiffs suggest that certification of their asserted class is a foregone conclusion, even "required" under *Hicks v. State Farm Fire and Casualty Company*, 965 F.3d 452 (6th Cir. 2020). Plaintiffs are mistaken, for *Hicks* does not support the breadth of the class they seek. The proffered class representatives in *Hicks* did not face the insurmountable limitations defenses that confront the only named plaintiffs here. The record evidence in *Hicks* was materially different than that presented here. And the decision in *Hicks* was governed by a different state's substantive law.

Charles Cranfield originally filed this lawsuit on April 22, 2016, seeking "to represent a class consisting of all persons and entities insured under a *State Farm homeowners' policy*" who received an ACV payment from which labor was depreciated. Doc. 1-1, ¶31 (emphasis added). While Cranfield sought to have that class extend back in time eight years prior to the filing of the suit, his policy—like all State Farm homeowners policies—contained a one-year suit limitations period. Any claims with dates of loss earlier than April 22, 2015—including Cranfield's claim, with its loss date of October 14, 2014—are time-barred.

In July 2020, four years after filing his original complaint, Cranfield sought to expand the asserted class definition to include policies other than homeowners policies, purporting for the first time to represent "policyholders under *any property policies* issued by Defendant." Doc. 57, ¶63 (emphasis added). Cranfield later added The Condominium at Northpointe ("Northpointe") as a plaintiff, but Northpoint does not have a homeowners policy; it has a businessowners policy. As a result, its loss, which occurred on April 2, 2016, was not tolled by the filing of the lawsuit and its claim is time-barred as well. These policy limitations periods are fully enforceable under Ohio law and preclude the overbroad class (with largely untimely claims) that Plaintiffs pursue in this case.[1]

---

[1] While State Farm moved to dismiss Cranfield's claim and opposed Northpointe's addition, it understands the Court's preference for dispositive motions on these issues (Doc. 102) and will be filing them promptly.

Notably, the class certified by the trial court and affirmed by the Sixth Circuit in *Hicks* was delimited by the one-year, policy limitation period and confined to claims under a State Farm's homeowners policy. Moreover, the trial court in *Hicks* rejected the allegations in that case—similar to the allegations here—that the limitations period could be "tolled" through purported fraudulent concealment. There was no concealment here: State Farm disclosed the precise amounts of depreciation that it applied to each repair task shown on Plaintiffs' estimates when calculating ACV. At bottom, this case involves a dispute over the proper interpretation of an undefined term in Plaintiffs' policies—not fraud. This Court and the Sixth Circuit have already held that State Farm's interpretation of the term "actual cash value" was reasonable. That State Farm made disclosures to Plaintiffs (and putative class members) and calculated ACV consistent with its reasonable interpretation undermines any allegation of fraud.[2]

Furthermore, under Plaintiffs' tolling theory, each putative class member would need to establish actionable fraud—and reasonable reliance thereon—to toll the limitations period. That could not be done without adjudicating individualized issues that would make a class-wide trial impossible. For this reason, the trial court in *Hicks* rejected the plaintiffs' effort to broaden the class based on alleged fraudulent concealment, noting that each class member would need to show they were misled, which could not be done "without putting the policyholder over here on the stand subject to cross-examination." Dec. 28, 2017 Hearing Tr., Ex. A, at 30:16-24; *see also id.* at 29:12-13 ("How in the world would you try this case?"); *Hicks v. State Farm Fire and Cas. Co.*, No. 14-CV-00053-HRW, 2019 WL 846044, at *4 (E.D. Ky. Feb. 21, 2019). Thus, while the trial court in *Hicks* did certify a labor depreciation class over State Farm's objections, it specifically

---

[2] *See, e.g., Blount Fin. Servs., Inc. v. Walter E. Heller & Co.*, 819 F.2d 151, 152 (6th Cir. 1987) ("The fact that the parties take different positions under the contract as to the appropriate prime rate, or the fact that the defendant charged too high a 'prime rate' and thereby concealed or refused to disclose what the plaintiff considers the true prime rate called for under the contract, does not give rise to a valid claim for fraud.").

excluded all claims barred by an identical one-year contractual limitations period. *See id.*

Moreover, while the Sixth Circuit found that the *Hicks* trial court did not abuse its discretion in granting class certification, it did not hold that class certification is required in labor depreciation cases—nor is it. Multiple courts, including the Eighth Circuit, have either reversed class certification, denied class certification, or struck class allegations for claims based on the same legal theory asserted here. *See, e.g., In re State Farm Fire and Cas. Co. ("LaBrier"),* 872 F.3d 567, 572 (8th Cir. 2017); *Brasher v. Allstate Indem. Co.*, No. 4:18-CV-00576-ACA, 2020 WL 4673259, at *14 (N.D. Ala. Aug. 12, 2020); *Wilcox v. State Farm Fire and Cas. Co.*, No. 14-2798 (RHK/FLN), 2016 WL 6908111, at *1 (D. Minn. Sept. 7, 2016), *report and recommendation adopted,* 2016 WL 7200303 (D. Minn. Nov. 1, 2016). The key in each case is the factual showing under Rule 23 based on the claims and defenses asserted in that case.

Here, the factual record establishes that the liability determinations for *each putative class member* will require extensive individualized review and analysis. Simply put, there is no "common evidence" that exists to determine liability across the putative class. As a result, and for the reasons set forth herein, this Court should find that Plaintiffs have failed to carry their burden of satisfying the Rule 23 requirements for their overbroad asserted class.

## STATEMENT OF FACTS

### I.     The Insurance Policies

The original Complaint limited the asserted class to persons "insured under a State Farm homeowners' policy"—the same type of policy that Cranfield had. Doc. 1-1, ¶31; *see also id.*, ¶30 (alleging that State Farm breached its "homeowners' policies"). That policy provides for payment of *no more than* the policyholder's "cost to repair" damaged property, in two stages. Cranfield's Policy, Ex. N, at 24; *see also* Ex. B at 1. The ACV payment is typically first, preceding repairs, but State Farm's ACV obligation is "not to exceed the cost to repair." *Id.* After repairs, State Farm

pays any additional, reasonable costs actually incurred as replacement cost benefits ("RCBs"). *Id.*

It was not until July 15, 2020, with the First Amended Complaint, that Cranfield expanded the proposed class to include policyholders "under any property policies." Doc. 57, ¶63. Plaintiffs now seek certification of that overly-broad class, including claims under Manufactured Homes policies, Farm/Ranch policies, Renters policies, Rental Condominium Unitowners policies and Businessowners policies. *See* Doc. 99-18. Plaintiffs fail to address the many, material differences between the various policy forms, including the loss settlement provision. Those difference are discussed further below and shown on the chart attached as Exhibit B.

## II.  **The Named Plaintiffs' Individual Claims**

### A.  **Charles Cranfield**

Plaintiff Cranfield's claim is untimely. His policy required that any action against State Farm be filed within one year of his date of loss or damage, which he reported as October 14, 2014. Ex. N at 27; Doc. 103-3 at 3. Yet Cranfield waited over eighteen months before filing on April 22, 2016—well past the deadline. Doc. 1-1; Charles Cranfield Dep. Tr., Ex. C at 186:19-21.

While Cranfield asserts that State Farm fraudulently concealed its labor depreciation practices and thereby prevented him from filing on time, discovery has confirmed that there is no merit to his contentions and no valid excuse for his delay. Cranfield hired a public adjuster, Mark Jacoby of Metro Public Adjustment ("Metro"), to represent him in all aspects of his claim. Ex. C at 56:13-21; Mark Jacoby Dep. Tr., Ex. D, at 41:12-42:12. State Farm prepared an intial repair estimate for the claim and, on March 25, 2015, sent the estimate and an ACV payment ($360.72) to Metro. Ex. D at 112:18-114:20; Ex. M.[3] State Farm's letter expressly advised Metro of the one-year provision in Cranfield's policy. *See* Ex. M at 5; Ex. D at 53:20-54:4. Jacoby further knew that

---

[3] State Farm issued a supplemental ACV payment in January of 2016. Ex. D at 145:7-13, 147:19-24.

the depreciation on State Farm's estimate included non-material depreciation. *See* Ex. D at 89:13-17, 90:9-92:23, 118:20-120:1. Indeed, he has served as a consulting expert to Plaintiffs' counsel since March 2016 and referred Cranfield to them. *Id.* at 26:12-16, 150:5-10. The notion that State Farm fraudulently concealed labor depreciation from Cranfield and Jacoby strains credulity.

