# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION AT CLEVELAND

| | |
|---|---|
| **CHARLES CRANFIELD, etc., et al.,** | **CASE NO. 1:16-CV-01273** |
| Plaintiffs, | **JUDGE CHRISTOPHER A. BOYKO** |
| -vs- | **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVES, AND APPOINTMENT OF CLASS COUNSEL** |
| **STATE FARM FIRE & CASUALTY COMPANY,** | |
| Defendant. | |

Patrick J. Perotti, Esq. (#0005481)
DWORKEN & BERNSTEIN CO., LPA
60 South Park Place
Painesville, OH 44077
Phone: (440) 352-3391
Fax: (440) 352-3469
Email:  pperotti@dworkenlaw.com

James A. DeRoche (#0055613)
GARSON JOHNSON LLC
2900 Detroit Avenue
Van Roy Building 2nd Floor
Cleveland, OH 44113
Phone:  (216) 696-9330
Fax:  (216) 696-8558
Email: jderoche@garson.com

R. Eric Kennedy (#0006174)
Daniel P. Goetz (#0065549)
WEISMAN, KENNEDY & BERRIS CO., L.P.A.
1600 Midland Building
101 Prospect Ave., West
Cleveland, OH 44113
Phone:  (216) 781-1111
Fax:  (216) 781-6747
Email:  ekennedy@weismanlaw.com
Email:  dgoetz@weismanlaw.com

Erik D. Peterson (PHV)
MEHR, FAIRBANKS & PETERSON
TRIAL LAWYERS, PLLC
201 West Short Street, Suite 800
Lexington, KY 40507
Telephone:  859-225-3731
Facsimile:  859-225-3830
Email:  edp@austinmehr.com

Stephen G. Whetstone (#0088666)
WHETSTONE LEGAL, LLC
P.O. Box 6
2 N. Main Street, Unit 2
Thornville, Ohio 43076
Telephone: 740.974.7730
Facsimile:  614.829.307
Email: steve@whetstonelegal.com

*Counsel for Plaintiffs and the Putative Class*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iv

INTRODUCTION ............................................................................................................... 1

LAW AND ARGUMENT .................................................................................................... 2

   I.   State Farm cannot meaningfully distinguish *Hicks* ................................................. 2

   II.   Ermidis is an adequate class representative ......................................................... 6

     A.   Ermidis's claim is timely ............................................................................. 6

     B.   Ermidis represents the proposed class and should be appointed as an additional class representative ........................................................................................... 7

     C.   State Farm's cases regarding adding class representatives are inapposite ........... 8

   III.   The claims of Cranfield and Northpointe are timely ............................................. 9

   IV.   The claims of Ermidis, Cranfield, and Northpointe are typical ............................ 12

   V.   The merits of Northpointe's interest-only claim are not properly raised on class certification ............................................................................................................ 13

   VI.   The Class Representatives adequately represent any putative class member whose policy provides for an ACV payment and does not expressly permit non-material depreciation ............................................................................................................ 13

   VII.   The Sixth Circuit held in *Hicks* that a class action is a superior way to resolve this controversy ............................................................................................................ 18

   VIII.   Common issues predominate ............................................................................ 18

     A.   State Farm's fraudulent concealment of non-materials depreciation does not create individualized issues ...................................................................................... 18

     B.   Individualized damages calculations do not defeat predominance ..................... 21

       1.   Determining whether policy limits have been exhausted is simple ................. 23

       2.   State Farm can readily determine if it made an ACV payment ...................... 24

       3.   State Farm may not claw back its ACV payments, even if those payments resulted in an error in the insured's favor .................................................... 24

**4.     Only one method of calculating ACV is available to State Farm in this case; therefore, no fact issues exist regarding State Farm's method of calculating ACV other than its improper non-material depreciation.**....................................................... **26**

**5.     All the putative class members are entitled to recover interest.**....................... **27**

**CONCLUSION** ....................................................................................................... **28**

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Achziger v. IDS Prop. and Cas. Ins. Co*., 772 Fed. App'x 416 (9th Cir. 2019 ............................... 4

*Arnold v. State Farm Fire & Cas. Co.*, 2020 WL 5836559 (S.D. Ala. Sept. 30, 2020) ..... 1, 15, 17

*Arnold v. State Farm Fire and Casualty Company*, 2020 WL 6879271 (S.D. Ala. Nov. 23, 2020) ..................................................................................................................... passim

*Baughman v. State Farm Mut. Auto. Ins. Co.,* 88 Ohio St.3d 480 (2000) .................................... 19

*Baughman v. State Farm Mut. Auto. Ins. Co.,* 9th Dist. No. 22204, 2005-Ohio-6980 .................. 9

*Borum v. Brentwood Village, LLC,* 324 F.R.D. 1 (D.D.C. 2018) ................................................... 13

*Bowen v. Farmers Insurance Company,* 8th Dist. No. 105643, 2018-Ohio-1638 ...................... 20

*Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331 (4th Cir. 1998) ................... 21

*Burka v. New York City Transit Authority,* 110 F.R.D. 595 (S.D.N.Y. 1986) ............................. 12

*Cantlin v. Smythe Cramer Co.,* 8th Dist. No. 106697, 2018-Ohio-4607 ............................... 18, 19

*Carder Buick-Olds Co. v. Reynolds & Reynolds,* 148 Ohio App.3d 635, 2002-Ohio-2912 ......... 18

*Cedarview Mart, LLC. v. State Auto Prop. & Cas. Co.*, No. 3:32-cv-107-NBB-RP, 2021 WL 1206597 (N.D. Miss. Mar. 30, 2021) ................................................................... 16

*China Agritech, Inc. v. Resh,* 138 S. Ct. 1800 (2018) ............................................................... 6, 7

*Clerke v. Harwood,* 3 U.S. 342 (1797) ......................................................................................... 6

*Cooper v. City of West Carrollton,* 2d Dist. No. 27789, 2018-Ohio-2547 ................................... 27

*Cope v. Metro. Life Ins Co.,* 82 Ohio St.3d 426 (1998) ............................................................... 19

*Cranfield v. State Farm Fire & Cas. Co.,* 798 Fed. Appx. 929 (6th Cir. 2020) ............. 1, 4, 26, 27

*Cullen v. State Farm Mutual Automobile Insurance Co.,* 137 Ohio St.3d 373, 2013-Ohio-4733 .. 4

*Fisher-Borne v. Smith,* 14 F.Supp.3d 695 (M.D.N.C. 2014) ......................................................... 6

*Fort Worth Employees' Retirement Fund v. J.P Morgan Chase & Co.,* 301 F.R.D. 116 (S.D.N.Y. Sept. 30, 2014) ............................................................................................................. 20

*Fund Liquidation Holdings LLC v. Bank of America Corporation,* 2021 WL 1010596 (2nd Cir. Mar. 17, 2021) .............................................................................................................. 6, 7

*Grover v. BMW of North America, LLC,* No. 1:19-cv-0012, 2020 WL 348653 (N.D. Ohio Jan. 21, 2020) ........................................................................................................................ 2

*Haynes v. Acquino,* No. 10-CV-355F, 2018 WL 3126725  (W.D.N.Y. June 26, 2018) ............... 6

*Hicks v. State Farm Fire & Cas. Co.*, No. 14-CV-00053-HRW, 2019 WL 846044 (E.D. Ky. Feb 21, 2019) ............................................................................................................. 14

*Hicks v. State Farm Fire & Casualty Co.,* 751 Fed.Appx. 703 (2018) ......................................... 2

*Hicks v. State Farm Fire and Casualty Company,* 965 F.3d 452 (6th Cir. 2020) ................ passim

*Hitt v. Arizona Beverage Co., LLC,* No. 08CV809WQH-POR, 2009 WL 4261192 (S.D. Cal. Nov. 24, 2009) ........................................................................................................................ 8

*In re Allstate Corp. Sec. Litig.,* 966 F.3d 595 (7th Cir. 2020) ....................................................... 6

*In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d 367 (D. Mass. 2013) .................. 7

*In re State Farm Fire and Cas. Co.,* 872 F.3d 567 (8th Cir. 2017) ......................................... 2, 26

*In re Telectronics Pacing Sys., Inc.*, 172 F.R.D. 271 (S.D. Ohio 1997).................................... 7, 8

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.,* 302 F.R.D. 448 (N.D. Ohio 2014) ...................................................................................................................................... 13

