UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CHARLES CRANFIELD, et al., | CASE NO. 1:16-CV-01273 |
| Plaintiffs, | JUDGE CHRISTOPHER A. BOYKO |
| -vs- | |
| STATE FARM FIRE & CASUALTY COMPANY, | **REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT TESTIMONY OF HEATHER L. ALBRIGHT** |
| Defendant. | |

## INTRODUCTION

State Farm admits the Albright expert report it is trying to use is 'not statistically representative.' Defendant's Brief in Opposition to Plaintiffs' Motion to Excluded the Expert Testimony of Heather L. Albright ("Brief") at page 4 ("Albright did not opine that the sampling was statistically representative of the broader population of putative class claims."). For that and other reasons, Plaintiff has therefore requested the Albright report be stricken for not meeting the requirements of Rule 702. State Farm now responds as follows. First, it argues that Albright is not trying to 'opine' on the class of 34,072, and rather is only making 'anecdotal observations.' (*Id*. at 5.) Second, State Farm insists that Albright's report was never intended to, and in fact **did not,** extrapolate from 149 claims to the cohort of 34,072 claims. *Id*. at 7. ("The purpose of my review of the 149 claims was not to use it to make a conclusion or assessment of the entire population."). Third, State Farm complains that Albright is merely 'helping' the court understand the insurance claims process at State Farm.

1

Each of those arguments fail under Rule 702, no matter how State Farm tries to spin them. First, a person who is *not* by firsthand experience qualified in a particular field, like Albright here, is not permitted to rely on "anecdotes" to testify as an expert. Anecdotes do not meet the Rule 702 scientific validity requirement. As the Sixth Circuit confirmed in *Istvan v. Honda Motor Co.*, 455 Fed. Appx. 568 (6th Cir. 2011), scientific expert testimony is not, and may not be based on, anecdotes, rather than probability. *Id*. at 572 ("The support for Gregorio's opinion was merely anecdotal, which is plainly not befitting of an expert's opinion.").

Second, if Albright is not trying to use 149 files to extrapolate to the characteristics of 34,072, why does her report continuously do so?

Third, how can Albright claim to be an expert on the operation of State Farm's claims process, when she admits no expertise of any kind in insurance matters, and had to consult with State Farm's personnel to even 'understand' the process. ("I was reviewing those claims just to understand what kind of facts and circumstances are in the—the 149 claims and could exist for all claims.") *Id*. at 7.

Unless based on expert's own experience in the field, expert opinions must be expressed in terms of probability, or it is not allowed. *Carter v. McNaughton*, 2018 WL 1616057, at *2 (N.D. Ohio 2018), citing *Rorick v. Silverman*, 2015 WL 9303125, *6 (S.D. Ohio Dec.12, 2015) ("The expert's opinion must be expressed in terms of probability, not possibility"); *Lang v. Bobby*, 2015 WL 1423490 (N.D. Ohio 2015) ("Ohio courts require expert opinions in civil cases to rise to the level of probabilities before being admitted under Evid. R. 702."). Instead, the wording Albright uses in her entire report, and her admissions in deposition, are the stuff of speculation and guesswork, with no anchor in probability nor in any of the other requirements of Rule 702. (Written in terms of "might"; "could"; "I think"; "I can't say" I know anything about the data;

2

there "may" be; "presumably"; as further discussed below.). Albright is **no**t an insurance expert, having zero training or experience in adjusting insurance claims that could conceivably qualify her to express experienced-based opinions in this context.

A.     **Anecdotal Evidence Cannot be a Basis for Expert Opinions**

We could take State Farm's attorneys at their word that Albright offers anecdotes rather than expert opinion, and the matter would be done and her report does not come in. As was explained by the Sixth Circuit in *Istvan,* anecdotes and reports based on them are not admissible, since that is "plainly not befitting an expert's opinion." *Istvan*, 455 Fed. Appx. at 572.

Plaintiffs have taken the matter one step further, however, to show this honorable court that Albright is *also* doing what her lawyers claim she is *not.* Does Albright use 149 claims to try and issue not anecdotes, but expert extrapolated opinions, on 34,072 claims? She does. Time and again. Word games by State Farm fail to change that fact.