### B.    The Condominium at Northpointe

The recently filed claim by The Condominium at Northpointe ("Northpointe") is also untimely. Northpointe reported a loss under its Businessowners Coverage policy based on wind damage on April 2, 2016. Decl. of Kevin Waller, Ex. E, ¶¶7-8. Because that policy contains a two-year suit limitation provision, Ex. O at 18, the deadline for Northpointe to file suit expired on April 2, 2018. Yet Northpointe was not added to this case until March 25, 2021. Doc. 103. And its policy was not part of the originally asserted class definition. When the class definition was amended in 2020, Northpointe's claim was already untimely. Doc. 57, ¶63.

Northpointe's claim is barred for the additional reason that State Farm issued its ACV payment only after reaching agreement with Northpointe's counsel regarding the amount of the settlement. Northpointe's claim was submitted by one of the attorneys for Plaintiffs here, Stephen Whetstone, who represents plaintiffs in other labor depreciation matters, as well. Ex. E, ¶8; Ex. P. After State Farm prepared a draft Xactimate estimate for the loss, Northpointe's roofing contractor submitted an estimate with a materially higher replacement cost. Ex. E, ¶¶10-12. State Farm noted the differences, discussed them with Whetstone, *id.*, ¶¶12-15, and subsequently sent him a revised estimate with an estimated replacement cost of $453,594.61, depreciation of $209,626.09, and an ACV of $173,957.22 (after applying the $1,000 deductible). *Id.*, ¶¶16-20. Whetstone then advised State Farm that he had "discussed the settlement" with Northpointe's board and they had agreed with it. *Id.* ¶21. State Farm accordingly issued the ACV payment. *Id.*, ¶22.

On July 20, 2016, Whetstone submitted a contract to State Farm for the repairs that were

underway and requested "depreciation released." *Id.*, ¶23. Upon review of the documentation submitted by Whetstone, State Farm issued an RCB payment for $278,637.39, which included all initially applied depreciation. *Id.*, ¶¶24-26.

### III.    **State Farm's Claims Handling Practices**

As a courtesy to customers, State Farm typically prepares Xactimate estimates of costs to repair damage to its insureds' properties. Decl. of Tyler McKitterick, Ex. F, ¶10. Such initial estimates represent a good faith effort to evaluate promptly the potential cost of repairs. However, they are just a starting point for each claim, and they often are revised as a claim progresses to address evolving evaluations of the necessary repairs and the attendant costs. *Id.*, ¶15. For example, the estimates prepared by an insured's contractor and State Farm may not match as to scope of work or pricing. *Id.*, ¶16. In that case, State Farm engages in a reconciliation process with the insured and/or the contractor, which may involve a further property inspection. *Id.* State Farm may update the Xactimate estimate based on information obtained through this reconciliation, but the goal is to agree on a bottom-line price for the work to be performed, regardless of whether differences remain as to the cost for particular line item repairs, labor, or materials. *Id.*

The initial payment on a claim may be for ACV, replacement cost, or a combination of the two, depending on the repair documentation an insured may have. *Id.*, ¶¶ 6, 19. Thereafter, additional payments made on the claim *also* may be purely for ACV, purely for replacement cost, or a combination thereof. New ACV payments may be warranted if additional damage is found after the first inspection of the loss. *Id.*, ¶19. And RCB payments may be issued at different points in time, depending on how the insured chooses to submit requests for those benefits. *Id.*

The fact that an Xactimate estimate has been generated does *not* mean that an associated payment was based on that estimate. *Id.*, ¶21. The payment may instead have been based upon a signed contract for the repairs. *Id.*, ¶22. Moreover, estimates in many instances do not accurately

-6-

reflect the type of payment issued. *Id.*, ¶23; *see also* Tom Moss Dep. Tr., Ex. Q, at 47:12-49:5. The Xactimate software generates a figure on each estimate that is labeled as "Net ACV Payment," but that stated value may *actually* represent a combination of ACV *and* RCBs, or even a pure RCB payment. Ex. F, ¶23.

Further, where successive estimates are generated, the "Net ACV Payment" and other values may still reflect application of depreciation for tasks where the insured has already received the actual cost of the repair through ACV and RCBs. *Id.*, ¶24. Similarly, the estimate may contain overstated values for replacement cost (or ACV) if the insured does not inform State Farm that certain repairs have been completed for equal to or less than State Farm's ACV payment for that repair. *Id.* Finally, the estimate may not reflect the current status of State Farm's adjustment of the claim because State Farm does not require claim specialists to update the estimate every time an ACV or replacement cost payment is issued. *Id.* The basis for those payments will be documented in the claim file, but may be reflected in file notes rather than on an estimate. *Id.*

Insureds generally do not submit repair documentation for a loss unless they seek RCBs and, consequently, are not likely to submit repair documentation or even notify State Farm if they have completed repairs at a cost below what they already have been paid. *Id.*, ¶26. For that reason, State Farm's claim records often will not have complete information regarding the extent to which an insured has undertaken or completed repairs or the actual repair costs the insured has incurred. *Id.* The actual repairs completed by insureds often differ from the estimated repairs. *Id.*, ¶28.

IV.     **The Expert Testimony Offered By The Parties**

In discovery, State Farm produced a report (the "Combined Report") that combines estimating data for State Farm's Ohio claims (stored by Xactware Solutions, Inc.) with claim payment data (stored in State Farm's Enterprise Claims System ("ECS")). The Combined Report includes data for more than 34,000 claims with a loss date on or after January 1, 2014, *see* Doc.

99-7; Interrog. Resps., Ex. G, but is insufficient on its own to establish liability or damages.

State Farm's experts opined—and Plaintiffs' expert agreed—that individualized analysis of claim-related records and other information is necessary to determine whether any policyholder was "underpaid," as Plaintiffs contend, due to labor depreciation. State Farm's accounting expert, Heather Albright, analyzed a random sampling of 149 claim files from among the claims on the Combined Report (hereinafter the "Claim Sample"). Albright Report, Ex. H, ¶38.[4] She found that some policyholders in the Claim Sample were paid full replacement costs up-front, without depreciation, despite depreciation appearing on the Combined Report. *Id*., ¶¶57-59. Others were paid policy limits, even though that could not be determined from the Report. *Id*., ¶60. With respect to repair costs, Albright found that some policyholders were able to complete some or even *all* repairs using *only* their ACV payment. *Id*., ¶¶74-77. Significantly, Albright found that actual repair costs, when they were available, differed from estimated costs *78% of the time*. *Id*., ¶68. In sum, Albright demonstrated that is not possible to use State Farm's estimates (or data therefrom) to reliably determine the basis for any payment or to answer individualized liability and damages questions raised by the claims here. *Id*., ¶9.c-f.

State Farm's construction expert Michael Berryman opined based on his experience that repair cost estimates often vary from actual costs, and identified several files where the policyholder's actual repair costs were less (or expected to be less)—for the *same* repairs—than even State Farm's ACV payments. Berryman Report, Ex. I, at 8, 20-24, 29-31. Berryman further demonstrated that an individualized review of the claim and inspection of the property is necessary

---

[4] Albright's review of the files in the Claim Sample took approximately 70 hours to complete, even though it did not include the steps Plaintiffs' expert, Toby Johnson, plans to use to determine "withheld" labor depreciation, relevant "dates of withholding," and to calculate damages and interest. Ex. H, ¶9.e. At that rate, it would take approximately 16,000 hours to review just the 34,000 claims referenced in the Combined Report—or, 3 years for a single person working 40 hours a week. *Id*. And the Combined Report does not include any claims from the first five and a half years of the proposed class period.

to determine whether the estimated ACV figure differs from the true ACV. *Id.* at 12-16.

Plaintiffs' expert, Toby Johnson, agreed that it will be necessary to review and analyze the facts of each putative class claim to determine "withheld" non-material depreciation and calculate damages, if any. *See* Toby Johnson Dep. Tr., Ex. J, at 144:17-146:12. Although he claimed that he could do so in 2-3 minutes per claim, Doc. 99-6, ¶4, he did nothing to test that assertion. He did not review the files in the Claim Sample, could not identify a systematic methodology for such a review, did not calculate any damages, and—when pressed—agreed that more than half of the claims on the Combined Report were "complex" and would require much greater analysis. *See* Ex. J at 21:19-23:5, 143:1-20, 145:20-148:25, 160:16-161:23, 198:2-199:21. Moreover, he conceded that whether a policyholder was "underpaid" for ACV would require careful study of the claim and any repair records—and potential discussions with the policyholder or their contractor— because  State Farm's initial estimate of replacement cost and, thus, its estimate of ACV, could be overstated. *See id.* at 70:4-19, 135:13-142:8; 170:3-172:14, 182:20-185:13; Ex. 5.

In short, Johnson has not shown a reliable, systemic method for determining liability or damages for putative class members. His opinions instead rely on unsupported assumptions and "an overly simplistic approach [that] would lead to inaccurate results." Ex. H, ¶9.f.