*In re Whirlpool Corp. Front-Loading Washer Products Liability Litig.,* 722 F.3d 838 (6th Cir. 2013) ...................................................................................................................................... 21

*Jammeh v. HNN Associates,* No. C19-0620JLR, 2020 WL 5407864 (W.D. Wash. Sept. 9, 2020) ...................................................................................................................................... 12

*McNulty v. PLS Acquisition Corp.,* 8th Dist. Nos. 79025, 79125, 79195, 2002-Ohio-7220 ........ 27

*Miller v. Mercedes-Benz USA LLC,* No. CV 06-05382 ABC (JTLX), 2009 WL 1393488 (C.D. Cal. May 15, 2009)........................................................................................................................ 8

*Mitchell v. State Farm Fire & Cass Co.*, 327 F.R.D. 552 (N.D. Miss. 2018) ............. 5, 15, 17, 23

*Mitchell v. State Farm Fire & Casualty Company,* 954 F.3d 700 (5th Cir. 2020)............... passim

*Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330 (S.D.N.Y. 2004)............................................ 7, 8

*Parkway Assocs., LLC v. Harleysville Mut. Ins. Co.,* 129 F. App'x 955 (6th Cir. 2005)............. 16

*Paterson-Leitch Co. v. Insurance Co. of North America,* 366 F. Supp. 749 (N.D. Ohio 1973)..... 5

*Perry v. Allstate Indem. Co.,* 953 F.3d 417 (6th Cir. 2020)....................................................... 4, 27

*Peterson v. Alaska Comm. Sys. Gr., Inc.*, 328 F.R.D. 255 (D. Ak. 2018) .................................. 7, 8

*Santillan v. Gonzales,* 388 F. Supp.2d 1065 (N.D. Cal. 2005) ...................................................... 12

*Slade v. Progressive Security Ins. Co.*, 856 F.3d 408 (5th Cir. 2017) ............................................ 4

*Sprague v. Gen. Motors Corp.,* 133 F.3d 388 (6th Cir. 1998) ...................................................... 12

*Stuart v. State Farm Fire and Cas. Co.*, 910 F.3d 371 (8th Cir. 2018) ................................. passim

*Treviso v. National Football League,* No. 5:17CV00472, 2020 WL 7021357 (N.D. Ohio Nov. 30, 2020) ...................................................................................................................................... 13

*Tritschler v. Allstate Ins. Co.*, 144 P.3d 519 (Ariz. Ct. App. 2006) ............................................. 16

*Wilcox v. State Farm Fire & Cas. Co.*, 874 N.W.2d 780 (Minn. 2016) ......................................... 2

*Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 532 (6th Cir. 2012) ........................................ 22, 23

**Other Authorities**

ANN. MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.26 ....................................................... 8

ANN. MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.28 (2018)............................................ 7

FEDERAL PRACTICE AND PROCEDURE § 1778 (3d ed. 2005) ........................................................ 21

NEWBERG ON CLASS ACTIONS §§ 2:3 (5th ed. 2013) ..................................................................... 7

**Rules**

Fed. R. Civ. P. 15 ............................................................................................................................ 7

Fed. R. Civ. P. 16 ............................................................................................................................ 7

Fed. R. Civ. P. 23 ..................................................................................................................... passim

**Regulations**

O.A.C. 3901-1-54 ....................................................................................................................... 5, 27

## INTRODUCTION

This is a simple case. State Farm breached its insurance contracts by uniformly using an unlawful element in its computer-generated ACV determinations – non-material depreciation that State Farm pocketed instead of paying to its policyholders – "that is easily segregated and quantified."[1] Determining the remedy for that breach is properly constrained to identifying the unlawful depreciation and paying it to the insured, plus interest.[2] To accomplish that, the proposed class can be ascertained and managed in the manner described by plaintiff's expert Toby Johnson and already approved by the Sixth Circuit in *Hicks*.[3] State Farm's labor depreciation refund programs in Kentucky and Alabama – where State Farm ascertained who was owed money due to its unlawful depreciation, calculated how much was owed, and paid it to its policyholders – prove ascertainability and manageability. Despite all the dust kicked up by State Farm's struggle to avoid class certification for the ***fifth*** time on this identical claim, it is just not that complicated.

One district judge recently observed while granting class certification against State Farm that "in jurisdictions where labor depreciation is unlawful, as is the case here, courts have uniformly found that common questions predominate in cases challenging insurers' depreciation of labor costs.."[4] The Sixth Circuit determined here that Ohio is a jurisdiction where labor depreciation is unlawful,[5] and later in *Hicks* affirmed class certification arising from the same claim against State Farm in an identical jurisdiction. And the Eighth Circuit and the Fifth Circuit

---

[1] *Stuart v. State Farm Fire and Cas. Co.*, 910 F.3d 371, 376 (8th Cir. 2018).

[2] *Mitchell v. State Farm Fire & Casualty Company,* 954 F.3d 700, 711-12 (5th Cir. 2020).

[3] *Hicks v. State Farm Fire and Casualty Company,* 965 F.3d 452 (6th Cir. 2020); *see also, Arnold v. State Farm Fire & Cas. Co.*, 2020 WL 5836559, at *4 (S.D. Ala. Sept. 30, 2020) (Plaintiffs' expert Toby "Johnson's method of calculating damages accounts precisely for the withheld depreciation amounts, plus prejudgment interest accrued on the amounts withheld.").

[4] *Arnold v. State Farm Fire and Casualty Company*, 2020 WL 6879271 at *8 (S.D. Ala. Nov. 23, 2020).

[5] *Cranfield v. State Farm Fire & Cas. Co.,* 798 Fed. Appx. 929, 930 (6th Cir. 2020).

each affirmed class certification of this same claim in *Stuart* and *Mitchell*, rejecting the same arguments sponsored by the same experts that State Farm regurgitates here.[6]

Against this torrent of controlling adverse authority State Farm makes three primary arguments: (1) it suggests this Court follow decisions like *LaBrier*[7] and *Wilcox*[8] that the Sixth Circuit ***twice*** rejected as having no application here;[9] (2) it invites this Court to adopt State Farm's universally panned "cost of repair cap" theory that the Sixth Circuit already spurned in *Hicks*;[10] and (3) it seeks merits determinations on time bar arguments not appropriately made while deciding class certification, but rather properly assessed on a class-wide basis at trial.[11] None of these gambits justifies simply letting State Farm keep the money the Sixth Circuit has already indicated belongs to the putative class members. They also do not warrant departure from the well-worn path followed by every other federal district court and appellate court to address and grant the class certification in identical cases. The Court should grant Plaintiff's motion for class certification, appoint Cranfield, Northpointe, and Ermidis as class representatives, and appoint the undersigned as class counsel.

## LAW AND ARGUMENT

## I. State Farm cannot meaningfully distinguish *Hicks*.

The Sixth Circuit's affirmance of class certification in *Hicks v. State Farm Fire and Casualty Company,* 965 F.3d 452 (6th Cir. 2020) is controlling here. State Farm fails to show otherwise.

---

[6] *Stuart,* 910 F.3d at 373–74; *Mitchell*, 954 F.3d at 711-12 & fn. 15.
[7] *In re State Farm Fire and Cas. Co.,* 872 F.3d 567 (8th Cir. 2017) ("*LaBrier*").
[8] *Wilcox v. State Farm Fire & Cas. Co.*, 874 N.W.2d 780, 785 (Minn. 2016).
[9] *Hicks v. State Farm Fire & Casualty Co.,* 751 Fed. Appx. 703 (2018) (rejecting broad evidence rule cases like *Wilcox* and *LaBrier*); *Hicks*, 965 F.3d at 462-63 (different ACV analysis under Missouri law compared to states like Kentucky and Ohio "make *LaBrier* unhelpful to State Farm here.").
[10] *Hicks,* 965 F.3d at 461.
[11] *Grover v. BMW of North America, LLC,* No. 1:19-cv-0012, 2020 WL 348653, at *11 (N.D. Ohio Jan. 21, 2020) ("whether the statute of limitations is tolled due to fraudulent concealment is generally a question of fact…").