Desperate to avoid the word "extrapolate," Defendant's Brief insists Albright is only offering "anecdotal observations": "Based on her analysis, including her **anecdotal observations and illustrations** from within the sample claim files, Ms. Albright reached several conclusions." (Doc. No. 128, PageID No. 5368, emphasis added; *see also*, Page No. 5371 "nor are they the focus of the **anecdotal observations** of Ms. Albright's report.")

That gets them nowhere, and Rule 702 is not avoided by this word game. The Sixth Circuit has specifically rejected such attempt to dodge *Daubert* requirements, warning that a claim the opinion is only "anecdotal evidence" is a red flag that the opinion should be excluded: "Red flags that caution against certifying an expert include **reliance on anecdotal evidence, improper extrapolation**, failure to consider other possible causes, lack of testing, and subjectivity." *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012) (emphasis added); *Istvan*,

3

455 Fed. Appx. at 572 ("The support for Gregorio's opinion was merely anecdotal, which is plainly not befitting of an expert's opinion.").

These cases undermine the entire premise of State Farm's attempt to use Albright. An expert renders "opinions," not anecdotes. *Istvan*, 455 Fed. Appx. at 572 ("The support for Gregorio's opinion was merely anecdotal, which is plainly not befitting of an expert's opinion.").

Those opinions must ***always*** be grounded in scientific reliability or experience in the relevant field (here insurance claims adjustment) (Fed. Evid. R. 702) and the burden to establish that, in the first instance, rests not on the opponent, but on the proponent—by competent, credible evidence. "The proponent of expert testimony must establish all the foundational elements of admissibility by a preponderance of proof." *Carter*, 2018 U.S. Dist. LEXIS 57561, at *5-6 (citation omitted); *Rauch*, 2017 U.S. Dist. LEXIS 33187 at *6-7. By admitting Albright is merely giving anecdotes, and is basing her conclusions on anecdotes, her report is inadmissible.

This rule is well-known in the Northern District of Ohio. *Hamilton v. Menard, Inc.*, Case No. 3:10 CV 1997, 2012 U.S. Dist. LEXIS 139519, *19 (N.D. Ohio Sept. 27, 2012) ("A trial court must watch for certain 'red flags,' those things which, if present, may caution against certifying a witness as an expert. These 'red flags' include '**reliance on anecdotal evidence, improper extrapolation**, failure to consider other possible causes, lack of testing…subjectivity…[and] if a purported expert's opinion was prepared solely for litigation.'") (citing and quoting *Newell*, 676 F.3d at 527) (emphasis added). Defendant concedes that Albright relies on anecdotal evidence, so itself has raised this red flag for the Court.

**B.      State Farm's Brief Reiterates that Albright Extrapolates From the Sample**

As explained above, not only are 'opinions' based on anecdotes inadmissible. Equally inadmissible are those that use 'extrapolation' (a scientific process) without demonstrating the

4

scientific method followed. This is known as "improper extrapolation," and is another "red flag" cautioning against admitting an expert's opinions. *Newell*, 676 F.3d at 527 ("Red flags that caution against certifying an expert include …. **improper extrapolation**.") (emphasis added).

Does Albright not only offer wide ranging 'anecdotes' (which are not proper basis for expert opinion in the first place), but also repeatedly try to opine and conclude what 149 files 'show' about 34,072? She does and does repeatedly. The report is inadmissible for that reason, also. Please note that State Farm tries mightily to claim otherwise, as does Albright, since it is not disputed that if such extrapolation occurs, it requires criteria Albright admits she did not obtain, and does even not know.

First, therefore, let us look to confirm what was done. And that is not difficult, because it appears repeatedly, throughout her report.

As State Farm's counsel admits: "She…offered opinions based upon her review and her experience as to the individualized factual analysis involved in determining whether each putative class member's claim – as is alleged by Plaintiffs – was underpaid by Defendant and whether each putative class member suffered an injury." (Doc. No. 128, PageID No. 5364, emphasis added.)

The Brief further summarizes her extrapolations from 149 to 34,072:

> In addition, she concluded that it is not possible to accurately and reliably determine if a policyholder [and there are 34,072 of them at issue here] (i) received an initial payment with no deduction for labor or other non-material depreciation; (ii) received payments up to the applicable policy limit; or (iii) received payments that were sufficient to complete the repairs, solely by using extracted estimate and claim payment data.