## ARGUMENT

Rule 23 "does not set forth a mere pleading standard." *See Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (citation omitted). It requires "evidentiary proof." *Id.*; *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011). Plaintiffs must show they have met the Rule 23 requirements by a preponderance of the evidence. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1078-79 (6th Cir. 1996). And this Court must apply a "rigorous analysis" to those requirements, considering both the evidence for Plaintiffs' case in chief *and* the evidence State Farm will present in rebuttal. If common proofs are not available, class certification should be denied. *Rodney v. Nw.*

*Airlines, Inc.*, 146 Fed. App'x 783, 786-87 (6th Cir. 2005). Here, Plaintiffs only seek certification under Rule 23(b)(3). Their motion fails.

## I.  <u>Certification of the Proposed Class is Not Mandated By *Hicks.*</u>

Plaintiffs assert that the Sixth Circuit affirmed class certification in *Hicks* "under identical circumstances" and that its decision "requires" that certification be granted here. Plaintiffs' Brief in Support of Class Certification ("Pl. Br."), Doc. 99, at 1. Plaintiffs are wrong. They overstate the precedential value of that decision and ignore material differences between this case and *Hicks* as relates to the class definition, the factual record, and the substantive law applicable to the claims.

First, *Hicks* affirmed class certification under an abuse of discretion standard. 965 F.3d at 457. In such a review, the appellate court "is not adjudicating the merits of the claim so much as the merits of the decision under review. The question is only whether it fell into what is presumably a broad band of discretion." *Vasquez v. Bradshaw*, 345 F. App'x 104, 111 n.1 (6th Cir. 2009). That deferential approach recognizes that "the application of general standards … may lead different jurists to different results." *Griffith v. Comm'r of Soc. Sec.*, 987 F.3d 556, 573 (6th Cir. 2021). *Hicks* does not show that any and all labor depreciation cases meet the requirements of Rule 23.[5]

Second, as noted above, the class Plaintiffs seek here differs materially from that certified in *Hicks*. It stretches back far beyond the contractual limitations period, relying on a "fraudulent concealment" theory explicitly rejected in *Hicks* due to a host of individualized issues. Moreover, unlike the class in *Hicks* (which the trial court there limited to homeowners policies), Plaintiffs seek certification of a class spanning all structural insurance policies with varying provisions.[6]

---

[5] The opposite outcomes in the Eighth Circuit in *LaBrier*, 872 F.3d at 572 (reversing certification), and *Stuart v. State Farm Fire and Cas. Co.*, 910 F.3d 371, 378 (8th Cir. 2018) (affirming), illustrate this point.

[6] Plaintiffs further define the class with reference to "non-material depreciation," but not limited to the labor depreciation at issue in *Hicks*. Among other things, Plaintiffs improperly include depreciation of estimated general contractor overhead and profit, Pl. Br. 2, which their expert agrees (i) is not "labor" and (ii) is calculated as a percentage of the *total* replacement cost—including material costs. Ex. J at 103:5-104:13.

Third, the Sixth Circuit repeatedly indicated that its ruling was dependent upon the specific record before the Court. *Hicks*, 965 F.3d at 461, 463. As discussed further herein, the record in this case is materially different than in *Hicks*, including as to the named plaintiffs. *See infra* at 16-18.

Finally, the Court in *Hicks* had no occasion to consider Ohio law. As discussed further herein, Ohio law recognizes that actual repair costs are relevant to whether an insured is entitled to damages for an alleged breach of the ACV provision of a policy. Indeed, the Ohio Supreme Court has reversed the certification of a class based in part on the individualized nature of such evidence. *See Cullen v. State Farm Mut. Auto. Ins. Co.*, 999 N.E.2d 614, 626 (Ohio 2013) ("Significant individual questions therefore exist concerning ... the costs of repairing or replacing [the damaged property], and the amount of the deductible in establishing State Farm's liability to any given class member."). Moreover, under Ohio law, any overestimation of the ACV amount may be considered in assessing whether the depreciation of non-material costs resulted in an injury. *Infra* at 25-26. *Hicks* does not bar presentation of individualized evidence concerning those issues.

To the extent *Hicks* is relevant here, it shows just how far Plaintiffs have overreached.

## II.  Plaintiffs Have Failed to Establish Adequacy or Typicality.

Rule 23(a) provides that a class may be certified only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class; and ... the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3), (4). The typicality requirement "limit[s] the class claims to those fairly encompassed by the named plaintiffs' claims." *In re Am. Med.*, 75 F.3d at 1082. It is lacking where "[a] named plaintiff who proved his own claim would not necessarily have proved anybody else's claim." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997). The adequacy requirement "overlaps with the typicality requirement" and mandates that "'1) the representative must have common interests with unnamed members of

the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *In re Am. Med.*, 75 F.3d at 1083 (citation omitted).

Neither of the Named Plaintiffs can meet these requirements, and the Court should reject Plaintiffs' belated request to permit Ms. Ermidis—a non-party—to serve as a class representative.

### A. Plaintiffs Have No Valid Individual Claim and Their Request to Appoint a Non-party With an Untimely Claim as Class Representative Also Fails.

Where the named plaintiff is "[w]ithout a viable claim, [she] cannot represent others whom she alleged were similarly situated." *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 878 (6th Cir. 2012) (citation omitted). It follows that "individuals with time-barred claims may not pursue relief as part of a class action." *Anderson v. United Fin. Sys. Corp.*, 281 F.R.D. 292, 295 (N.D. Ohio 2012) (Boyko, J.). Cranfield and Northpointe fail as class representatives for this reason, and their request that Ms. Ermidis be appointed as a representative is likewise improper.

### 1. Cranfield's Claim is Untimely.

Cranfield filed suit well past the one-year deadline in his policy based on his loss date of October 14, 2014. Ex. N at 27; Doc. 1-1. Discovery has confirmed that there is no excuse for his delay. Cranfield did not even report his claim until March 2015—five months after the loss. Ex. C at 73:1-4. State Farm promptly inspected the damage and sent its estimate and initial ACV payment to Cranfield's public adjuster, Mr. Jacoby of Metro, on March 25, 2015, with a reminder of the one-year filing deadline. *Supra* at 4. Metro then sat on its hands, allowing the deadline to lapse.

Moreover, Cranfield's fraudulent concealment allegations are without merit. He cannot credibly argue that his public adjuster did not know, and with the exercise of diligence could not have discovered, that State Farm had applied non-material depreciation in calculating ACV. Indeed, Jacoby admitted that he could tell from the estimate that it included such depreciation. *Supra* at 5. Jacoby's experience with these issues prompted Plaintiffs' counsel to retain him in

2016 as a *consulting expert* for this case (and several others). *Supra* at 5. Accordingly, Mr. Cranfield's claim is time-barred and he may not serve as class representative. *See Jenkins v. State Farm Fire and Cas. Co.*, No. 1-16-0612, 2017 WL 2672549, at *1 (Ill. App. Ct. June 20, 2017) (affirming dismissal of proposed labor depreciation class action based on named plaintiff's failure to comply with one-year suit limitation provision).

### 2. Northpointe's Claim is Untimely and Subject to Additional Defenses.

The two-year provision of Northpointe's Businessowners policy required that any suit be filed by April 2, 2018—but Northpointe was not added here until March 25, 2021. Doc. 103.

Northpointe's claim was not tolled pursuant to *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 554 (1974), as Plaintiffs contend, because Northpointe was not a member of the class as initially proposed. *See, e.g.*, *Day v. NLO, Inc.*, 798 F. Supp. 1322, 1330 (S.D. Ohio 1992) (holding that *American Pipe* tolling had "no application" because plaintiffs "were expressly excluded from the proposed class" in earlier case). The initial Complaint proposed a class limited to persons with *homeowners* policies. Doc. 1-1, ¶31; *see also id.*, ¶30. It was not until July 15, 2020—more than two years after Northpointe's limitation period expired—that Cranfield attempted to expand the proposed class to other types of insurance policies. Doc. 57, ¶63. Moreover, no claim of fraudulent concealment would be viable given that Northpointe's insurance claim was handled by one of the attorneys for Plaintiffs here (and in several other labor depreciation matters), Mr. Whetstone.[7]

Aside from being time-barred, Northpointe also lacks standing because it has been paid all

---

[7] State Farm further disputes that *American Pipe* tolling applies to contractual limitations periods. *See Jones v. Unum Life Ins. Co. of Am.*, No. 4:06CV00547, 2006 WL 3462130, at *2 (E.D. Ark. Nov. 29, 2006) (rejecting attempt to revive claims barred by contractual limitations period under *American Pipe*); *cf. Sarmiento v. Grange Mut. Cas. Co.*, 835 N.E.2d 692, 699 (Ohio 2005) (holding that insurance policy limitations period was not tolled for claims by minors despite statute providing tolling to minors).

intially applied depreciation and, thus, has sustained no injury. *See infra* at 28-30. Moreover, Northpoint's claim for interest is not supported by Ohio law[8] and, in any event, a claim for interest alone does not provide standing.[9] Finally, the doctrine of accord and satisfaction bars Northpointe's claims given its acceptance of the replacement cost settlement of the claim proposed by State Farm. *See Allen v. R.G. Indux. Supply*, 611 N.E.2d 794, 797 (Ohio 1993). Accordingly, Northpointe also is not an appropriate class representative.