State Farm argues that the putative class in this case is different because the proposed limitations period is not the policy's contractual limitations period, but the "maximum time period as allowed by applicable law." Plaintiffs' Brief in Support, p. 2.  Permitting the fact finder to entertain a class period beyond the one-year contractual limitations period does not change the class certification analysis because, regardless of which limitations period applies, State Farm used its Xactimate software uniformly set to deduct non-material depreciation to calculate ACV for every class member. Identifying who those people are and how much they are owed, by toggling the software to take out the unlawful element and re-running the estimate, applies identically to claims from 1 year ago or 6, and it is precisely the method approved by the Sixth Circuit in *Hicks*. State Farm itself did so on at least two occasions to remedy this precise breach of contract. The Sixth Circuit held that the class members shared a common legal question: "whether State Farm breached Plaintiffs' standard-form contracts by deducting labor depreciation from their ACV payments." *Hicks,* 965 F.3d at 459. That same common question is present here, regardless of the applicable limitations period.

State Farm also contends that Plaintiffs' proposed class definition is problematic because it includes "*all* structural insurance policies." (Emphasis added.) Defendant's Brief, p. 10. That assertion is false: "The class excludes all claims arising under policy forms expressly permitting the 'depreciation' of 'labor' within the text of the policy form[.]" Plaintiffs' Brief in Support, p. 2. State Farm already identified excluded policies, and they are not in the class.  And State Farm does not assert, for all other structural policies, that its manner of depreciating non-materials when determining ACV varies from one structural policy to the next.

State Farm says that "*Hicks* had no occasion to consider Ohio law." But the Sixth Circuit recognized that on the pertinent insurance issues Ohio law and Kentucky law are identical. *Perry*

*v. Allstate Indem. Co.,* 953 F.3d 417, fn. 3 (6th Cir. 2020) ("That *Hicks* was decided under Kentucky law rather than Ohio law makes no difference because Kentucky's and Ohio's methodologies for interpreting insurance policies are identical in all material respects.").  And Rule 23 of the Federal Rules of Civil Procedure governs class certification both here and in *Hicks.* Plus, the Sixth Circuit already held in this case that, *under Ohio law*, "an Ohio insurer may not deduct the cost of labor depreciation pursuant to an actual cash value insurance policy that does not expressly provide for such deductions." *Cranfield v. State Farm Fire & Cas. Co.,* 798 Fed. Appx. 929, 930 (6th Cir. 2020).

State Farm also cites *Cullen v. State Farm Mutual Automobile Insurance Co.,* 137 Ohio St.3d 373, 2013-Ohio-4733 for the proposition that class certification is inappropriate because of the difficulty in calculating ACV. But *Cullen* is inapposite because ACV was never calculated by State Farm, so the plaintiff sought to have ACV calculated for the first time long after his claim had been closed.  Cullen and the putative class members already had windshield repairs with no calculation of ACV. *Id.* at ¶ 38. Trying to do it after the fact, after the window was repaired, could not happen.

Here State Farm already calculated ACV for every class member using the method prescribed by the Ohio insurance regulations.  Those numbers have been produced in computer spreadsheets.  The sole question is whether State Farm applied improper depreciation when calculating ACV. *See Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 376 (8th Cir. 2018) ("[T]he only dispute is over including labor depreciation in the calculation, which is a discrete portion of the formula that is easily segregated and quantified.").[12]  And identifying and isolating

---

[12] All circuits permit class certification arising from claims formulae wherein the unlawful variable can be substituted with a lawful variable. *E.g.*, *Slade v. Progressive Security Ins. Co.*, 856 F.3d 408, 411 (5th Cir. 2017) (replacing insurer's unlawful base value variable in claim formula with lawful variable), *certification after remand*, 2017 WL 11318936 (W.D. La. Oct. 2, 2017); *Achziger v. IDS Prop. and Cas. Ins. Co.*, 772 Fed. App'x 416, 418 (9th Cir. 2019)

the improper depreciation is easily accomplished by the method proposed by Plaintiffs' expert Toby Johnson and already approved in this precise context by the district court in *Mitchell*, *Mitchell v. State Farm Fire & Cass Co.*, 327 F.R.D. 552 (N.D. Miss. 2018) ("the method by which Plaintiff's expert proposes damages can be calculated is nonetheless simple and adequate."), *affirmed by Mitchell v. State Farm Fire & Casualty Company,* 954 F.3d 700 (5th Cir. 2020).

Finally, State Farm attempts to distinguish *Hicks* by relying on *Paterson-Leitch Co. v. Insurance Co. of North America,* 366 F. Supp. 749 (N.D. Ohio 1973). In *Paterson-Leitch*, the insurer argued that its adjuster had **not** made a final estimate of ACV; therefore, on summary judgment, the initial ACV estimate would not be conclusive on the issue of damages. *Paterson-Leitch,* 366 F. Supp. at 750.  Unlike here, the insurer's "estimates were only first impressions, made **without careful consideration of depreciation** and other relevant factors." (Emphasis added.) *Id.* at 757.  In contrast, State Farm completed the present ACV calculations per the requirements of Ohio's insurance regulations,[13] deducted depreciation using State Farm's default Xactimate settings that included non-materials, made the ACV payments, and then CLOSED each file.  The fact finder has the right to reject, out of hand, any State Farm argument that its ACV calculations were only rough "estimates."   As much as State Farm wishes otherwise, Plaintiffs do not challenge the scope of the damages, the replacement cost determined by State Farm, the depreciation percentages used, or any other attributes of the Xactimate estimates uniformly used by State Farm to calculate ACV.  This is not *Paterson-Leitch*. The analysis is constrained to the non-material depreciation State Farm improperly withheld. *Mitchell*, 954 F.3d at 711-12.

---

[13] O.A.C. 3901-1-54(I)(2)(a): "The insurer shall determine actual cash value by determining the replacement cost of property at the time of loss, including sales tax, less any depreciation." State Farm claims in its brief that it calculates ACV "as a courtesy" to its policyholders, which is false given that Ohio's insurance regulations clearly require State Farm to "determine" the ACV "at the time of the loss."

**II.     Ermidis is an adequate class representative.**

**A.     Ermidis's claim is timely.**

State Farm posits that the tolling of Ermidis's claim stopped when this Court dismissed Cranfield's claims with prejudice.  State Farm forgets that dismissal was reversed. A dismissal, reversed on appeal is a nullity. *Clerke v. Harwood,* 3 U.S. 342, 343 (1797) (the "judgment … being reversed, it has become a mere nullity"); *Fisher-Borne v. Smith,* 14 F.Supp.3d 695, 698 (M.D.N.C. 2014) (a reversed decision is nullified); *Haynes v. Acquino,* No. 10-CV-355F, 2018 WL 3126725, at *5 (W.D.N.Y. June 26, 2018) (a "reversed decision is null and void"). For tolling purposes, Cranfield's claim was never dismissed.

State Farm's reliance on *China Agritech, Inc. v. Resh,* 138 S. Ct. 1800 (2018) is also misplaced. In *China Agritech*, the Supreme Court reviewed tolling in the context of a *new* class action brought on behalf of putative class members who purchased China Agritech's common stock. *Id.* at 1801.  Here, the *only* class action brought on behalf of the putative class members is the matter before this Court.

The Seventh Circuit recently rejected State Farm's argument (made there by Allstate) that a class member may not step in to act as a class representative when the original lead plaintiff is challenged. *In re Allstate Corp. Sec. Litig.,* 966 F.3d 595, 615 (7th Cir. 2020). "[P]laintiffs who are part of the original putative class and who seek only to take on a new role in an existing action are not required to [file their own class action] where, as here, the statute of limitations was already tolled on their behalf by the initial class complaint." *Ibid.* Similarly, in *Fund Liquidation Holdings LLC v. Bank of America Corporation,* 2021 WL 1010596 (2nd  Cir. Mar. 17, 2021), the district court adopted the overbroad reading of *China Agritech* State Farm advocates here, holding that it barred adding a new class representative to an existing class action. *Id.* at *16.  The Second Circuit reversed, bluntly holding that *China Agritech* "says nothing of the sort." *Ibid.* "Nothing in *China*

*Agritech* purports to say that equitable tolling does not apply to new class representatives joined within the same class action." *Ibid.*

> ### B. Ermidis represents the proposed class and should be appointed as an additional class representative.