(Doc. No. 128, PageID No. 5368, emphasis added.)

State Farm further states: "Moreover, Ms. Albright opined that the time required to review and analyze each claim file across the putative class [again, 34,072] could be significant – and that

5

Plaintiffs have shown no reliable way to identify injury or damages absent such a review." (*Id*., emphasis added.)

Equally clear, Defendant admits that the quotes from her report in the Motion, (Doc. No. 119-1, PageID No. 4626-28), demonstrate extrapolation by Albright from the 149 sample to the cohort of 34,072 (Doc. No. 128, PageID No. 5371.)

> [A] review of <u>each potential class member's claim file</u> would be extraordinarily time-consuming. <u>Across the potentially relevant population of approximately 34,000 claims identified in the Data Report, a conservative estimate of the time to review the remaining claims would be approximately 16,000 hours.</u> This equates to one person working 40 hours a week for nearly 3 years in order to do an initial review of the population claim files.

(Doc. No. 119-2, PageID No. 4646-47.)

The question therefore becomes, did she follow Rule 702 and *Daubert* in reaching her opinions and offering them to the court. As admitted by Albright herself, she did not. She admits that her report is not merely inadmissible 'anecdotes, but an attempt at expert extrapolation; without however any of the verification required by Rule 702 and *Daubert*. Under Rule 702, her report must be excluded.[1]

**C.** **<u>Albright Needed to Verify the Sample's Validity and Reliability</u>**

Defendant claims that since Albright only offered anecdotes, Rule 702 requirements on statistical accuracy, sampling, and methodology do not apply. As explained above, anecdotes, themselves, are not admissible, nor proper basis for expert opinion. Further, as illustrated above, Albright repeatedly went far beyond anecdotes and rather attempted to opine about extrapolation from 149 transactions to 34,072.

---

[1] Defendant also ignores that Albright has no experience adjusting claims, in the insurance industry, or with Ohio insurance requirements and controlling regulations and precedent. (Doc. No. 119-1, PageID No. 4628-29 and 4635.)

6

So how did she get there? Did she comply with Rule 702 and *Daubert*? Her report does not show any such compliance, and in her deposition, Albright admitted (which we quoted at length in the Motion to Exclude) that she did not. She did provide the data she used. The data was obtained from someone else she knows nothing about and who Defendant has not shown was an expert in any field. Albright did not verify anything she received. In reaching her opinion she was compelled to admit she did not comply with any of the requirements of Rule 702 and *Dauber*. And she concedes she does not know (or even claim) that the data, the sample, her extrapolations, or any aspect of her report meets the requirement of Rule 702.

> Q. What do you know about Ms. Mada in terms of her background?
>
> A. **I can't say that I do**. I just know she pulled the – pulled – identified – sorted the claim – a list of claims that were produced in this matter using a random number generator in order for the 149 claims to be identified <u>that were I would assume</u> the PDF claim files for those 149.
>
>     \*        \*        \*
>
> Q. So in paragraph 2, number 2 in that paragraph, you say, 'provide a summary and explanation of my review and analysis of a random sampling of 149 structural damage insurance claims.' Do you see that, ma'am?
>
> A. Yes.
>
> Q. How – how was that random sample selected?
>
> A. So, as I said, I spoke to Debbie Mada, the person at State Farm who randomly assigned a number to each a list of claims that were produced in this matter. **So from what I understand**, she received a list of claim numbers that were produced by – that were covered in the production. **I think** these are the claim numbers that were in the data report, as I refer to it in my report. And she assigned a random number using a SAS program to each claim, and the first – the first 149 that were assigned are the claims that I received and reviewed.
>
>     \*        \*        \*
>
> Q. Did you do anything to test whether the sample that you were provided was representative of the population as a whole?
>
>   MR. KAHN: Objection. Form.
>
> A. No, I did not. Other than I, as I said, spoke to the woman who pulled the sample to conclude that it was that randomly selected sample of claims.

Q. Did you ask her whether or not she made any effort to determine whether or not the sample you were provided was representative of the population as a whole?