**3.  Ms. Ermidis's Claim is Untimely and She is Not a Proper Class Representative.**

Plaintiffs also ask the Court appoint a class representative who is not a party and has not asserted any claim in this suit—Ms. Ermidis. Pl. Br. at 18 n.4. That request should be denied.

First, any claim asserted by Ms. Ermidis in this case would be untimely. Even assuming that *American Pipe* tolling applies to her claim, such tolling stopped on November 26, 2018, when this Court dismissed the case with prejudice (Docs. 47-48). *See Collins v. Vill. of Palatine, Illinois*, 875 F.3d 839, 841, 845 (7th Cir. 2017) (holding that *American Pipe* "[t]olling stops immediately when a class-action suit is dismissed—with or without prejudice—before the class is certified,"

---

[8] Under Ohio law, any right to interest for late payment of a debt "is extinguished when payment of the debt is accepted." *See Kuntz Drug Stores, Inc. v. Ohio Dep't of Pub. Welfare*, No. 82AP-23, 1982 WL 4316, at *2 (Ohio Ct. App. Aug. 3, 1982). Thus, "an action to recover the interest cannot be maintained after the payment of the principal …." *Gawne v. Casanova*, 90 N.E.2d 444, 445 (Ohio Ct. App. 1948).

[9] *See Holaway v. Protective Life Ins. Co*., No. 4:07-CV-109 (CDL), 2007 WL 2904162, at *2 (M.D. Ga. Oct. 3, 2007) ("the Court finds that a potential claim for interest alone tied to an indefinite 'prompt' refund date is insufficient to establish standing when the underlying obligation … was fully discharged prior to the filing of the lawsuit"); *Amirhamzeh v. Chase Bank USA, N.A*., No. CV 13-00527 BRO FFMX, 2013 WL 7219270, at *4 (C.D. Cal. Oct. 7, 2013). Certification of a class of that includes so many members who sustained no injury would be contrary to the "case or controversy" requirement of Article III. *See In re Carpenter Co.*, No. 14-0302, 2014 WL 12809636, at *2 (6th Cir. Sept. 29, 2014) (class definition must be "sufficiently narrow to exclude uninjured parties"). While *Hicks* concluded that this is a "merits question" that need not be addressed at the class certification stage (noting that the district court might need to amend the class definition to exclude such claims), 965 F.3d at 463, that aspect of *Hicks* may be impacted by a case pending before the Supreme Court raising the issue of class member standing. *Ramirez v. TransUnion LLC*, 951 F.3d 1008 (9th Cir. 2020), *cert. granted in part,* 141 S. Ct. 972 (Mem.) (2020).

and the limitations clock "immediately resumes"); *Messer v. Saul*, No. CV 7:19-093, 2020 WL 1860695, at *5 (E.D. Ky. Apr. 13, 2020) (Reeves, C.J.) (same, and noting that "an appeal generally has no effect on the tolling period"), *appeal docketed*, No. 20-5552 (6th Cir. May 26, 2020). Thus, the limitations period in Ms. Ermidis's homeowners policy began running on November 26, 2018, and expired well before the dismissal ruling was reversed 19 months later on March 23, 2020.[10]

Additionally, any tolling that might be available to Ms. Ermidis would apply only to her *individual* claim, not any claims as a class representative. *See China Agritech, Inc. v. Resh,* 138 S. Ct. 1800, 1808 (2018) ("[plaintiff's] interest in representing the class as lead plaintiff ... would not be preserved by the prior plaintiff's timely filed class suit"); *Dennis v. JPMorgan Chase & Co*., 439 F. Supp. 3d 256, 266 (S.D.N.Y. 2020) (holding that *American Pipe* tolling was available only for new plaintiff's individual claims, not its claims on behalf of class). Thus, she could not serve as a class representative even assuming she had a timely claim.

Furthermore, Ms. Ermidis cannot properly be appointed as a class representative because she is not a party. Rule 23 provides for class representation through "representative *parties*." Fed. R. Civ. P. 23(a) (emphasis supplied); *see also* Fed. R. Civ. P. 23(a)(3), (4) (typicality and adequacy requirements referring to "parties"). Ermidis is not a party, and the deadline set by the Court for "amending pleadings and/or adding parties" expired *on July 31, 2020*. Doc. 62. Plaintiffs have no excuse for their delay given that the public adjuster who Plaintiffs' counsel has retained as their "consulting expert" represented Ermidis as well. *See* Doc. 86-2 at 1.

When deciding whether to permit a new class representative to replace the plaintiff, "the paramount consideration is whether the putative class has been certified." *Hitt v. Arizona Beverage*

---

[10] Because the same bar likely would apply to any other homeowners insured whom Plaintiffs' counsel might later identify, Plaintiffs cannot satisfy the numerosity requirement under Rule 23(a). *See Guy v. Lexington-Fayette Urb. Cty. Gov't*, 488 F. App'x 9, 22 (6th Cir. 2012) (affirming ruling that plaintiffs lacked "numerosity because only four class members' claims were not time-barred").

*Co., LLC*, No. 08CV809WQH-POR, 2009 WL 4261192, at *5 (S.D. Cal. Nov. 24, 2009) (denying leave to locate new class representative after named plaintiff dropped her claim). As one court noted in rejecting a similar request, when a class has not been certified, the class has no "legal status separate from that of the named plaintiff"; thus, there is no basis to simply identify new representatives at class certification. *Miller v. Mercedes-Benz USA LLC*, No. CV 06-05382, 2009 WL 1393488, at *1-2 (C.D. Cal. May 15, 2009) (criticizing plaintiff's "bait-and-switch tactic").[11]

Because Plaintiffs have no adequate class representative, their motion should be denied.

**B.      Cranfield and Northpointe are Not Appropriate Class Representatives for Insureds Whose Claims are Within the Applicable Limitations Period.**

Cranfield's and Northpointe's vulnerability to a limitations defense further prevents them from satisfying claim typicality, which requires "that the defendant does not have unique defenses to the claims of the class representative." *Rega v. Nationwide Mut. Ins. Co.*, No. 1:11-CV-1822, 2012 WL 5207559, at *6 (N.D. Ohio Oct. 22, 2012) (holding that named plaintiff did not satisfy typicality because, *inter alia*, "[he] made his payments late, yet he seeks to represent a class that made its payments on time"). Plaintiffs conceded this point in opposition to State Farm's motion

---

[11] *See also Bailey v. Cumberland Cas. & Sur. Co.,* 180 F. App'x 862, 865 (11th Cir. 2006) (affirming ruling denying leave to substitute new named plaintiff and distinguishing cited law as "deal[ing] with a class that was already certified"); *Lidie v. State of California,* 478 F.2d 552, 555 (9th Cir.1973) ("where the original plaintiffs were never qualified to represent the class, a motion to intervene represents a back-door attempt to begin the action anew, and need not be granted"). While Plaintiffs note that the court in *Arnold* granted a request there to appoint several non-parties to serve as class representatives (Pl. Br. at 18 n. 4), those non-parties were appointed as class representatives *in addition to* the named plaintiff, and the court's ruling further does not include any analysis of the issue. *See Arnold v. State Farm Fire & Cas. Co.*, No. 2:17-CV-00148-TFM-C, 2020 WL 6879271, at *11 (S.D. Ala. Nov. 23, 2020). Plaintiffs also cite *Fisher v. Ciba Specialty Chemicals Corp.*, 238 F.R.D. 273, 300 n. 61 (S.D. Ala. 2006), but that was a ruling *denying* class certification, and the court noted that "Plaintiffs have not requested substitution of their existing class representatives." The court at most noted in dicta that substitution of representatives might be permitted in certain situations. *Id.* Plaintiffs also rely upon *In re Telectronics Pacing Sys., Inc.*, 172 F.R.D. 271, 281 (S.D. Ohio 1997), but that case is distinguishable. *Telectronics* was a mass tort action alleging damages from defective pacemakers. The plaintiffs sought certification of a nationwide class with ten subclasses and three sub-subclasses. The defendants argued only that some of the many class representatives relied upon by plaintiff were inappropriate because they had not filed individual actions. That is far different from allowing a class to be certified based on a single class representative who has not filed any claim.

to strike class allegations: "Persons within the contractual limitations period are not similarly situated to Cranfield, and Counsel will use another class representative for them." Doc. 82 at 22. Accordingly, Cranfield and Northpointe cannot satisfy the adequacy and typicality requirements for claims that are within the applicable policy limitations period.