State Farm argues Ermidis cannot represent the class because she is not a named plaintiff added by amendment. State Farm is wrong. "Rule 23(a) does *not* explicitly require that a class representative must be a named plaintiff in the action." *Peterson v. Alaska Comm. Sys. Gr., Inc.*, 328 F.R.D. 255, 268 (D. Ak. 2018); *In re Telectronics Pacing Sys., Inc.*, 172 F.R.D. 271, 283 (S.D. Ohio 1997). State Farm "ha[s] not identified, nor has a review of the case law revealed, a requirement that class representatives must sue individually." *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 343 n.97 (S.D.N.Y. 2004) ("Nunez can serve as the class representative, even though he is not a named plaintiff."); *see also In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d 367, 404 n.45 (D. Mass. 2013) ("[c]lass counsel need not put forward all named plaintiffs, or only named plaintiffs, as proposed class representatives") (quoting 4 William B. Rubenstein, NEWBERG ON CLASS ACTIONS §§ 2:3, n.1 (5th ed. 2013)). Federal courts uniformly recognize that an individual "can serve as the class representative, even though he is not a named plaintiff." *Noble*, 224 F.R.D. at 343, n.97; *see also* ANN. MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.28, at 334-35 (2018) ("ANN. MANUAL") ("It is not necessary for class member to have filed individual action against defendant in order to qualify as class representative in class action" (citing cases)).

State Farm's assertion that Cranfield and Northpointe cannot seek to appoint additional class representatives through their motion for class certification likewise fails. Courts considering appointment of non-named plaintiffs "have not undertaken a Rule 15 or Rule 16 analysis, nor have they required the pleadings be amended to include class representatives as a named plaintiff in the

action." *Peterson*, 328 F.R.D. at 268 (appointing two non-named plaintiffs as class representatives); *In re Telectronics*, 172 F.R.D. at 283 (naming new substitute class representative without formal intervention). "The court … may simply designate that [new] person as a representative in the order granting class certification." ANN. MANUAL § 21.26, at 304; *see, e.g., Peterson*, 328 F.R.D. at 268; *Noble*, 224 F.R.D. at 343, n.97 (granting class certification motion and simultaneously approving additional non-plaintiff class representative).

It is appropriate for the Court to appoint Ermidis as an additional class representative,[14] as she is well suited to represent class members whose date of loss is within one year before the date this case was filed.

### C.     State Farm's cases regarding adding class representatives are inapposite.

State Farm cites two inapposite cases as to why Plaintiffs cannot add a class representative. *Hitt v. Arizona Beverage Co., LLC,* No. 08CV809WQH-POR, 2009 WL 4261192 (S.D. Cal. Nov. 24, 2009) is inapt because the putative class representative, *before* the class was certified, decided that she no longer wished to prosecute her action; therefore, the court held there was no Article III case or controversy to be decided. *Id.* at *5. Here, a live controversy exists because Cranfield and Northpointe continue to pursue their claims. *Miller v. Mercedes-Benz USA LLC,* No. CV 06-05382 ABC (JTLX), 2009 WL 1393488 (C.D. Cal. May 15, 2009) is inapposite because class counsel sought to *replace* the class representative. Here, Ermidis is not replacing anyone. She is an *additional* class representative.

---

[14] Plaintiffs offered dates for the depositions of Ms. Ermidis and a representative of Northpointe to State Farm's counsel, and State Farm declined to schedule the depositions. *See* email exchange culminating on December 29, 2020 (attached as Exhibit 10).

III.     **The claims of Cranfield and Northpointe are timely.**

State Farm contends that Plaintiffs should have discovered that State Farm was depreciating non-materials and filed suit sooner. First, that is a predominating fact question that decides, for thousands, the limitations period.  Second, the evidence shows the fact finder may easily decide that question against State Farm.  As Plaintiffs note at page 4 of their brief in support of class certification: "when specifically asked, State Farm representative—from simple agents, up to corporate executives—could not tell from the paperwork State Farm provided if non-materials were depreciated and by how much." *See, e.g.,* deposition excerpts of State Farm personnel Tyler McKitterick Tr. 57-59; 61, Ex. 1b, PageID # 2148-51; Alice Sandvick Tr. 94:23-95:5, Ex. 1c, PageID # 2160-61; Harold Walton Tr. 38:11-40:9, Ex. 1d, PageID # 2168-70.  State Farm's own expert Michael Berryman conceded that "the segregation of depreciation of material and non-material items can't be determined by looking at the estimate" State Farm sent to Cranfield. Berryman Tr. 139:5-7 (Ex. 11). Given that State Farm agents and executives could not determine from the paperwork provided to insureds that State Farm was withholding non-materials depreciation, State Farm has no plausible argument that Plaintiffs could know that non-materials were being depreciated.

The evidence for the fact finder is unusually strong for the customers on this point.  State Farm's entire business model is premised on encouraging its customers to trust State Farm to provide accurate information. "State Farm's business procedures clearly emphasize the creation of a 'good neighbor' relationship with insureds and 'trust' is a central theme of its business plan." *Baughman v. State Farm Mut. Auto. Ins. Co.,* 9th Dist. No. 22204, 2005-Ohio-6980, ¶ 21. Like in *Baughman,* when long time Ohio claims manager Harold Walton was asked if "insureds like Mr. Cranfield rely on State Farm to properly calculate the actual cash value of their claim" he conceded that insureds "trust their … insurance company to pay them what's owed." Walton Tr. 70:19-24

9

(Ex. 12).  And he also conceded that the insured is entitled to receive the property calculated ACV and do with it whatever they want, no questions asked. Walton Tr. 58:25-59:6; 73:23-74:11 (Ex. 12).  Finally, Walton agreed that the estimate provided to the insured ***does not*** breakdown the type of depreciation being subtracted, and despite working in State Farm's claims department ***since 1993*** he did not have any understanding of the different types of non-material depreciation being withheld by State Farm from its insured's ACV payments.  Walton Tr. 18:15; 64:1-21 (Ex. 12). State Farm fails in its argument that policyholders, armed only with the insurance policy and State Farm's estimate that affirmatively lies to them that depreciation is physical "wear and tear," should have known labor was also depreciated.

State Farm contends that Cranfield's public adjuster Mark Jacoby "knew that the depreciation on State Farm's estimate included non-material depreciation[.]"[15] Jacoby's testimony is the opposite. First, all those questions were not about State Farm's estimate, but Jacoby's estimate, which does **not** have any depreciation. Jacoby Tr. 89:13-17, Ex. D, PageID # 3793. Second, the State Farm estimate did **not** show that nonmaterials were depreciated.  Rather than 'know' that labor depreciation was used by State Farm, Jacoby testified that "at the time, [he] didn't consider" depreciation at all because he "didn't add any depreciation." Jacoby Tr. 91:20-21, 92:19, Ex. D, PageID # 3795-96.  The item that **shows** that State Farm depreciated nonmaterials is the settings box identifying State Farm's selections in Xactimate, as referenced specifically in paragraph 17 of the Third Amended Complaint, and State Farm **did** remove that box from the estimate sent to Jacoby and the customers.  As Plaintiffs' expert Johnson testified, "there's ways to bury that in Xactimate, where it is undetectable by the average person *** [s]o it is a process that can be hidden, if that is the intent."  Johnson Tr. 57:7-21, Ex. J, PageID # 4148.

---

[15] In support of that proposition, State Farm cites Jacoby Tr. 89:13-17, 90:9-92:23, 118:20-120:1, Ex. D, PageID # 3793-94, 3800-02.

The key point here is that some insurance companies depreciated labor without telling their customers, but others did not.  Today, after the Sixth Circuit rulings, we now know State Farm does.  The question though is what was known earlier.  And as State Farm's personnel admitted, even they did not know what was being done. So, when Jacoby was asked hypothetically about including labor depreciation, he responded: "I now understand that, today." Jacoby Tr. 92:23-25, Ex. D, PageID # 3796.  Mr. Jacoby reiterated: "I didn't consider what was included in depreciation at the time. …. *I didn't consider depreciation at the time.*" Jacoby Tr. 119:25-120:1; 120:5-6, Ex. D, PageID # 3801-02. Jacoby's testimony does not support State Farm's position that Jacoby, years ago when addressing Cranfield's claim, knew that State Farm was depreciating non-materials.

State Farm next asserts that Northpointe was not a member of the class as initially defined because it had a businessowners policy, as opposed to a homeowners policy. State Farm's present effort to argue that the original class definition was limited to insureds with homeowners policies is inconsistent with the position it took in its notice of removal. To satisfy the amount in controversy for removal to federal court, State Farm included claims identical to Northpointe's as part of the original class. Specifically, State Farm asserted that removal was proper because (1) it had "offered property insurance for damage to many thousands of homes *and other structures*"; and (2) "in respect to repair estimates State Farm prepared for structural damage to Ohio *structures* during the year 2014", the total labor depreciation was $10.4 million. (Emphasis added.) State Farm's Notice of Removal ¶¶ 20 and 24, R. 1, PageID # 6. So, State Farm understood that the class definition included structures other than homes. Consistent with State Farm's interpretation of the original class definition in its notice of removal, Northpointe's claim was included in the original class definition.