A. No, I did not.

Q. Do you know if she had any background in statistics?

A. I do not know.

Q. Did you calculate any confidence intervals with respect to the results of your sample review?

A. No, I did not.

Q. Did you attempt to determine what the margin of error was with respect to your sample analysis?

    MR. KAHN: Objection. Form.

A. No, I did not.

Q. Did you do any statistical analysis to determine whether or not the sample size was large enough to support the notion that looking at the sample was productive – predictive, rather, of the population as a whole?

A. No, I –

    MR. KAHN: Objection. Form.

Q. You can answer.

A. No, I did not.

    \*        \*        \*

A. As we talked about this morning, **I did not come up with or determine a statistically significant sample**, which is what you are talking about, that could be used to make conclusions about this population. **This was simply a random sample**.

(Albright Dep., 30:4-12; 42:4-23; 47:21-48:21; 128:18-23, emphasis added.)

An expert cannot adopt another's data without verifying its validity and reliability. *York v. Starbucks Corp.*, Case No. CV 08-07919 (PJWx), 2011 U.S. Dist. LEXIS 155682, *41 (C.D. Cal. Nov. 23, 2011). By failing to address this basic tenet for expert opinions, Defendant has

failed to prove the verification, validity, or reliability of the sample. (Doc. No. 119-3, Albright Dep., 30:4-12; 42:4-23; 47:21-48:21; 128:18-23.)

"Sampling is a methodology based upon inferential statistics and probability theory." *Duran v. U.S. Bank Nat'l Assn.*, 59 Cal. 4th 1, 38, 325 P.3d 916, (Cal May 29, 2014). "The essence of the science of inferential statistics is that one may confidently draw inferences about the whole from a representative sample of the whole." *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019-20 (5th Cir. 1997). "'[I]nferences from the part to the whole are justified [*only*] when the sample is representative.'" *Duran*, 59 Cal. 4th at 38 (citation omitted) (emphasis in original). In addition, the sample size cannot be too small. *Duran*, 59 Cal. 4th at 42. The trial court must "determine that a chosen sample size is statistically appropriate and capable of producing valid results within a reasonable margin of error." *Id*. None of that exists here.

Defendant responds by arguing that other courts have approved the 'SAS' system that Albright "thinks" Mada used as a random sample. (Doc. No. 128, PageID No. 5372.) That does not cure the failure to validate, assign confidence intervals, show margin of error, etc. Albright admits none of that was done. In fact, the cases cited by State Farm to claim that saying an "SAS" was used is all that is needed, *U.S. ex rel. Martin v. Life Care Ctrs. of Am., Inc.*, Case No.1:08-cv-251, 2014 U.S. Dist. LEXIS 142657 (E.D. Tenn. Sept. 29, 2014) and *San Bois Health Servs. v. Hargan*, Case No. CIV-14-560-RAW, 2017 U.S. Dist. LEXIS 183406 (E.D. Okla. Nov. 6, 2017) say nothing of the sort. Rather they actually require ***excluding*** Albright's opinions. In *Martin*, the person operating the SAS was a PhD in statistics and "authored approximately 120 publications related to statistical sampling." *Martin*, 2014 U.S. Dist. LEXIS 142657, at \*14. That expert explained how he selected the sample. *Id.*, at \*19. That expert "considered whether a sample size of 400 was sufficient and later 'conducted a number of simulations that show a sample size of 400

9

is likely to yield estimates that meet or substantially exceed established auditing standards.'" *Id*., at *39. None of this was done here, and all of that analysis is completely are missing from Albright's report and testimony.

*San Bois* likewise would exclude Albright as an expert. The *San Bois* court explained that to allow opinion using the SAS program, a seed value is needed: "The SURVEYSELECT procedure, when used for this and similar purposes [generate random numbers], requires a positive integer commonly referred to as a 'seed value' in order to initialize the routine to generate the random numbers." *San Bois*, 2017 U.S. Dist. LEXIS 183406, at *14. The *San Bois* expert provided an SAS log confirming the seed value. *Id*. They also explained the process used to derive the sample. *Id*., at *14-15. Finally, the party offered a qualified statistician's expert opinion that the sampling was done correctly. *Id*., at *16. Again, none of this occurred here.