### C. Plaintiffs are Not Appropriate Class Representatives for Anyone Insured Under Other Types of Insurance Policies.

Finally, Plaintiffs have failed to establish by a preponderance of the evidence that their claims are typical of claims under other types of policies. While Plaintiffs provided form policies as an exhibit, they improperly put the onus on the Court to sift through those materials to determine whether the provisions of the various policies are sufficiently similar to establish that Plaintiffs' claim is typical. *See, e.g.*, *Quinn v. Nationwide Ins. Co.*, 281 F. App'x 771, 776 (10th Cir. 2008) (affirming ruling that typicality was not satisfied where plaintiffs failed to establish that contracts at issue were similar and were breached in the same way).

The differences in policy language here are material. As just one example, unlike Plaintiffs' policy, the Manufactured Home policy states that State Farm "will pay the lower of": (1) the ACV; (2) "the amount necessary to repair or replace"; or (3) policy limits. *See* Ex. B at 1. One court denied class certification just last year in a labor depreciation case based on substantially identical policy language—because it required consideration, for each insured's claim, of whether the amount the insurer paid was greater than "the amount necessary to repair or replace." *Brasher*, 2020 WL 4673259, at *2 (policy stating that insurer's payment "will not exceed the smallest of: a) [the ACV] …; b) the amount necessary to repair or replace …; or c) the [policy limits]"). While Plaintiffs contend that repair costs have no bearing on their claims (a position State Farm strongly disputes), that argument clearly does not apply for policies (like the Manufactured Home policy) expressly stating that State Farm will pay the "lower of" ACV or the cost necessary to repair.

*Hicks* certainly does not support Plaintiffs' argument, as the district court there *rejected* the plaintiffs' effort to expand the class definition beyond homeowners policies, limiting the class to "[a]ll persons and entities that were insured *under the same type of homeowners policy form issued to Plaintiffs* …." *Hicks*, 2019 WL 846044, at *4 (emphasis added). Similarly, the district court in *Mitchell* concluded that the named plaintiff lacked standing to represent policyholders under other policy types, and as a result held that "class will be limited (and the class definition altered) to include only Homeowners Policy holders." *Mitchell v. State Farm Fire and Cas. Co.*, 327 F.R.D. 552, 559 (N.D. Miss. 2018) (also criticizing plaintiff's failed showing of comparability of policies), *aff'd*, 954 F.3d 700 (5th Cir. 2020). As in *Hicks* and *Mitchell*, Plaintiffs have not met their burden to establish that their claims are typical of those by persons insured under other forms. *See Treviso v. Nat'l Football Museum, Inc.*, No. 1:17CV472, 2018 WL 4608197, at *9 (N.D. Ohio Sept. 25, 2018) (Boyko, J.) (denying class certification due to varying terms and conditions in contracts at issue); *Phillips v. WellPoint Inc.*, No. 10-CV-00357-JPG, 2012 WL 4904523, at *5 (S.D. Ill. Oct. 15, 2012) (denying certification due to the need to "inquire into multiple different insurance policies"), *aff'd* 764 F.3d 662 (7th Cir. 2014).[12]

### III. Plaintiffs Have Failed to Establish Superiority or Manageability.

Under Rule 23(b)(3), the Court must find that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," not merely that it is "adequate." *Anderson*, 281 F.R.D. at 297. The need for "myriad mini-trials" defeats both manageability and

---

[12] In addition, Plaintiffs have failed to show that their claims are typical of the claims of putative class members who received payment under a different policy *provision*. Claims eventually settled on a replacement cost basis implicate different policy language than claims settled solely for ACV. They also face different defenses (*e.g.*, lack of standing and injury). Because proof of the Cranfield or Ermidis claims (ACV-only claims) would have no bearing upon those defenses, Cranfield and Ermidis cannot represent such policyholders. The Fifth Circuit made this same observation in *Mitchell*, noting that the class definition appropriately "exclude[d]" any policyholders who had made claims for RCBs. *Mitchell*, 954 F.3d at 711.

superiority. *See Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 470 (6th Cir. 2017). And in this case, there is no way to avoid such mini-trials, as demonstrated at length in the following section, *infra*.

Plaintiffs' reliance on State Farm's supplemental payment programs in Kentucky and Alabama following adverse rulings in labor depreciation lawsuits (*see* Pl. Br. 29) does not establish either superiority or manageability. In those programs, State Farm assembled teams of employees to review current claims that *might* have received an ACV payment with labor depreciation applied. *See* Tyler McKitterick Dep. Tr., Ex. K, at 77:22-79:19, 84:1-85:10; Doc. 99-11. The reviewers worked for weeks at a time to analyze claim information, update repair estimates to account for known repairs, modify Xactimate settings if labor depreciation had been applied, and (if appropriate) issue a supplemental payment. *See id.* The programs did not assess the sufficiency of State Farm's ACV payments, did not analyze older claims, did not calculate damages or interest, and did not address litigation defenses. *See id*. Moreover, they required time-intensive, individualized factual analysis—the *opposite* of classwide proofs.

## IV. Plaintiffs Have Failed to Establish Predominance.

To obtain class certification under Rule 23(b)(3), Plaintiffs must show "that issues subject to generalized proof and applicable to the class as a whole predominate" over those requiring individualized proof. *Randleman v. Fid. Nat'l Title Ins. Co.*, 646 F.3d 347, 352-53 (6th Cir. 2011). Predominance fails where "substantial, individual inquiries" are required. *Id.*. This case exemplifies such a failure.

Plaintiffs contend that State Farm necessarily committed a breach of contract every time it applied labor depreciation in calculating ACV on an estimate. But this purportedly "simple" theory overlooks the policy language. It also ignores Plaintiffs' overbroad class definition and the overwhelming individualized issues that flow therefrom. The Combined Report identifies 34,000

-19-

putative class members. Even assuming the viability of Plaintiffs' liability theory, extensive individualized issues as to each claim include: (A) whether it is timely; (B) whether policy limits were paid; (C) whether State Farm's payment was based on an ACV estimate; (D) whether non-material depreciation resulted in an underpayment; (E) whether those who received RCB payments are entitled to interest; and (F) whether the claim is barred based on another fact-specific defense.

State Farm's due process rights as a defendant—including the right "to present every available defense," *Lindsey v. Normet*, 405 U.S. 56, 66 (1972) (citation omitted), and to have a jury determine liability and damages (if any), *Schmidt v. Ramsey*, 860 F.3d 1038, 1045 (8th Cir. 2017)—do not disappear when a case is styled as a class action. The Supreme Court has recognized that "the Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right.'" *Dukes*, 564 U.S. at 367 (quoting 28 U.S.C. § 2072(b)). That means that a class action "cannot be certified on the premise that [the defendant] will not be entitled to litigate its … defenses to individual claims." *Id.* Here, those individualized defenses preclude certification.

A.     **Whether Each Claim is Timely is an Entirely Individualized Issue.**

Plaintiffs hope to avoid the contractual limitations periods in State Farm's policies by claiming those limits were tolled through fraudulent concealment. Doc. 82. But that doctrine raises numerous individualized issues that would require mini-trials to resolve. The district court in *Hicks* limited the class to claims within the contractual limitations period for this very reason, observing that fraudulent concealment could not be established "without putting the policyholder over here on the stand subject to cross-examination." Ex. A at 30:4-31:8. Here, too, the issues implicated by Plaintiffs' fraudulent concealment allegations cannot be decided *en masse.*

Under Ohio law, fraudulent concealment is not available if the plaintiff was, in fact, aware of the facts the defendant purportedly attempted to conceal. *See Smith v. Barclay*, No. 11AP-798, 2012 WL 5378180, at *7 (Ohio Ct. App. Nov. 1, 2012) ("[W]e reject the argument that Barclay's

acts of concealment tolled the statute of limitations. Regardless of Barclay's actions, Smith became aware of the potential problem when Dr. Gill initially filed for summary judgment."). Moreover, the "right to claim 'fraudulent concealment never continues beyond the time that a plaintiff, by exercising reasonable diligence, should have discovered the facts at issue.'" *Zemcik v. LaPine Truck Sales & Equip. Co.*, 706 N.E.2d 860, 865 (Ohio Ct. App. 1998) (citation omitted).[13] Thus, the doctrine requires an individualized inquiry into each class member's knowledge and diligence.