11

Further, Northpointe's claim is within the policy's contractual limitations period. Northpointe's structural damage occurred on April 2, 2016. Third Amended Complaint, ¶ 48. The original complaint was filed a few weeks later on April 22, 2016. And, on June 6, 2016 (less than two months after the original complaint was filed), State Farm breached its contract with Northpointe by making an ACV payment that withheld non-material depreciation. *Id.* at ¶¶ 53-61. Northpointe's claim is timely.

IV.     **The claims of Ermidis, Cranfield, and Northpointe are typical.**

State Farm cites *Sprague v. Gen. Motors Corp.,* 133 F.3d 388, 399 (6th Cir. 1998) for the proposition that typicality is lacking where a "named plaintiff who proved his own claim would not necessarily have proved anybody else's claim." Here, if Ermidis succeeds, she will prove the claims of everyone within the policy's contractual limitations period, who is not pursuing an interest-only claim. If Cranfield succeeds, he will prove the claims of everyone whose date of loss is more than a year before the original filing date and those who are not pursuing an interest only claim. And if Northpointe succeeds, it will prove the claims of every class member within the policy contractual period with an interest only claim. The proposed class representatives adequately represent the defined class. *See, e.g., Hicks,* 965 F.3d at 461 ("[w]hether the class members chose to repair, like Hicks, or chose not to, like Williams, a common contract question predominates").

If at any point the court determines that subclasses are necessary, the class definition is then modified to address that issue. "A court may divide a class into subclasses on motion of either party, or *sua sponte.*" *Santillan v. Gonzales,* 388 F. Supp.2d 1065, 1072 (N.D. Cal. 2005) (citing *Burka v. New York City Transit Authority,* 110 F.R.D. 595, 603-604 (S.D.N.Y. 1986); *Jammeh v. HNN Associates,* No. C19-0620JLR, 2020 WL 5407864, at *10 (W.D. Wash. Sept. 9, 2020) ("'When appropriate, district courts may redefine classes or subclasses sua sponte prior to

12

certification.'") (quoting *Borum v. Brentwood Village, LLC,* 324 F.R.D. 1, 8 (D.D.C. 2018)); *Treviso v. National Football League,* No. 5:17CV00472, 2020 WL 7021357, at *4 (N.D. Ohio Nov. 30, 2020) ("'Ultimately, this Court's duty is to ensure the proper exercise of Rule 23. That duty includes the obligation to create a new definition sua sponte if the parties' own proposals are not adequate or accurate.'") (quoting *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.,* 302 F.R.D. 448, 462-63 (N.D. Ohio 2014)).

V.      **The merits of Northpointe's interest-only claim are not properly raised on class certification.**

Like it tried unsuccessfully to argue in *Hicks*, State Farm posits that Northpointe may not recover interest. But, as the Sixth Circuit explained in *Hicks*, the ability of interest-only class members to recover on that claim is a common merits issue that is improper to decide at class certification. *Hicks*, 965 F.3d at 463 ("Ultimately, '[w]hether some Plaintiffs are unable to prove damages because they eventually recouped the withheld depreciation through an RCV payment is a merits question, and the district court has the power to amend the class definition at any time before judgment.'"). This common question makes Northpointe's claim typical of those of other class members with interest only claims.

VI.     **The Class Representatives adequately represent any putative class member whose policy provides for an ACV payment and does not expressly permit non-material depreciation.**

State Farm argues that the loss provisions of the various policy forms differ in the language used to cap the ACV payment at the actual "cost of repairs." This is the "sufficiency" or "cost of repair cap" argument that State Farm has asserted and seen *rejected* in every labor depreciation case in an RCV less depreciation state like Ohio (*i.e., Hicks, Mitchell, Stuart,* and *Arnold*). State Farm unsuccessfully argued in all those cases that every policy, including homeowners policies like Cranfield's policy, limits its ACV obligation to what is actually spent on repairs.  The language

13

of the policies on that score is not materially different. So, rather than ***defeat*** class certification, whether State Farm's ACV obligation is capped based on what the insured later spends for repairs is a common issue ***supporting*** class certification.  *Hicks*, 965 F.3d at 461.

The more fundamental problem with State Farm's argument is that it has been rejected by every court to address it.  For example, in *Hicks*, the plaintiffs' damage theory, same as here, was that "'all individuals who received an improperly depreciated ACV payment suffered a legal injury—breach of contract—regardless of whether the ACV payment was more than, less than, or exactly the same as the ultimate cost of repairing or replacing their property.'" *Hicks v. State Farm Fire & Cas. Co.*, No. 14-CV-00053-HRW, 2019 WL 846044, *7 (E.D. Ky. Feb 21, 2019) (quoting *Stuart*, 910 F.3d at 377). State Farm responded that its ACV obligation is capped by the actual cost of repairs because under the policy State Farm owes "actual cash value at the time of the loss of the damaged part of the property, ... not to exceed the cost to repair or replace the damaged part of the property." *Hicks*, 965 F.3d at 461. The district court and Sixth Circuit both flatly rejected that argument.  They agreed with plaintiffs that the "cost to repair" cap means that the ACV payment cannot exceed the *estimated replacement cost value*. The *Hicks* court explained: "… insureds do not have to use ACV payments, so the cap on these payments must be based on the *RCV estimate* rather than documentation showing the repairs made and the costs incurred." *Id.* (emphasis added).

State Farm's employees apparently agree with that ruling. For example, long time State Farm claims executive Harold Walton confirmed under oath that "ACV is determined by the *estimated* replacement cost[.]"" Walton Tr. 22:20-23 (Ex. 12.) And Walton confirmed that "insureds are entitled to the ACV value being determined based on the estimated replacement cost … of their covered repairs…. They're entitled to that payment, the calculated ACV." Walton Tr. 73:23-24 – 74:1-11 (Ex. 12).

14

The *Hicks* ruling is the norm. Courts have repeatedly rebuffed State Farm's "actual cost of repair cap" theory, on which the bulk of its arguments here against class certification are based. Most recently in *Arnold*, State Farm again argued that withholding labor depreciation even if improper does not necessarily lead to an "underpayment" because the ACV payment may still pay for the needed repairs. *Arnold v. State Farm Fire and Casualty Company*, No. 2:17-cv-00148-TFM-C, 2020 WL 6879271, at *8 (S.D. Ala. Nov. 23, 2020). In other words, State Farm argued that it is not liable because its payment was "sufficient" and complied with the "cost of repair" cap. The *Arnold* court "disagree[d] with State Farm's framing of the issue" and found "its reasoning unpersuasive…." *Ibid.* Relying on multiple cases certifying identical class actions in the face of State Farm's "cost of repair" cap argument, the *Arnold* court held "that 'the issue is not whether the actual cash value payments paid by State Farm were reasonable or sufficient,' the issue is 'whether State Farm was entitled to deduct labor depreciation in the first place.'" *Ibid.* (quoting *Mitchell v. State Farm Fire & Cas. Co.*, 327 F.R.D. 552, 563 (N.D. Miss. 2018)).  In later denying State Farm's Daubert challenge to Toby Johnson's expert testimony, again raising its baseless "sufficiency" argument, the *Arnold* court bluntly held: "Whether State Farm accurately estimated the ACV for each policyholder outside the labor-depreciation amounts is irrelevant to this lawsuit …. The relevant question here is whether State Farm subtracted an amount from its estimate for labor depreciation and, if so, how much. Whether State Farm properly estimated other items that made up the total ACV estimate is not relevant to the claims presented here." *Arnold v. State Farm Fire & Cas. Co.*, No. 2:17-cv-00148-TFM-C, 2020 WL 5836559, at *4 (S.D. Ala. Sept. 30, 2020) (Order denying State Farm's motion to exclude expert opinions of Toby Johnson).

Along with the Sixth Circuit in *Hicks*, State Farm's "actual cost of repair cap" argument has been rejected by both other Circuit Courts to address it. *Stuart v. State Farm Fire and Cas.*

*Co.*, 910 F.3d 371, 373–74 (8th Cir. 2018) ("The policy imposed no obligation on the insured to use this ACV payment to actually make repairs to the property. If the insured failed to make the repairs, or made the repairs for less than the amount of the ACV payment, the insured was not obligated to remit the overpayment to State Farm"); *Mitchell v. State Farm Fire & Cas. Co.*, 954 F.3d 700, 711-12 & fn. 15 (5th Cir. 2020) (rejecting "State Farm's argument based on the policy's payment cap for the same reason" as the stated in *Stuart*).