Perhaps most telling of all is that Defendant offered no affidavit of Mada explaining her qualifications to run SAS, her experience in using SAS, whether she is statistician, whether she conducted simulations to establish that a sample size of 149 is valid and reliable, the process she used to derive the sample, or the seed value she used. Just the opposite, the only way we even know that "Mada" (whoever that even is) exists is the passing comment that someone named "Mada' gave Albright what she 'thinks' was the data used in the claims report. She does not even know that but admits she only "assumes" it. (Albright Dep., 30:4-12; 42:4-23; 47:21-48:21; 128:18-23.)

By offering no evidence on these issues, Defendant has entirely failed to carry its burden to use Albright's report.

D. <u>**Plaintiffs Raises More than Theoretical Objections to the Report**</u>

Defendant recognizes the various *Daubert* defects in Albright's report, including her

10

threshold failure to establish: 1) a valid representative (not merely random) sample (she provides none); 2) opinions offered based on expertise in the relevant field (she admits having none); and 3) accepted methods for offering the opinions tendered (she admits not following any). Defendant tries to skirt these deficiencies by insisting that **Plaintiffs** have the burden to establish the deficiencies in Albright's report, and failed to do so. (Doc. No. 128, PageID No. 5372, fn 3.) Defendant is wrong on both counts. First, Defendant's argument is contrary to well-established law that **Defendant** as the party offering Albright has the burden to prove that Albright's opinions meet the admissibility requirements of Fed. R. Evid. 702. *See Carter*, 2018 U.S. Dist. LEXIS 57561, at *5-6. Second, Plaintiffs have pointed directly to the multiple, specific deficiencies in this report. Plaintiffs challenge Albright as qualified at all, on this matter.

Thus, it is disturbing when State Farm falsely states that "Plaintiff does not challenge Albright's qualifications." That is completely untrue. Plaintiffs specifically challenge Albright as having any ability as an expert *in these matters.* We challenge, wholesale, her ability to provide 'expert opinions' on the proper treatment of 34,072 claims by looking at 149 files that no one verified and that are admitted to fail any showing of scientific or statistical significance to the larger cohort. Defendant could have offered further information and testimony, IF same existed, to create the necessary record of *at least* the fundament for an opinion. It did not.

And the cases Defendant cites on this issue do not rescue Albright from these failures. Two of the cases (to try to assert Plaintiffs have the burden) do not involve motions to exclude expert testimony. They are cases dealing with experts stipulated by the parties, using scientific methodology not questioned. They question, in employment discrimination suits, whether certain variables are proper to identify discrimination. *See Barnes v. Gencorp., Inc.*, 896 F.2d 1457, 1461 and 1467 (6th Cir. 1990); *Capaci v. Katz & Besthoff, Inc.*, 711 F.2d 647, 651 (5th Cir. 1983). The

11

other case cited by State Farm also does not state what Defendant asserts (Doc. No. 128, PageID No. 5372, fn. 3.), that Plaintiffs have the burden of proving that the sample is flawed. The case notes that an opinion by a statistical expert, otherwise competent and reliable, will not be overcome by unspecified challenges. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d, 430, 527 (S.D.N.Y. 2018) ("Exchange plaintiffs do not explain which statistical tests conducted by Dr. Willig are rendered flawed by small sample sizes, and we decline to speculate.").

In contrast, here the deposition of the expert, without being refuted by Defendant, confirms that Albright "did not: (1) make any effort to determine whether the sample was representative of the population as a whole; (2) calculate any confidence intervals regarding the results of her sample review; (3) determine the margin of error regarding the sample analysis; and (4) do a statistical analysis to determine whether the sample size was large enough to support the notion that looking at the sample was predictive of the population as a whole." (Doc. No. 119-1, PageID No. 4632.) Defendant also offers no evidence that the sample avoids "selection biases." (Doc. No. 119-1, PageID No. 4633.) Plaintiffs note (which State Farm does not dispute) that: "It [sampling in statistics] involves analyzing the distribution of key variables in the population compared to the sample and considering standard deviations; confidence intervals; chi-square testing; etc. — none of which Albright indicates even a shred of understanding." *Id*. These are more than theoretical objections – they are specific examples of the issues with Defendant's sample, which Defendant does not rebut. The Albright sample and her report and conclusion relying on it do not comply with Rule 702 or *Daubert*.[2]