To see that this issue cannot be resolved on a class-wide basis, the Court need look no further than the claims of the named Plaintiffs. Their fraudulent concealment arguments are belied by the fact that, in their dealings with State Farm, Cranfield was represented by an experienced public adjuster *who is a consulting expert for Plaintiffs' counsel* in labor depreciation cases, and Northpointe was represented by one of the Plaintiffs' attorneys. *See generally Wright v. State Farm Fire and Cas. Co.*, No. 2:12-CV-409, 2013 WL 1945094, at *3 (S.D. Ohio May 9, 2013) ("Under Ohio law, an agent's knowledge is imputed to the principal."). Cranfield's public adjuster (Jacoby) acknowledged that he understood non-material depreciation had been applied to Cranfield's estimate. *Supra* at 4-5.  And the notion that Northpointe's attorney did not know, or could not with reasonable diligence have discovered, that non-material depreciation had been applied in calculating Northpointe's ACV payment is dubious at best. Regardless, the knowledge and diligence of *each* policyholder—or, as applicable, their public adjuster or attorney—will need to be tested on cross examination.[14] Individualized, claim-specific facts such as these are critical to

---

[13] *See also Perkins v. Falke & Dunphy, L.L.C.*, No. 25162, 2012 WL 6097104, at *3 (Ohio Ct. App. Dec. 7, 2012) (equitable tolling of statute of limitations based upon fraudulent concealment requires proof that "plaintiff, despite the exercise of due diligence, failed to discover the facts supporting the claim").

[14] Plaintiff's expert explained that whether a public adjuster would know that non-material costs were depreciated would depend on the estimate and the adjuster's experience. *See* Ex. J at 57:4-8.

the issue of whether fraudulent concealment applies to extend the contractual limitations period.[15]

Numerous courts have agreed that issues concerning the equitable tolling of a limitations period cannot be resolved on a class-wide basis.[16] Plaintiffs' reliance on this Court's decision in *In re Whirlpool Corporation Front-Loading Washer Product Liability Litigation*, 45 F. Supp. 3d 706, 721-23 (N.D. Ohio 2014), is misplaced. *See* Pl. Br. at 2 n.1. The *Whirlpool* case involved design defect claims tied to mold growth in front-loading washing machines, and the evidence showed that customers "could not reasonably have discovered" the defect. *See* 45 F. Supp. 3d at 722-23. Here, in contrast, the alleged wrongful conduct was a depreciation practice based on a contractual construction deemed reasonable by this Court, the Sixth Circuit, and many other courts, making it generally known on that basis alone.  Moreover, the challenged depreciation is public, is transparent on State Farm's estimates, in the normal course is discussed with insureds who ask about it, and likely is known (or could easily be discerned) by many putative class members.[17]

---

[15] Plaintiffs have previously acknowledged that their fraudulent concealment theory is highly fact-specific, dependent on things such as "whether Cranfield could have discovered" State Farm's depreciation of non-materials. Doc. 82 at 6, 16. Such questions cannot be decided class-wide.

[16] *See, e.g., Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 342 (4th Cir. 1998) ("tolling the statute of limitations on each of plaintiffs' claims depends on individualized showings that are non-typical and unique to each franchisee"); *Taylor v. Midland Nat'l Life Ins. Co.*, No. 416CV00140SMRHCA, 2019 WL 7500238, at *12-13 (S.D. Iowa May 3, 2019) ("The record similarly lacks a basis to find that common evidence can establish the reliance element [of fraudulent concealment].… Such individual issues would predominate over the common issues.…"); *Cline v. Sunoco, Inc. (R&M)*, 333 F.R.D. 676, 687 (E.D. Okla. 2019) ("To toll the statute of limitations, the Court would need to perform individual inquiries into the reasonable diligence of each class member that would defeat the predominance requirement under Rule 23(b)(3)."); *Bushbeck v. Chicago Title Ins. Co.*, No. C08-0755JLR, 2011 WL 13100725, at *14 (W.D. Wash. Aug. 15, 2011) ("[A]n individualized inquiry would be required to determine whether the statute of limitations should be tolled for those class members" with older claims); *Contos v. Wells Fargo Escrow Co., LLC*, No. C08-838Z, 2010 WL 2679886, at *7 (W.D. Wash. July 1, 2010) (for parties with claims outside one-year statute of limitations, "the Court would need to undertake individualized factual inquiries to determine … whether they have been preserved by equitable tolling"); *Quezada v. Loan Ctr. of California, Inc.*, No. CIV. 2:0800177WBSKJM, 2009 WL 5113506, at *9 (E.D. Cal. Dec. 18, 2009) ("whether the statute of limitations may be equitably tolled for each class member will be a highly individualized inquiry that will be necessary before the court may even reach the merits of each … claim").

[17] Plaintiffs' suggestion that State Farm supposedly "removed the box" on its estimates that would have revealed that depreciation was applied to non-material costs is entirely unfounded. Pl. Br. 3. State Farm has

In short, even if there were viable allegations of fraud here (and there are not), policyholders (or their public adjusters or attorneys) who knew of or with reasonable diligence could have discovered State Farm's practice would still be barred by the suit limitations provision. And policyholders who claim they did not know of it would need to be subjected to cross examination so that the jury could evaluate their assertions on a claim by claim basis. These individualized issues defeat predominance.

**B.      Whether Policy Limits Were Paid is an Entirely Individualized Issue.**

Determining whether State Farm has already paid the full applicable policy limits, thereby extinguishing a policyholder's claim to damages, likewise cannot be accurately determined from the Combined Report alone. Ex. H, ¶60; *see also* Ex. J at 159:9-160:15 (Plaintiffs' expert acknowledging that limits payments will require a file review).[18] This is because the policies have separate limits (e.g., dwelling limit, dwelling extension limit, etc.) and the available data does not indicate which policy limit is applicable for the claim. Ex. H, ¶60. Based upon her review of the random claim-file sampling, Ms. Albright concluded there could be approximately 500 claims in the Combined Report alone where policy limits were paid. *Id.* A detailed review of the claim file would be necessary to make these determinations as to all such policyholders. *Id.*

**C.      Whether State Farm's Payment was Based on an ACV Estimate is an Entirely Individualized Issue.**

While the Combined Report identifies claims where non-material depreciation was applied

---

not deleted any such information from its estimates. Just like the final version of estimates prepared in the default version of Xactimate and the final version of estimates prepared by Plaintiff's expert, the estimates State Farm provides to its policyholders do not identify any of the depreciation settings in Xactimate. *See* Ex. F, ¶¶29-30; Ex. J at 185:24-191:1 & Ex. 6. They do, however, reveal the precise amount of depreciation applied to each repair task, including those with non-material components. *See* Ex. F, ¶30.

[18] The proposed class definition excludes claims where "the initial actual cash value payment" exhausted the policy limits, Doc. 103, ¶83, but then more broadly excludes any persons or entities who received the full policy limits. *Id.* Plaintiffs' expert explained that he will not calculate damages for anyone who received the limits under their policy through *any* claim payment. *See* Ex. J at 158:6-159:7.

to an estimate, Ms. Albright's review confirmed that the existence of an estimate reflecting the application of non-material depreciation applied does *not* mean that State Farm paid the claim based on that or any other estimate, or that State Farm paid estimated ACV as opposed to up-front replacement costs. *See id.*, ¶¶24-25; *see also* Ex. F, ¶¶21-23. For example, while the Combined Report for one of the sample claims indicated that $111 in non-material depreciation may have been applied to the estimate, Ms. Albright concluded through her review that the policyholder in fact "never received a payment with a deduction for non-material (or any other) depreciation." Ex. H, ¶92. What the data did not show is that after State Farm's estimate was prepared, a higher contractor's estimate was submitted and State Farm then paid replacement costs based on that estimate. *Id.* Such policyholders cannot establish damages or injury, but cannot be identified other than through individualized factfinding. *See id.*, ¶90.

### D. Whether the Application of Non-Material Depreciation to an ACV Estimate Resulted in Injury is an Entirely Individualized Issue.

Plaintiffs' liability theory assumes that whatever amount State Farm initially estimated as the ACV of a loss measured *exactly* the amount of the loss but for non-material depreciation. Thus, per Plaintiffs, merely adding back the non-material depreciation will produce the "correct" ACV figure. *See* Pl. Br. at 8. The fallacy with this theory is that State Farm's policies do not promise payment of whatever amount appears at the bottom of the initial estimate. Rather, they provide for payment of "ACV" in an amount "not to exceed the cost to repair." Ex. N at 24.[19] Thus, whether State Farm breached its contract and injured any putative class member depends on whether the *dollar amount* it paid initially (i) was less than the true ACV of the property *and* (ii) was less than the insured's actual repair costs. Neither showing can be made using common evidence.

---

[19] Northpointe's policy similarly limits State Farm's obligation to "not more than" the policyholder's "cost to replace" or the amount "actually spen[t]" for repairs. Ex. O at 18.