And other insurers attempting the same argument have suffered the same fate. *See, e.g.*, *Cedarview Mart, LLC. v. State Auto Prop. & Cas. Co.*, No. 3:32-cv-107-NBB-RP, 2021 WL 1206597 (N.D. Miss. Mar. 30, 2021) ("State Auto's argument about the sufficiency of the payment misses the mark. The question before the court is not whether the payment was sufficient but whether State Auto breached the contract. The sufficiency argument has been repeatedly rejected by the courts addressing the issue, including the courts within this district.); *Tritschler v. Allstate Ins. Co.*, 144 P.3d 519, 529 (Ariz. Ct. App. 2006) ("the determination of actual cash value is not based upon *what the insured actually pays to repair or replace* the damaged property."); *Parkway Assocs., LLC v. Harleysville Mut. Ins. Co.*, 129 F. App'x 955, 962-63 (6th Cir. 2005) (Sixth Circuit held that the actual cost of repairs "do[] not affect [a plaintiff's] right to recover the actual cash value of [her] loss, as the actual cash value is not calculated based upon what the insured ultimately pays to repair [her] property."). State Farm's "actual cost of repair cap" argument has been so roundly spurned it begs the question how often a defendant needs to lose an argument before it stops wasting everyone's time with it.

Finally, to the extent that State Farm argues that the ACV payments may have been excessive because its replacement cost estimate was overstated, that argument was also rejected by the Sixth Circuit in *Hicks*. The Sixth Circuit noted: "the Eighth Circuit explained that the

16

'insureds were under no obligation to use the ACV payment to actually repair or replace damaged property, so any overestimation by State Farm simply operates as an error in the insured's favor.'" *Hicks,* 965 F.3d at 461 (quoting *Stuart,* 910 F.3d at 376-77). The *Hicks* court concluded: "Like our sister circuits, we are not persuaded by State Farm's argument that its own potential overestimations show that individualized inquiries predominate." *Id.* at 461. Relying on State Farm's own labor depreciation refund programs the court further observed that "no one at State Farm questioned the accuracy of the payments it issued through its 2015 refund program. It is thus reasonable to infer that State Farm did not have any problem with refunds causing ACV payments to exceed estimated replacement costs for the nearly 2,000 claimants it refunded through its program[.]" *Id.* at 462.

Thus,  "in jurisdictions where labor depreciation is unlawful, as is the case here, courts have uniformly found that common questions predominate in cases challenging insurers' depreciation of labor costs." *Arnold*, 2020 WL 6879271 at *8. This case does not involve issues of replacement cost or the scope of damages, the age or condition of the damaged property, or any other issue requiring review of the work performed. As multiple courts have recognized, this case involves a discreet element of State Farm's uniform, mechanical ACV calculations using default settings in the Xactimate program, and where improperly used, the under-payment is 'easily identified and remedied.' That is what State Farm did in its Alabama and Kentucky labor depreciation refund programs. Plaintiff's expert Toby Johnson, whose methodology was approved in *Mitchell* and *Arnold* and tracks State Farm's own process, explained precisely how class members can be identified and the amounts due them determined to remedy State Farm's breach of contract. *Mitchell,* 327 F.R.D. at 563; *Arnold,* 2020 WL 5836559, at *3. Baseless "cost of repair

cap" issues soundly rejected by every court including the Sixth Circuit do not defeat class certification.

**VII.     The Sixth Circuit held in *Hicks* that a class action is a superior way to resolve this controversy.**

The *Hicks* court held that State Farm's argument that individual inquiries predominate is "without merit." *Hicks,* 965 F.3d at 464. "The district court appropriately concluded that superiority is satisfied here because a threshold common issue predominates (i.e., whether State Farm improperly depreciated labor costs from ACV payments) and because Plaintiffs' ability to obtain relief through individual damages suits is likely not economically feasible." *Ibid.* Just as in *Hicks,* individual damages suits by putative class members are not economically feasible. *Hicks* controls.

**VIII.    Common issues predominate.**

**A.     State Farm's fraudulent concealment of non-materials depreciation does not create individualized issues.**

The prevailing issue here is how much State Farm owes in refunds to the underpaid class members—a mathematical calculation.  A sub-issue, defining the scope of customers entitled to such refunds, is whether State Farm conduct prohibits it from trying to rely on its contractual limitations period.  The sub-issue conforms to class treatment also.  "Ohio courts have favored class certification when fraud is alleged concerning a defendant's form contracts." *Cantlin v. Smythe Cramer Co.,* 8th Dist. No. 106697, 2018-Ohio-4607, at ¶ 21. "'Generally, courts have found that when a common fraud is perpetrated on a group of plaintiffs, those plaintiffs should be able to pursue the claim without focusing on questions affecting individual members. In this regard, fraud cases that involve a single underlying scheme and common misrepresentations or omissions across the class are particularly subject to common proof.'" *Ibid.* (quoting *Carder Buick-Olds Co. v. Reynolds & Reynolds,* 148 Ohio App.3d 635, 2002-Ohio-2912, ¶ 45); *Baughman v.*

*State Farm Mut. Auto. Ins. Co.,* 88 Ohio St.3d 480, 490 (2000) (quoting *Cope v. Metro. Life Ins Co.,* 82 Ohio St.3d 426, 429-30 (1998) ("'Courts generally find the existence of common misrepresentations obviates the need to elicit individual testimony as to each element of a fraud or misrepresentation claim, especially where written misrepresentations or omissions are involved.'")). Here, State Farm uniformly misrepresented to insureds in form documents that it was only depreciating wear and tear on property.

In *Cantlin v. Smythe Cramer Co.,* 8th Dist. No. 106697, 2018-Ohio-4607, the court considered whether predominance was satisfied with respect to claims of fraudulent inducement. The court concluded that the fraud claim satisfied predominance because the plaintiffs could present common evidence on those issues, including the defendant's form documents and other standardized evidence. *Id.* at ¶ 39. The court held that to prove their fraud claim, the *Cantlin* plaintiffs would have to prove that the defendant misrepresented or concealed the nature of the disputed fee, the fee was material to the transaction, the defendant knew of or disregarded the falsity of its representations, and class members were injured. *Id.* at ¶ 38. Here, Plaintiffs can show State Farm misrepresented the nature of its ACV payments, those payments were material, State Farm knew that it was misrepresenting the payments, and that the class members were injured. Further, the proof, as in *Cantlin,* is found in State Farm's form documents and standard procedures.

Contrary to State Farm's argument, under Ohio law reliance on fraudulent half-truths or material omissions may be established without direct evidence: "'It is not necessary to establish inducement and reliance upon material omissions by direct evidence. When there is nondisclosure of a material fact, courts permit inferences or presumptions of inducement and reliance.'" *Id.* at ¶ 40 (quoting *Cope v. Metro. Life Ins. Co.,* 82 Ohio St.3d 426, 436 (1998)). Here, State Farm did not disclose in its policies that it was depreciating labor. Just the opposite. State Farm told its insureds

it was depreciating due to property wear and tear. And it omitted printing the box generated by Xactimate that indicated what was being depreciated.

Another fraud class was recently certified in *Bowen v. Farmers Insurance Company,* 8th Dist. No. 105643, 2018-Ohio-1638. Just as State Farm is attempting to do here, the defendant in *Bowen* challenged predominance based on purported individualized limitations-period issues arising from fraud claims. *Id.* at ¶ 40. The court rejected that argument. Regarding the tolling of the limitations period, the *Bowen* court found that predominance was satisfied because whether class members should have discovered the fraud raised an issue of reasonable diligence that would apply equally to all class members. *Id.* at ¶¶ 48-49; see *Fort Worth Employees' Retirement Fund v. J.P Morgan Chase & Co.,* 301 F.R.D. 116, 134 (S.D.N.Y. Sept. 30, 2014) ("Where the standard is inquiry notice or discovery by a reasonably diligent plaintiff, the proof of any [statute of limitations] defense will not require individualized inquiries.").