---

[2] In addition, Defendant argues that courts have allowed small sample sizes. (Doc No. 128, PageID No. 5372, fn. 3.) That is not the issue. It is proof in the record of the relationship between the sample and the cohort. And very small samples, **without more**, have been rejected. *See Conley v. U.S. Bank Nat'l Ass'n*, 211 Fed. Appx. 402, 407 (6th Cir. 2006) ("The district court was correct that this small sample size gives Conley's statistics little or no probative value."); *Simpson v.*

12

### E. Plaintiffs are not Contesting the File-By-File Review, But Rather the Sample on Which Albright Reaches Her Extrapolated Opinions

Contrary to Defendant's argument, Plaintiffs are not challenging the file-by-file review methodology. (Doc. No. 128, PageID No. 5373-74.) Rather, Plaintiffs assert Albrights 149 sample is invalid and unreliable for her to make her extrapolated opinions on what would be found in other files; how long it would take to review the entire cohort; what the spreadsheets 'lack' (when they are not the sole items that State Farm and other carriers used to successfully identify, calculate and pay refunds, for example, in other labor depreciation cases); and the like.

Finally on the random case law cited by State Farm that Albright and her report are proper, those cases did not challenge the witness in the first place. *See Nguyen v. St. Paul Travelers Ins. Co.*, Case No. 06-4130, 2008 U.S. Dist. LEXIS 88288 (E.D. La. Oct. 22, 2008) (no *Daubert* challenge to defendant's expert witness); *Dennington v. Defendant Fire & Cas. Co.*, Case No. 4:14-cv-004001, 2016 U.S. Dist. LEXIS 200565, *9 (W.D. Ark. Aug. 24, 2016) (plaintiffs challenged only that the expert had Defendant's adjusters participate in the review). These cases do nothing to undermine the fact that Albright and her report fail virtually all requirements for Rule 702 expert opinions.

As a side note, Defendant's reference to state departments of insurance using file reviews is misplaced and extraneous to Plaintiffs' arguments. (Doc. No. 128, PageID No. 5374.) How does that have anything to do with Albright offering expert testimony?)

---

*Midland-Ross Corp.*, 823 F.2d 937, 943, fn 7 ("A number of courts have recognized that small statistical samples provide little or no probative force"); *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 267 (6th Cir. 2010); *Brocklehurst v. PPG Indus.*, 123 F.3d 890, 897 (6th Cir. 1997).

F.  **Albright's Opinions that Accounting, Tax, and Appraisal Industries Depreciate Labor and Non-Material Costs are Irrelevant**

Defendant contends that since the Sixth Circuit concluded that Defendant's policy is ambiguous, the fact that accounting, tax, and appraisal industries depreciate labor and non-material costs is relevant to interpreting the policy. (Doc. No. 128, PageID No. 5376-78.) But the Sixth Circuit did more than just conclude that Defendant's policy is ambiguous. It then construed the policy against Defendant and held as a matter of law that the policy does not allow for the depreciation of labor and non-material costs. *Perry v. Allstate Indem. Co.*, 953 F. 3d 417, 423 (6th Cir. 2020):

> Because Perry's interpretation of 'depreciation' is a fair reading of an ambiguous term, her interpretation prevails against the insurer. **We accordingly hold as a matter of law that it was improper for Allstate to depreciate labor costs to arrive at its net payment to Perry for the damage to her home**.

(emphasis added.)

The Sixth Circuit doubled-down on this holding in *Cranfield v. State Farm Fire & Cas. Co.,* 798 Fed. Appx. 929, 930 (6th Cir. 2020), when it concluded that Defendant's policy does not expressly provide for depreciation of labor costs:

> We recently resolved this issue in *Perry v. Allstate Indem. Co.,* 953 F.3d 417, 2020, WL 1284960 (6th Cir. Mar. 18, 2020). **In *Perry*, we held that an Ohio insurer may not deduct the cost of labor depreciation pursuant to an actual cash value insurance policy that does not expressly provide for such deductions. 2020 U.S. App. LEXIS 8555, [WL], at \*4**. **Because Cranfield's policy with Defendant did not expressly provide for labor-cost depreciation deductions,** *Perry* **commands the same result here**.