1.     **The ACV of a Policyholder's Damaged Property Depends on More Than State Farm's Initial Estimate of ACV.**

While State Farm's initial estimate may be relevant, it is not a judicial admission or a sworn damages opinion. It is merely an *estimate* of what it *might* cost to repair damaged property, subject to modification as the claim progresses or as new information is received. *See* Ex. I at 4-8. Ohio law recognizes this same point. For example, in *Paterson-Leitch Co. v. Insurance Co. of North America*, 366 F. Supp. 749 (N.D. Ohio 1973), the plaintiff argued that his insurer's initial estimate of ACV should be deemed final for purpose of establishing damages following a fire loss. *Id.* at 750. The court disagreed. It held that while the insurer's estimates could be submitted as *evidence* of ACV under Ohio law, they "may *not be deemed as conclusive*." *Id.* at 757 (emphasis added).[20]

Because Plaintiffs have made no legal showing that State Farm is "bound" to its initial estimate, State Farm is entitled to defend the sufficiency of its ACV payment *regardless* of how it was calculated. *Nguyen v. St. Paul Travelers Ins. Co.,* No. 06-4130, 2008 WL 4691685, at *7 (E.D. La. Oct. 22, 2008). That includes showing that its payment was substantially overstated notwithstanding labor depreciation. The Eighth Circuit reversed class certification in *LaBrier* for this reason, holding that predominance could not be satisfied based on the *assumption* that labor depreciation always resulted in an underpayment of ACV. 872 F.3d at 577.[21]

Generally, whenever a policyholder's actual repair costs become known, State Farm relies

---

[20] *See also Schaller v. Nat'l Alliance Ins. Co.*, 496 F. Supp. 2d 890, 897 n.7 (S.D. Ohio 2007) (finding no support for plaintiffs' claim that insurer was "required to use" initial estimate to set amount of loss).

[21] Multiple courts have recognized the validity of defenses based on the sufficiency of an insurer's overall payment. *See, e.g.*, *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 890 (7th Cir. 2011) (reversing class certification because "[i]f a given policyholder was fully compensated for the damage …, then State Farm will have satisfied its contractual obligation *regardless* of" how it calculated the amount) (emphasis added); *Mills v. Foremost Ins. Co.*, 269 F.R.D 663, 676-77 (M.D. Fla. 2010) (denying class certification for claims based on alleged improper depreciation practice because of insurer defense that it "overpa[id]" claims); *Nguyen*, 2008 WL 4691685, at *5 (denying class certification because, "for each class member, the issue is whether the *total amount* paid, not just a discrete, uniformly applicable component of that payment, was sufficient to satisfy [the insurer's] contractual obligation") (emphasis added).

on those repair costs rather than any prior estimate of them. Ex. H, ¶¶24, 98-100. However, for policyholders who do not claim RCBs, State Farm generally does not have repair cost records. Ex. F, ¶26. That information is necessary to evaluate the sufficiency of State Farm's claim payment(s) under the policy language, but can often be obtained only through individualized discovery of policyholders and their contractors and/or inspection of policyholders' properties. Ex. H, ¶¶30-31.

The record here is filled with evidence that many initial estimates of replacement cost may have been overstated, causing the estimated ACV amount—calculated as replacement cost less depreciation—to be overstated, as well. *See* Ex. H, ¶¶26-27, 67, 94, 107, 111.[22] State Farm's general contractor expert explained precisely why initial estimates of replacement costs may be overstated. *See* Ex. I at 4-8. Overstatements are often revealed by the repair costs actually incurred or through an evaluation of the estimate for repairs not reasonably likely to be needed. *See id.*[23] In short, while the ACV estimate is a "starting point," it cannot be the exclusive measure of the ACV of a damaged structure. *Id.* at 3; *accord Paterson-Leitch*, 366 F. Supp. at 757.

## 2. The "Cost to Repair" Cap is Fully Enforceable and Requires Consideration of Each Policyholder's Repair Costs.

State Farm's policies expressly limit the amount policyholders can recover for ACV to their "cost to repair" the damaged property. *Supra* at 3. Whether this issue is framed as a liability or damages question, "the result is the same: the question involves an individual inquiry." *Brasher*,

---

[22] Indeed, Albright's review revealed that, for claims where full replacement cost benefits were paid after an initial ACV payment, in many cases the *actual* repair costs were less than the *estimated* costs. Ex. H, ¶¶61-62; *see also Sierra Pac. Power Co. v. Hartford Steam Boiler Inspection & Ins. Co.*, 490 F. App'x 871, 878 (9th Cir. 2012) (holding that actual repair costs are "properly included in the calculation of replacement cost, which would then be reduced by the appropriate depreciation to determine the ACV"). Berryman further identified several files where the policyholder's actual repair costs were less (or expected to be less) than State Farm's *ACV payments*. In such cases, there certainly was no "underpayment" of ACV.

[23] *See also Nguyen*, 2008 WL 4691685, at *5 (holding that State Farm could demonstrate the sufficiency of its claim payments by showing that its "underlying ACV number was too high," the pricing data "in the estimate was above market rate," or that "contractors would do the work for" less).

2020 WL 4673259, at *12 n.5. In *Brasher*, the court held that substantially identical cap language to that in State Farm's policies defeated predominance. *Id.* at *13. Specifically, it found that no class member could establish a claim for breach without individualized proof of repair costs:

> [Even] assuming that depreciating labor breaches the policies, if a class member … made repairs for less than their ACV payment, then [they] would [be] unable to establish damage caused by the breach. This inquiry into whether these class members made repairs and for what amount is an individual damages issue, which combined with [the] lack of a reliable damages model, precludes class certification.

*Id.*[24]

The court in *Brasher* correctly recognized that policy language matters when evaluating a claim for breach of contract. Moreover, its interpretation of the "cost to repair" cap is consistent with extensive authority. *See, e.g.*, *Weidman v. Erie Ins. Grp.*, 745 N.E.2d 292, 295-99 (Ind. Ct. App. 2001) (denying insured's summary judgment motion because policy provided that ACV would "not exceed the amount necessary to repair or replace the damaged property," and insured did not prove that his repair costs exceeded his ACV payment); *Koch v. State Farm Fire and Cas. Co.*, 565 So. 2d 226, 232 (Ala. 1990) (affirming directed verdict under policy providing for ACV payment in amount not "exceeding that necessary to repair or replace" because insurer paid enough to cover policyholder's cost of replacement); *Elberon Bathing Co. v. Ambassador Ins. Co.*, 389 A.2d 439, 442 (N.J. 1978) (holding that actual repair costs serve as "an upper limit on … the insurer's liability" for ACV under language substantially identical to State Farm's policy). Plaintiffs' cited authorities on this issue are not persuasive.[25]

---

[24] Like Plaintiffs' expert here, the expert in *Brasher* proposed to calculate damages claim-by-claim by modifying the depreciation settings on thousands of underlying estimates. *Compare* Doc. 99-6, ¶38 *with Brasher*, 2020 WL 4673259, at *12. The court in *Brasher* correctly rejected that model as inappropriate for class certification because it "does not 'establish that damages are capable of measurement on a classwide basis,'" but rather shows they are entirely individualized. *Id.* (quoting *Comcast*, 569 U.S. at 34).

[25] Plaintiffs rely on *Mills v. Foremost Insurance Co.*, 511 F.3d 1300, 1305 (11th Cir. 2008). *See* Pl. Br. 21 n.5. But *Mills* did not hold that insureds can recover more than their repair costs for ACV when the policy

E.      **Whether Insureds Who Were Paid Replacement Cost Benefits Are Entitled to Interest is an Entirely Individualized Issue.**

Plaintiffs' interest-only claims on behalf of those who were paid on a replacement cost basis present additional individualized issues. As shown above, Plaintiffs' contention that their claims are "unaffected" by the costs that policyholders have incurred to complete repairs, Pl. Br. at 21 n.5, disregards the plain language in the ACV provision of State Farm's policy. But Plaintiffs' argument is even further off-course when applied to policyholders who received RCBs.

Cranfield's Policy, for example, clearly states that when repairs are completed, State Farm's payment obligation is "the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property." Ex. N at 12. Because State Farm's payment obligation is expressly tied to what the insured "actually" spent on repairs, Plaintiffs' assertions that evidence should be limited to what State Farm initially *estimated* the repairs would cost is unavailing. *See Collins v. Auto-Owners Ins. Co.*, 80 N.E.3d 542, 548 (Ohio Ct. App. 2017) (undefined words in insurance policies must be given their plain and ordinary meaning).

Indeed, "[e]ven if there is some dispute with the amount of the ACV payment … the actual costs of repair cap the insurer's obligation when a replacement cost adjustment has been made."