*Bowen* also involved form documents prepared by an insurer. The issue in *Bowen* was that the class members could not know from the insurer's form documents that they were paying additional insurance premiums for redundant coverage. *Bowen,* 2018-Ohio-1638 at ¶ 47. In affirming class certification, the court held that "Bowen and the class members all had the same information available to them—the information set forth in the declaration sheets—regarding UM coverage, the UM coverage's policy limits, and the total amounts of premium charges for each vehicle. Thus, individual inquiries will not be required to determine whether based on the information set forth in the insured's declaration sheets, Bowen and class members knew or should have known that they were paying multiple UM premiums." *Id.* at ¶ 59. As in *Bowen,* all the State Farm class members had identical information available to them—their State Farm policies and their Xactimate reports—none of which disclosed the depreciation of non-materials.

20

The primary case cited by State Farm on class certification of a fraud claim is *Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331 (4th Cir. 1998). *Broussard* is inapposite for multiple reasons. First, the court was applying North Carolina law. *Id.* at 341. Second, unlike here, the representations were oral. *Ibid.* ("The oral nature of the final review sessions makes them a particularly shaky basis for a class claim. Fifth Circuit caselaw even suggest a *per se* prohibition against class actions based on oral representations."). Third, the representations that the defendant made to class members "varied considerably[.]" *Id.* at 342. Here, there is no evidence that State Farm made oral representations to its insureds regarding labor depreciation that "varied considerably" from one insured to the next. *Broussard* has no application here.

## B.    Individualized damages calculations do not defeat predominance.

Under Sixth Circuit law, "when adjudication of questions of liability common to the class will achieve economies of time and expense, the predominance standard is generally satisfied even if damages are not provable in the aggregate." *In re Whirlpool Corp. Front-Loading Washer Products Liability Litig.,* 722 F.3d 838, 860 (6th Cir. 2013) (cleaned up). In "the mine run of cases, it remains the 'black letter rule' that a class may obtain certification under Rule 23(b)(3) when liability questions common to the class predominate over damages questions unique to the class members." *Id.* at 861 (cleaned up).

Consistent with the rule in *Whirlpool,* the *Hicks* court held that a "class may be certified based on a predominant common issue 'even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Hicks,* 965 F.3d at 460 (quoting 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 1778, at 123-24 (3d ed. 2005)). Rejecting State Farm's predominance argument, the *Hicks* court held that "should the calculation of damages for reimbursed class members involve more than a mouse click on Xactimate, any need for more time

21

intensive review does not affect the predominance inquiry…. Otherwise, 'defendants against whom claims of wrongful conduct have been made could escape class-wide review due solely to the size of their business or the manner in which their business records were maintained.'" (Citation omitted.) *Hicks* at 462 (quoting *Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 532, 540 (6th Cir. 2012)).

While *Hicks* held that common issues could predominate for a class even if damages had "to be *tried* separately," *Hicks,* 965 F.3d at 460, State Farm's arguments regarding damages do not suggest the need for mini-trials on damages. The damage issues State Farm raises involve objective facts found in State Farm's own electronic files, precisely where State Farm looked for answers in its own labor depreciation refund programs. For example, if State Farm contends that it cannot determine from a spreadsheet whether it actually made an ACV payment to an insured, that issue will not be resolved by a mini-trial requiring testimony and argument. Instead, State Farm simply reviews its file to determine if an ACV payment was made, just as it did when it refunded withheld depreciation under its Kentucky and Alabama refund programs.

Finally, to the extent State Farm argues that damage calculations are complicated by its meritless "cost of repair cap" theory, as explained above State Farm has attempted that same argument with the same expert witnesses in four labor depreciation class actions and lost each one. Berryman (State Farm's contractor expert) submitted the same opinions opposing class certification in *Stuart, Mitchell, Hicks* and *Arnold*, all of which were certified as class actions by the district court and each one that was appealed was affirmed.[16] Berryman Tr. 18:16-21:7 (Ex. 11). Similarly, Albright (State Farm's other expert here) authored similar reports in *Mitchell* and *Arnold*, and worked with her partner Michael O'Connor on the same type of reports in *Stuart* and

---

[16] State Farm attempted to appeal the *Arnold* order granting class certification and its Rule 23(f) petition was rejected by the court of appeals (attached as Ex. 13).

*Hicks*, all four of which were then certified as class actions.  Albright Tr. 17:23-19:17 (Ex. 14). In other words, no court has credited State Farm's experts' testimony on labor depreciation. There is no meaningful distinction allowing a different result in this case.

### 1. Determining whether policy limits have been exhausted is simple.

Again, recycling a failed argument from the other labor depreciation cases, State Farm asserts that it does not know if it paid the policy limits on some claims, because its records do not reflect the policy limit applicable to the claim. State Farm's Brief, PageID # 3730. First, a defendant cannot "'escape class-wide review due solely to  … the manner in which their business records were maintained.'" *Hicks* at 462 (quoting *Young,* 693 F.3d at 540). Second, determining if policy limits have been paid is not complicated. The data report produced by State Farm sets forth the base policy limit for each claim, indicates whether any special policy sub-limits exist, and sets forth the total amount paid on each claim, making comparison between the policy limits and the payments made a very simple process. *See* Excel spreadsheet manually filed under seal as Exhibit 3 to Plaintiffs' motion for class certification, columns BD [Cov. A Deductible],  BE [Cov. A Special Deductible Present?],  and BG [Total Indemnity For Cov. A COL].  Third, even in the most complicated example selected by State Farm's expert Heather Albright, she admits that the review of the file to determine the issue took only 15 minutes. Albright Report, State Farm's Ex. H at ¶ 103, PageID # 4075. State Farm cites no law for the proposition that a 15-minute review of a file involving objective facts causes individual issues to predominate.  Rather, both *Mitchell* and *Hicks* already held that 15 to 20 minutes to review a file for objective facts is no impediment to class certification. *Mitchell,* 327 F.R.D. at 563 (a 15-20 minute file review per claim does not defeat predominance); *Hicks*, 965 F.3d at 462 ("And should the calculation of damages for reimbursed class members involve more than a mouse click on Xactimate, any need for more time intensive review does not affect the predominance inquiry.")

23

### 2. State Farm can readily determine if it made an ACV payment.

State Farm asserts it has identified a sample claim that "indicated" that non-material depreciation may have been applied to the estimate, but depreciation was never withheld. State Farm's Brief, PageID # 3731. The data related to this claim is set forth at ¶ 91 of Albright's report. State Farm's Ex. H, PageID # 4067. The data shows **only two** payments. The first $2,681.21 payment is "for Roto Rooter Services bill … less policy deductible[.]" *Ibid.* This is obviously a paid repair bill, not an ACV payment. The second $7,431.56 payment is plainly coded and described as an **RCV** payment "per contractor's estimate[.]" *Ibid.* Again, not an ACV payment. Therefore, a cursory review of the Data Report, by someone not interested in feigning confusion, shows that the insured who made this claim is not a class member, because neither of the listed payments is an ACV payment.

Also, Albright admits that she resolved the issue in 37 minutes. *Id.* at ¶ 92. State Farm does not assert that most, a majority, or even many files present any of this, to require a 37-minute review to determine if an ACV payment was made. But even if ***most*** files required a 37-minute review, State Farm cites no law supporting the proposition that this would defeat predominance. *See Hicks*, 965 F.3d at 462 ("And should the calculation of damages for reimbursed class members involve more than a mouse click on Xactimate, any need for more time intensive review does not affect the predominance inquiry."). A file review is not a mini-trial.

### 3. State Farm may not claw back its ACV payments, even if those payments resulted in an error in the insured's favor.

State Farm argues that, despite having made ACV payments to the putative class members from which non-material depreciation was withheld, those ACV payments ***might*** have been overestimated. Multiple courts, including the *Hicks* court, have rejected State Farm's exact argument that insureds have no damages if State Farm's ACV payments exceeded the cost to

24

repair. In *Mitchell v. State Farm Fire & Casualty Company,* 954 F.3d 700, 711 (5th Cir. 2020), State Farm argued that whether it overestimated the cost of replacement created individual issues. The Fifth Circuit rejected that argument: "Here, we are addressing the claim that *State Farm breached its contracts by depreciating labor costs*. The calculation of damages relating to this claim is properly constrained to the amount of labor depreciation withheld from each class member's ACV payment." (Emphasis added.) *Id.* at 711-12. The Eighth Circuit, when presented with this same issue held that "insureds were under no obligation to use the ACV payment to actually repair or replace the damaged property, so any overestimation by State Farm simply operates as an error in the insured's favor." *Stuart,* 910 F.3d at 376-77. The Sixth Circuit agreed with these holdings: "Like our sister circuits, we are not persuaded by State Farm's argument that its own potential overestimations show that individualized inquires predominate. Here, class members were under no obligation to make repairs of use the ACV payment." *Hicks,* 965 F.3d at 461. State Farm had a contractual obligation to make an ACV payment. That payment had to be calculated in accordance with both the contract and Ohio law. State Farm failed to calculate the ACV payment in accordance with Ohio law. Instead, it withheld non-material depreciation, which is not permitted. So, Plaintiffs and the putative class members are entitled to a return of the depreciation improperly withheld, plus interest.