(emphasis added.) Albright's 'opinions' about accounting, tax, and auditing professions are not only irrelevant, they conflict with the decision and mandate in this case and may not be offered. *See Nordson Deutschland Gmbh v. Ins. Co. of the State of Pennsylvania*, 156 F.Supp.3d 894, 897 (N.D. Ohio 2016) (an expert "cannot pass on questions of law"); *In re Diet Drugs*, 2001 WL

14

454586, at *17–18 (E.D. Pa. 2001) (finding that opinion by regulatory expert that contradicted law was inadmissible).

Furthermore, the cases relied on by Defendant to argue that experts can opine on accounting and appraisal fields have nothing to do with using such experts in labor depreciation cases. (Doc. No. 128, PageID No. 5375.) The Sixth Circuit's two holdings that labor depreciation is not permitted in this context make tax and accounting opinions immaterial. Also, the cases cited by State Farm involved tax and accounting issues and claims, a far cry from this insurance case. *See Robson v. Duckpond Ltd.*, Case No. 4:19-cv-01862-SRC, 2021 U.S. Dist. LEXIS 63278 (E.D. Mo. March 31, 2021) (case involving the valuation of a company's stock in a dispute over the buyout of that company); *Avomeen Holdings, LLC v. Thanedar*, Case No. 17-cv-13703, 2019 U.S. Dist. LEXIS 128495 (E.D. Mich. Aug. 1, 2019) (dispute over the purchase of a company and the valuation of the company); *In re Longtop Fin. Techs. Sec. Litig.*, 32 F. Supp. 3d 453 (S.D.N.Y. 2014) (securities litigation). They do not stand for the proposition that it is appropriate for an expert to testify on tax and accounting principles to interpret an insurance policy. Defendant's citation to *Dennington* is also meaningless in light of the Sixth Circuit holdings. Indeed, the *Dennington* court noted specifically, "The question of whether labor was improperly depreciated is a legal question upon which this court has yet to make a decision." *Dennington*, 2016 U.S. Dist. LEXIS 200565, at * 7. The legal question of whether State Farm "improperly depreciated" labor has been definitively answered here by the Sixth Circuit, so Albright's opinions are irrelevant.

## **CONCLUSION**

For the foregoing reasons and those demonstrated in Plaintiffs' Motion, Defendant has failed to satisfy its burden of establishing that Albright's opinions are admissible under Fed. R. Evid. 702. Therefore, they should be excluded.

15

Respectfully submitted,

*/s/ James A. DeRoche*
James A. DeRoche, Esq. (#0055613)
**Garson Johnson LLC**
2900 Detroit Avenue
Van Roy Building, Second Floor
Cleveland, Ohio 44113
Phone: (216) 696-9330
Fax: (216) 696-8558
Email: jderoche@garson.com

Patrick J. Perotti, Esq. (#0005481)
**Dworken & Bernstein Co., L.P.A.**
60 South Park Place
Painesville, Ohio 44077
Phone: (440) 352-3391
Fax: (440) 352-3469
Email: pperotti@dworkenlaw.com

R. Eric Kennedy (OH #0006174)
Daniel P. Goetz (OH #0065549)
**WEISMAN, KENNEDY &
BERRIS CO., L.P.A.**
2900 Detroit Avenue
Van Roy Building, Second Floor
Cleveland, Ohio 44113
Phone:         216.781.1111
Facsimile:    216.781.6747
Email: ekennedy@weismanlaw.com
dgoetz@weismanlaw.com

Stephen G. Whetstone (0088666)
**Whetstone Legal, LLC**
P.O. Box 6
2 N. Main Street, Unit 2
Thornville, Ohio 43076
Telephone: 740.974.7730
Facsimile:  614.829.307
Email: steve@whetstonelegal.com

Erik D. Peterson (KY Bar 93003)
**Mehr, Fairbanks, & Peterson Trial
Lawyers, PLLC**
201 West Short Street, Suite 800
Lexington, Kentucky 40507

               Telephone:  859-225-3731
               Facsimile:  859-225-3830
               Email: edp@austinmehr.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants today (May 27, 2021).

            */s/James A. Deroche*
            James A. DeRoche, Esq. (#0055613)
            Garson Johnson, LLC

            *One of the Attorneys for Plaintiffs*