---

says otherwise; rather, it held that ACV payments should include a provision for general contractor services when one likely is required. *See Mills*, 511 F.3d at 1305. More importantly, the district court in *Mills* later denied class certification based on individualized defenses similar to those asserted here, including the insurer's "overpayment" of claims. *Mills*, 269 F.R.D. at 676-77 (noting that "separate and distinct extrinsic evidence" would be required to refute insurer's defense that payment was "in excess" of amount owed). Plaintiff's reliance on *Parkway Assocs., LLC v. Harleysville Mut. Ins. Co.*, 129 F.App'x 955 (6th Cir. 2005), is likewise misplaced, as the policy there did not cap the amount owed for ACV at the insured's "cost to repair." *See id.* at 962; Notice of Filing, Exhibit B (at pages 6-7 of 11 of the Building and Personal Property Coverage Form), *Parkway Assocs., Inc. v. Harleysville Mut. Ins. Co.*, No. 3:99-cv-0161 (M.D. Tenn. Nov. 18, 2003) (attached hereto as Ex. L). The Eighth Circuit's decision in *Stuart* does not help Plaintiffs, either, for it did not analyze the "cost to repair" language. *See* 910 F.3d at 373-74. And while the Sixth Circuit in *Hicks* held that the trial court did not abuse its discretion in adopting plaintiffs' interpretation of the cap language, 965 F.3d at 461, in fact the trial court *did not even reference* the language in its decision. *See Hicks*, 2019 WL 846044. At bottom, Plaintiffs' assertion that they are owed ACV even if they do not repair ignores that if they *do* repair, they remain entitled only to what the policy promises, not *more* than that.

-28-

*Stiers v. State Farm Ins.*, No. 3:11-cv-437, 2012 WL 2405982, at *4 (E.D. Tenn. June 25, 2012). One of Plaintiffs' principal authorities, *Mitchell*, addressed this issue specifically and *sided with State Farm. See Mitchell*, 954 F.3d at 711 & n.16 (holding that "State Farm may dispute or adjust its initial estimate of the cost of replacement … when an insured makes a claim for the second 'RCV' payment"). Judge McKeague made the same point in his sharply worded partial dissent in *Hicks*, arguing that the district court's class certification decision should have been reversed because it "didn't distinguish between the two types of insureds"—those who received only ACV payments and those who sought RCBs. *Hicks*, 965 F.3d at 469 (McKeague, J., concurring in part and dissenting in part) (noting that, for anyone who sought RCBs, "an initial overestimation (that is, overpayment even with labor depreciation deducted) *cannot be a breach*") (emphasis added).

Notably, Ms. Albright found that over one-third of the claims she reviewed recovered replacement cost benefits for at least some repairs. Ex. H, ¶¶56, 61, 68. Many of those claims revealed that State Farm's initial estimate of replacement cost was overstated, sometimes by *thousands* of dollars. *Id.*, ¶64; *see also id.*, ¶¶67, 94-97. To determine whether the "overestimation" defeats the claim for breach contract is necessarily an individualized endeavor requiring detailed review and analysis of the claim file, and potentially testimony from the policyholder and his or her contractor. *See id.*, ¶¶7, 111; Ex. I at 4-8.

Even if such an insured could establish that non-material depreciation was withheld during the period between an ACV payment and the replacement cost payment, individualized issues would exist as to whether that provides a claim for interest. As Mr. Berryman notes, many insureds simply turn over their ACV payments to their contractor as a partial payment until RCBs are paid. Ex. I at 16-17. In that situation, the insured has not sustained any injury and is not deprived of the use of the funds. *See West Virginia v. United States*, 479 U.S. 305, 310 n.2 (1987) ("Prejudgment

interest serves to compensate for the loss of use of money"). Plaintiffs' expert agrees. *See* Ex. J. at 121:25-123:4. Furthermore, under Ohio law, the Court "has broad discretion in determining the date from which prejudgment interest should be calculated." *MRC Innovations, Inc. v. Lion Apparel, Inc.*, 152 N.E.3d 513, 526 (Ohio Ct. App. 2020) (citation omitted). The exercise of that discretion would implicate claim-specific issues, such as the issues outlined herein.

> ### F.  Whether Additional, Claim-Specific Defenses Will Defeat Particular Claims Is an Entirely Individualized Issue.

As shown by the differences between Northpointe's and Cranfield's claims, State Farm's defenses will vary greatly based the nature of each claim, and can be determined with accuracy only through a detailed review of at least the claim file materials. With respect to Northpointe, for example, State Farm will argue that Northpointe's claim is barred by the doctrine of accord and satisfaction based on his acceptance—after negotiations—of State Farm's ACV payment. *See supra* at 5-6. Yet that defense was apparent only through studying the claim file. State Farm further may seek a set-off at trial of claimed damages based on an overpayment of ACV (and potentially RCBs). *See* Doc. 55 at 18-21. There too, the viability of theses defenses will depend on the *specific* facts of each claim, thereby defeating predominance. *See Brasher*, 2020 WL 4673259, at *13-14 (denying class certification motion based on insurer's asserted (and potential) defenses for accord and satisfaction, set-off and recoupment).

## CONCLUSION

For the foregoing reasons, State Farm respectfully requests that the Court deny Plaintiffs' motion for class certification, and grant such other relief as is appropriate and just.

Dated: April 5, 2021                      Respectfully submitted,

                                          */s/ Jacob L. Kahn*

                                          Karl A. Bekeny
                                          Benjamin C. Sassé

Elisabeth C. Arko
Tucker Ellis LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113-7213
T: 216.592.5000
F: 216.592.5009
karl.bekeny@tuckerellis.com
benjamin.sasse@tuckerellis.com
Elisabeth.arko@tuckerellis.com

Joseph A. Cancila, Jr.
Jacob L. Kahn
(admitted *pro hac vice*)
Brian Neff (NY # 4304648)
(admitted *pro hac vice*)
Rachel F. Sifuentes
(admitted *pro hac vice*)
Riley Safer Holmes & Cancila, LLP
70 W. Madison Street, Suite 2900
Chicago, IL 60602
T: 312.471.8700
F: 312.471.8701
jcancila@rshc-law.com
jkahn@rshc-law.com
bneff@rshc-law.com
rsifuentes@rshc-law.com

*Attorneys for Defendant State Farm Fire and
Casualty Company*

## **LOCAL RULE 7.1(f) CERTIFICATION**

I hereby certify that this memorandum complies with the page limitations set forth in

Loc. R. 7.1(f). This case has been assigned to the complex track. [Doc. 62.]

*/s/ Jacob L. Kahn*
*One of the Attorneys for Defendant*
*State Farm Fire & Casualty Company*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES CRANFIELD, individually and on behalf of all other Ohio residents similarly situated, | ) ) ) | No. 1:16-cv-01273-CAB |
| | ) | |
| Plaintiff, | ) | Hon. Christopher A. Boyko |
| v. | ) | |
| | ) | |
| STATE FARM FIRE AND CASUALTY COMPANY, | ) ) | |
| | ) | |
| Defendant. | ) | |

## EXHIBITS IN SUPPORT OF STATE FARM FIRE AND CASUALTY COMPANY'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

A.  Excerpts from transcript of December 27, 2018 Hearing in *Hicks v. State Farm Fire and Casualty Company*, No. 14-cv-00053-HRW (E.D. Ky.);

B.  Chart Comparing Loss Settlement Provisions;

C.  Excerpts from January 13, 2021 Deposition of Charles Cranfield;

D.  Excerpts from January 15, 2021 Deposition of Mark Jacoby;

E.  Declaration of Kevin Waller, dated March 30, 2021;

F.  Declaration of Tyler McKitterick, dated March 31, 2021;

G.  State Farm Fire and Casualty Company's Responses to Interrogatories Nos. 6-9 from Plaintiff's First Set of Interrogatories to Defendant, as Supplemented;

H.  March 12, 2021 Expert Report of Heather Albright;

I.  March 11, 2021 Expert Report of Michael Berryman;

J.  Excerpts from March 25, 2021 Deposition of Toby Johnson, with Exhibits 5 and 6 from that deposition;

K.  Excerpts from December 4, 2020 Deposition of Tyler McKitterick;

L.  Notice of Filing, *Parkway Assocs., Inc. v. Harleysville Mut. Ins. Co.*, No. 3-99-0161 (M.D. Tenn. Nov. 21, 2003), ECF No. 119;

M.  March 25, 2015 State Farm Letter to Cranfields c/o Metro Public Adjustment;

N.     Certified Policy of Charles Cranfield, Policy No. 70-N6-7546-3;

O.     Certified Policy of The Condominium at Northpointe, Policy No. 95-KB-8359-4;

P.     List of Pending Labor Depreciation Cases in Ohio with Appearance by Stephen Whetstone for Plaintiff(s); and

Q.     Excerpts from December 9, 2020 Deposition of Tom Moss.