State Farm now wants to argue that although it improperly withheld depreciation, the ACV amount paid to putative class members was nevertheless correct because State Farm *could* have reduced the ACV payment for other reasons. In other words, years after ACV has been *determined* by State Farm and *paid* by State Farm, State Farm posits it can revisit the ACV calculation, recalculate ACV using different numbers, and then demand a refund of excess ACV from its insureds. That approach has been rejected by the Fifth, Sixth, and Eighth Circuits.

**4.    Only one method of calculating ACV is available to State Farm in this case; therefore, no fact issues exist regarding State Farm's method of calculating ACV other than its improper non-material depreciation.**

State Farm's reliance on *In re State Farm Fire and Cas. Co.*, 872 F.3d 567 (8th Cir. 2017) ("*LaBrier*") is misplaced. *LaBrier* involved Missouri law applying a completely different definition of ACV—"Missouri law defines ACV as "the difference between the reasonable value of the property immediately before and immediately after the loss."" *Hicks*, 965 F.3d at 462 (quoting *LaBrier*, 872 F.3d at 573). Because of those "critical differences" the Sixth Circuit has already *rejected* State Farm's reliance on *LaBrier* in a state like Ohio that defines ACV as "the cost of repair minus depreciation." *Hicks*, 965 F.3d at 462-63.  Like the Eighth Circuit's later decision in *Stuart*, the Sixth Circuit held that the different ACV analysis under Missouri law compared to states like Kentucky and Ohio law "make *LaBrier* unhelpful to State Farm here." *Id.* at 463. *Here,* the Sixth Circuit has held that "an Ohio insurer may **not** deduct the cost of labor depreciation pursuant to actual cash value insurance policy that does not expressly provide for such deductions." (Emphasis added.)  *Cranfield,* 798 Fed. Appx. at 930.

Even the Eighth Circuit (where *LaBrier* was decided) subsequently affirmed class certification in a labor-depreciation case like this one.  *Stuart v. State Farm Fire and Cas. Co.,* 910 F.3d 371, 378 (8th Cir. 2018). The *Stuart* court noted that in *LaBrier,* "because the contracts did not specify how ACV payments would be calculated, whether State Farm was in breach would depend on whether its methodology produced a reasonable estimate of ACV … in an individual case." *Id.* at 376. In *Stuart,* the contracts specified that ACV is ""the amount it would cost to repair or replace damaged property, less depreciation."" *Ibid.* Further, under Arkansas law, State Farm was prohibited from depreciating labor when using this formula. *Ibid.* Therefore, the district court did not abuse its discretion in concluding that common questions predominated. *Id.* at 377.

Here, as in *Stuart,* under Ohio law ACV has a specific meaning: the "insurer shall determine actual cash value by determining the replacement cost of property at the time of loss, including sales tax, less any depreciation." O.A.C. 3901-1-54(l)(2)(a). The Sixth Circuit has thus held that "depreciation" does not include labor or other non-material items like general contractor overhead and profit. *Perry,* 953 F.3d at 421 (holding that "Allstate improperly depreciated labor costs in calculating ACV"); *Cranfield,* 798 Fed. Appx. at 930. Therefore, as was true in *Stuart,* there are no individual issues regarding the calculation of ACV to present to an appraisal panel or a jury.

### 5.     All the putative class members are entitled to recover interest.

Plaintiffs seek to recover interest on the depreciation improperly withheld from their ACV payments until the funds improperly withheld are returned to Plaintiffs. State Farm suggests that some insureds are not entitled to recover interest on their damages. That argument fails.

The Sixth Circuit has held that State Farm breached its contract by improperly depreciating labor. And, under Ohio law, "interest is calculated from the accrual date of the breach of contract claim." *McNulty v. PLS Acquisition Corp.,* 8th Dist. Nos. 79025, 79125, 79195, 2002-Ohio-7220, ¶ 64. "Causes of action for breach of contract accrue when the alleged breach causes actual damages to the complaining party." *Cooper v. City of West Carrollton,* 2d Dist. No. 27789, 2018-Ohio-2547, ¶ 37. Here, the accrual date of the breach of contract claim is the date on which the ACV payment was made. Every putative class member was denied a portion of their ACV payment due to State Farm improperly depreciating non-materials. Therefore, all the putative class members suffered damages on the date of their deficient ACV payments.

ACV is determined "at the time of the loss." Cranfield Policy, page 11, Ex. N, PageID # 4322 and 4365.  State Farm tries to ignore its policy language and argues that ACV should be calculated not at the time of loss, but *after* repairs are made. But "class members were

under no obligation to make repairs to use the ACV payment." *Hicks,* 965 F.3d at 461. Nor were they under any obligation to make repairs to receive an ACV payment. ACV was to be calculated and paid *before* repairs were made. Since ACV must be paid *before* repairs are made, State Farm's calculation of ACV is not based (as State Farm implies) on a receipt from a contractor or any other evidence of the actual cost of repairs. Instead, a State Farm adjuster visits the site of the property damage, gathers specific data, enters that data into the Xactimate computer program, and the computer program calculates ACV. State Farm has not presented evidence that its estimating software malfunctioned. To the contrary, State Farm's witnesses testified that it is the program State Farm relies upon to calculate ACV. Moss Tr. 20:8-12, Ex. 1A, PageID # 2137. After State Farm uses Xactimate to calculate ACV and it makes its ACV payment the claim is marked "closed" on State Farm's system and remains closed unless the insured comes back for an *additional* replacement cost payment. Sandvick Tr. 51:4-52:4 (Ex. 15) ("You do not have to ever come back for … replacement cost benefits."). There is no basis for going back and re-assessing ACV after the fact based on the actual cost of repairs.

## CONCLUSION

For all the foregoing reasons, Plaintiffs request that the court enter an order certifying this case is a class action, appointing Cranfield, Northpointe and Ermidis as class representatives, and appointing the undersigned as class counsel.

Respectfully submitted,

*/s/ Patrick J. Perotti*

Patrick J. Perotti, Esq. (#0005481)
James S. Timmerberg, Esq. (#0067499)
Dworken & Bernstein Co., L.P.A.
60 South Park Place
Painesville, Ohio 44077
Phone: (440) 352-3391
Fax:   (440) 352-3469

Email:  pperotti@dworkenlaw.com
       jtimmerberg@dworkenlaw.com

James A. DeRoche (#0055613)
GARSON JOHNSON LLC
2900 Detroit Avenue
Van Roy Building 2nd Floor
Cleveland, OH 44113
Phone:  (216) 696-9330
Fax:  (216) 696-8558
Email: jderoche@garson.com

R. Eric Kennedy (#0006174)
Daniel P. Goetz (#0065549)
Weisman, Kennedy & Berris Co., L.P.A.
1600 Midland Building
101 Prospect Ave., W.
Cleveland, OH 44113
Phone:  (216)781-1111
Fax:  (216)781-6747
Email:  ekennedy@weismanlaw.com
       dgoetz@weismanlaw.com

Erik D. Peterson (PHV)
MEHR, FAIRBANKS & PETERSON
TRIAL LAWYERS, PLLC
201 West Short Street, Suite 800
Lexington, KY 40507
Telephone:  859-225-3731
Facsimile:  859-225-3830
Email:  edp@austinmehr.com

Stephen G. Whetstone (#0088666)
WHETSTONE LEGAL, LLC
P.O. Box 6
2 N. Main Street, Unit 2
Thornville, Ohio 43076
Telephone: 740.974.7730
Facsimile:  614.829.307
Email: steve@whetstonelegal.com

*Counsel for Plaintiffs and the Putative
Class*

29

## CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2021, a copy of the foregoing *Plaintiffs' Reply Brief in Support of Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel* was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.

*/s/ Patrick J. Perotti*
Patrick J. Perotti, Esq. (#0005481)
Dworken & Bernstein Co., L.P.A.

*One of the Attorneys for Plaintiffs and the Putative Class*