# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

CHARLES CRANFIELD, et al.,

                Plaintiffs,

-vs-

STATE FARM FIRE & CASUALTY
COMPANY,

                Defendant.

CASE NO. 1:16-CV-01273

JUDGE CHRISTOPHER A. BOYKO

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S MOTION FOR SUMMARY JUDGMENT**

Patrick J. Perotti, Esq. (#0005481)
DWORKEN & BERNSTEIN CO., LPA
60 South Park Place
Painesville, OH 44077
Phone: (440) 352-3391
Fax: (440) 352-3469
Email: pperotti@dworkenlaw.com

James A. DeRoche (#0055613)
GARSON JOHNSON LLC
2900 Detroit Avenue
Van Roy Building 2nd Floor
Cleveland, OH 44113
Phone: (216) 696-9330
Fax: (216) 696-8558
Email: jderoche@garson.com

R. Eric Kennedy (#0006174)
Daniel P. Goetz (#0065549)
WEISMAN, KENNEDY & BERRIS CO., L.P.A.
1600 Midland Building
101 Prospect Ave., West
Cleveland, OH 44113
Phone: (216) 781-1111
Fax: (216) 781-6747
Email: ekennedy@weismanlaw.com
Email: dgoetz@weismanlaw.com

Erik D. Peterson (PHV)
MEHR, FAIRBANKS & PETERSON
TRIAL LAWYERS, PLLC
201 West Short Street, Suite 800
Lexington, KY 40507
Telephone: 859-225-3731
Facsimile: 859-225-3830
Email: edp@austinmehr.com

Stephen G. Whetstone (#0088666)
WHETSTONE LEGAL, LLC
P.O. Box 6
2 N. Main Street, Unit 2
Thornville, Ohio 43076
Telephone: 740.974.7730
Facsimile: 614.829.307
Email: steve@whetstonelegal.com

*Counsel for Plaintiffs and the Putative Class*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... iii

INTRODUCTION .................................................................................... 1

FACTS ..................................................................................................... 2

LAW AND ARGUMENT .......................................................................... 6

   I.   Plaintiffs' claims are within the eight-year limitation period for breach of contract. 6

   II.  State Farm waived its contractual limitation period. .................................... 7

      A.   Summary of argument. ................................................................... 7

      B.   State Farm must prove that its contractual limitation period is enforceable. .......... 7

      C.   State Farm waived the contractual limitation period by acknowledging liability under the policy, which occasioned Plaintiffs' delay in suing. ......................... 8

      D.   State Farm has no plausible argument that Plaintiffs should have known that it was depreciating labor .................................................................... 12

      E.   Conflicting evidence on the enforceability of a contractual limitation period is properly submitted to the jury. ...................................................... 13

      F.   Applying a contractual limitation period here would contravene the purpose of allowing insurers to include such provisions in insurance policies. .............. 13

      G.   The non-waiver clause in Plaintiffs' policies does not preclude State Farm's conduct from having the force and effect the law says it shall have. .............. 14

   III.   Cranfield's limitation period was tolled because State Farm fraudulently concealed that it was withholding non-material depreciation. ....................... 15

      A.   Summary of Cranfield's fraudulent concealment argument. ....................... 15

      B.   Misleading half-truths are affirmative misrepresentations under Ohio law. ...... 15

      C.   State Farm told Cranfield a half-truth. ................................................ 16

      D.   State Farm's argument that Cranfield should have understood his estimate better than the State Farm adjuster who prepared it is implausible. ................ 19

      E.   State's Farm has not established that Cranfield's public adjuster knew State Farm was depreciating labor. ........................................................ 19

      F.   The evidence in the record establishes a genuine issue of material fact as to whether State Farm fraudulently concealed labor depreciation. ................... 20

      G.   *Jenkins* is inapposite. .................................................................. 21

   IV.  Northpointe's claim is within the limitation period because Northpointe is a member of the class identified in the original complaint. ....................................... 22

      A.   Northpointe falls within the original class definition because State Farm never paid all the depreciation withheld from Northpointe. ............................ 22

      B.   State Farms' notice of removal included Northpointe's claim. .................. 23

      C.   Northpointe was not paid in full. ..................................................... 24

**D.  Northpointe's limitations period was tolled by the filing of the original class action complaint.** .................................................................................... 25

**V.  Northpointe has a claim for prejudgment interest.** ...................................................... 25

**VI.  Northpointe's claim is not barred by accord and satisfaction.** .................................. 30

**VII.  Conclusion.** .................................................................................................................... 30

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alpern v. Purcell,* 11th Dist. No. 2863, 1981 WL 4437 (Ohio  App. Feb. 2, 1981 ...................... 16

*Associates Discount Corp. v. Habermann,* 8th Dist. No. 36191, 1977 WL 201433
(Ohio App. Aug. 4, 1977) ............................................................................................ 14

*Blount Financial Services, Inc. v. Walter E. Heller and Co.,* 819 F.2d 151 (6th Cir. 1987)........ 16

*Bollinger v. Nat'l Ins. Co. of Hartford,* 25 Cal.2d 399 (1944) .................................... 8

*Brewer v. Wayne Mut. Ins.,* 3d Dist. No. 7-92-6, 1992 WL 393324 (Ohio App. Dec. 29, 1992)  11

*Bumpers, Inc. v. L & L Packaging and Plating, Inc.*, 6th Dist. No. L-95-051, 1995 WL 643129
(Ohio App. Nov. 3, 1995) ................................................................................. 24, 27, 28

*Carrier Corp. v. Outokumpu Oyj,* 673 F.3d 430 (6th Cir. 2012)................................. 21

*City of Lima, Ohio v. Indiana Ins. Co.,* 3d Dist. No. 1-86-12, 1987 WL 13487
(Ohio App. June 22, 1987 ................................................................................... 13

*Cranfield v. State Farm Fire & Cas. Co.,* 798 Fed.Appx. 929 (6th Cir. 2020)............................ 1

*Dayco Corp. v. Goodyear Tire & Rubber Co.,* 523 F.2d 389 (6th Cir. 1975)............................ 21

*Dehart v. Aetna Life Insurance Company,* 8th Dist. No. 42932, 1982 WL 2473
(Ohio App. July 15, 1992) ............................................................................... 29

*Grange Mut. Cas. Co. v. Fodor*, 21 Ohio App.3d 258 (8th Dist. 1984)...................................... 11

*Griffin Contracting and Restoration v. McIntyre*, 12th Dist. No. CA2017-11-058,
2018-Ohio-3121 ............................................................................................ 26

*Hicks v. State Farm Fire & Cas. Co.,* 751 Fed. Appx. 703 (6th Cir. 2018) ................................ 17

*Hicks v. State Farm Fire & Cas. Co.,* 965 F.3d 452 (2020) ....................................... 25

*Hounshell v. American States Ins. Co.*, 67 Ohio St. 2d 427 (1981)........................................ 8, 13

*In re Polyurethane Foam Antitrust Litig.,* 799 F. Supp.2d 777 (N.D. Ohio July 19, 2011)......... 21

*Jenkins v. State Farm Fire and Casualty Company,* 2017 IL App (1st) 160612-U ............... 21, 22

*Klasa v. Rogers,* 8th Dist. No. 83374, 2004-Ohio-4490........................................... 16, 18

*Lewis v. State Farm Fire and Cas. Co.,* 238 F.3d 422 (6th Cir. 2000)........................................ 14

*Long v. Rice,* 11th Dist. No. 2012-A-0056, 2013-Ohio-2402..................................... 15

*Maine v. Leonard Truck & Trailer, Inc.,* 7th Dist. No. 13 MA 156, 2014-Ohio-5722 ............... 30

*Midwest Allergy Associates, Inc. v. The Cincinnati Insurance Co.,* 10th Dist. No. 82AP-970, 1983 WL 3568 (Ohio App. June 16, 1983 ................................................................... 7

*N.A. Water Systems, LLC v. Allianz Underwriters Ins. Co.,* No. 3:04CV7481, 2005 WL 1105069 (N.D. Ohio May 10, 2005) ................................................................................. 9, 12

*Perry v. Allstate Indemnity Co.,* 953 F.3d 417 (6th Cir. 2020) ....................................... 1

*Prepakt Concrete Co. v. Koski Constr. Co.,* 60 Ohio App.3d 28 (8th Dist. 1989) ..... 24, 27, 28, 29

*Rak v. Safeco Ins. Co. of Am.,* 8th Dist. No. 84318, 2004-Ohio-6284 .......................... 11

*Reineck v. Westfield Ins. Co.,* 6th Dist. No. H-97-039, 1998 WL 568064 (Ohio App. Aug. 28, 1998) ............................................................................................ 26

*Siebert v. Lalich,* 8th Dist. No. 87272, 2006-Ohio-6274 ..................................... 15, 18

*Steiner v. Roberts,* 131 N.E.2d 238 (Ohio App. 8th Dist. 1955) ............................... 15

*Stuart v. State Farm Fire & Casualty Co.,* 910 F.3d 371 (8th Cir. 2018) ..................... 25

*Vaccariello v. Smith & Nephew Richards, Inc.,* 94 Ohio St.3d 380 (2002) ................... 25

*Van Dyne v. Fidelity-Phenix Ins. Co.,* 17 Ohio App.2d 116 (7th Dist. 1969) .............. 14

*Warner Storage, Inc. v. Systemation, Inc.,* 64 Ohio App.3d 1 (8th Dist. 1989) ........... 30

*Wyser-Pratte Mgt. Co. v. Telxon Corp.,* 413 F.3d 553 (6th Cir. 2005) ....................... 25

**Statutes**

O.R.C. 1343.03 ....................................................................................................... 25

O.R.C. 1343.03(A) ....................................................................................... 24, 26, 27, 28

O.R.C. 2305.06 ................................................................................................... 1, 6

O.R.C. 5703.47 ....................................................................................................... 26

**Other Authorities**

3 Rest. of the Law of Torts, Sec. 529 ...................................................................... 16

4 COUCH ON INS. § 61:2. *Insurer's Status as a Debtor* (Third Ed. June 2021 update) ............... 22

**Regulations**

O.A.C. 3901-1-54 ................................................................................................... 29

## INTRODUCTION

Under Ohio law, an insurer "may not deduct the cost of labor depreciation pursuant to an actual cash value insurance policy that does not expressly provide for such deductions." *Cranfield v. State Farm Fire & Cas. Co.,* 798 Fed.Appx. 929 (6th Cir. 2020); *Perry v. Allstate Indemnity Co.,* 953 F.3d 417 (6th Cir. 2020). Here, State Farm deducted labor depreciation in calculating the actual cash value of Plaintiffs' insurance claims, although their policies did not expressly allow for such deductions. Under Ohio law, State Farm breached its contracts with Plaintiffs: "We accordingly hold as a matter of law that it was improper for [State Farm] to depreciate labor costs to arrive at the net payment to [insured] for the damage[.]" *Perry* at 423.

Ohio law provides an eight-year limitation period for Plaintiffs' breach of contract claim. R.C. 2305.06.[1] Plaintiffs brought their claims within that eight-year limitation period. The pivotal issue is whether State Farm is permitted to apply a shorter contractual limitation period. Under Ohio law, an insurer waives the ability to apply a contractual limitation period when it implicitly acknowledges liability under the policy and makes no specific denial of liability upon the policy. Here, State Farm acknowledged liability, and made no denial of liability. It never told its insureds it was going to deny a portion of their actual cash value (ACV) payment by withholding labor depreciation from that payment. Because State Farm never put Plaintiffs on notice of a potential dispute over labor depreciation, but, instead, indicated that it intended to honor its contract (which did not permit labor depreciation), it waived the contractual limitation period.

Further, Ohio law tolls the limitation period because State Farm affirmatively misrepresented to Cranfield that it was depreciating for wear and tear to property. Labor and other non-materials are not property, and they do not suffer wear and tear.  So, when State Farm

---

[1] The limitations period for breach of contract claims was shortened to six years on June 16, 2021, well after this claim was filed.

depreciated not only property for wear and tear, but also labor, it had not honestly and accurately disclosed the truth to Cranfield.

State Farm insists that from the estimates State Farm provided, Plaintiffs should have known State Farm was depreciating labor. On this summary judgment motion, State Farm's position is factually disputed.  State Farm's own management could not tell if the estimate included labor depreciation.  Even the State Farm adjuster who prepared Cranfield's estimate, despite her 20 years of experience working for State Farm, did not even know what "labor depreciation" or "non-materials depreciation" meant.  A reasonable fact finder could conclude that when State Farm's own management did not know if the estimate included labor depreciation, or even the amount, the customer would not know.

## FACTS

The undisputed facts show that (1) State Farm affirmatively (and falsely) told its customers that depreciation was a reduction in value of property due to wear and tear (even though labor is not property and does not wear and tear); (2) State did not disclose it was depreciating labor, using a standard Xactimate print format that removed from materials sent to customers the depreciation settings actually used by State Farm; and (3) even State Farm's own management could not tell from the estimate if State Farm was depreciating labor.

Alice Sandvick was "involved in handling the structural damage claim submitted by Charles Cranfield." Sandvick Dec. ¶ 4, Doc. 124-2, PageID 5016.  And she "prepared an initial repair estimate for the claim." *Id.* at ¶ 8, PageID 5017. She is a State Farm claims specialist who adjusts homeowner claims. Sandvick Tr. 16:18-24 (Deposition excerpts attached as Ex.1). She has worked for State Farm for 20 years. *Id.* at 13:8-9. Part of her job is to interact with insureds when they make a claim. *Id.* at 17:9-11.

2

At her deposition, Sandvick was asked: "What is labor depreciation?" She responded: "I don't - - I don't even know." Sandvick Tr.  37:14-16. Asked to define "nonmaterials depreciation," Sandvick answered: "Again, that's not a term that State Farm normally uses." *Id.* at 37:23-38:1-2. On how Xactimate, State Farm's estimating software, depreciates labor, Sandvick testified: "I don't really know that." *Id.* at. 64:19-22. Asked to identify the components of nonmaterial depreciation, Sandvick answered: "I don't know that." *Id.* at 96:5-8. Asked to explain how insureds could know what was included in nonmaterial depreciation when State Farm did not explain the meaning of the terms, Sandvick conceded: "I can't." *Id.* at 96:20-97:1.

Tyler McKitterick is a fire proximity section manager for Ohio, with a team of seven managers across the state, each of whom have claim handlers working for them. McKitterick Tr. 16:22-17: 3 (Deposition excerpts attached as Ex. 2). Asked about the components of nonmaterial depreciation, he testified: "I'm not sure exactly what goes into that." *Id.* at 43:13-20.  He also acknowledged that "[t]here's not a specific breakout of labor depreciation" in the damage estimate State Farm provides to its policyholders. *Id.* at 67:3-4. When asked whether the customer would know if, or how much, labor was being depreciated by reading the estimate, he said they would not.  *Id*. at 61:7-20.

> Q.     I want a yes or no answer from this. So you have to -- I'm entitled to it. Can you determine, from looking at this estimate, if or how much labor depreciation was withheld from this insured?
>
> A.     Again, sir, no, you can determine the amount of depreciation applied to the replacement cost.
>
> Q.     A total amount of depreciation?
>
> A.     Correct.
>
> Q.     Not the components of the depreciation that went into it, you can't determine those, correct?
>
> A.     I would agree, you cannot split them out. You can determine the overall depreciation applied.

3

*Id.* at 61:7-22.

> Q.    Estimating practices that are behind the scenes, that the insured has no access to and doesn't know. ***So if I'm an insured getting this estimate in the mail, and I receive it, there's no way for me to determine whether or not State Farm has withheld depreciation related to labor costs from my ACV payment, is there?***

> MR. KAHN: Objection. Form.

> A.    ***Sir, to my knowledge, there's no legal or regulatory obligation to provide that breakdown.  I believe we are held to a standard that we apply depreciation to the replacement cost to come up with the actual cash value, which is what we do.***

(Emphasis added.) *Id.* at 63:14-25; 64:1 (Ex. 2).

Harold Walton has been a State Farm claims supervisor and team manager since 1998. Walton Tr. 19:7-11 (Deposition excerpts attached as Ex. 3). Walton testified that State Farm's "Building Estimate Summary Guide" is routinely given to insureds with their estimate.  *Id.* at 25:14-17. He described the Guide as "a guide to help [insureds] understand the components of that particular page of the estimate." *Id.* at 27:5-10. The Guide is the <u>only</u> document given to the insured that defines "depreciation."  It states that depreciation is "[t]he decrease in the value of property over a period of time due to wear, tear, condition, and obsolescence."  Doc. 1-1, PageID 23 (the Guide is attached as Ex. 4).  Asked if the definition even mentions labor depreciation, Walton testified: "it's not in there." Walton Tr. 29:4-22. When asked if there was any way to determine labor depreciation "being withheld from the insured from the estimate that's provided by State Farm" Walton, who has been a State Farm claims supervisor for over 20 years, testified: "I don't know." *Id.* at 38:22-39:2. Asked how Cranfield could determine labor depreciation, Walton again replied: "I don't know[.]" *Id.* at 39:3-8. Walton also noted that before his deposition, he "didn't know the specifics of … the different aspects of depreciation in Xactimate." *Id.* at 64:10-12.

4

Xactimate is the program that State Farm uses to determine repair costs and calculate ACV. The program has a specific box that State Farm must click to instruct the program to depreciate non-materials such as labor:



Exhibit 107 (Doc. 57, PageID 686), McKitterick Tr. 33:16-25 (Ex. 2).

As is evident, the box shows the five categories of depreciation that can be applied, or not, to determine ACV: "material, non-material, removal, overhead profit, and sales tax."  Moss Tr. 61:4-8 (Deposition excerpts attached as Ex. 5). The box discloses immediately to the reader which items are, or are not, being depreciated.

> Q.     Okay. These are the settings for what depreciation was going to be applied in order to determine actual cash value, correct?

> MR. KAHN: Objection. Form. You can answer.

> A.     Correct.

McKitterick Tr. 34:10-15 (Ex. 2).

This box is so critical for State Farm personnel to determine what is being depreciated that the expert on State Farm's labor depreciation refund programs, Lisa O'Toole, did not ask to see estimates sent to customers, but instead insisted she needed to see the Xactimate settings box. O'Toole Tr. 29:7-15. (Deposition excerpts attached as Ex. 6.) When asked, O'Toole confirmed that "depreciation settings" are the check boxes, "referring to the settings that are in Xactimate." *Id*.  She then repeatedly said she wants to "see the boxes in Xactimate" that are checked to confirm what State Farm is depreciating.  *Id*.  Indeed, O'Toole repeats, two more times, that she wants to

"see a picture of the box" since she can't tell what is being depreciated "without seeing those boxes in front of me." *Id.* at 30:1-11.

So, was the box shown to State Farm's customers so they could tell if labor was being depreciated? It was not. State Farm made the conscious, affirmative decision to not print on the information sent to the customer that disclosure box showing whether non-materials are being depreciated. Although the box appears when State Farm is looking at the program on its end, it does not when the customer reviews the estimate. *See*, e.g., Cranfield Estimate, Doc. 1-1, PageID 22. This is despite the fact that State Farm does not pay ACV without sending a written estimate. O'Toole Tr. 152:20-24 (Ex. 6). Tom Moss, the State Farm manager most familiar with these systems, specifically talked to the Xactimate representatives about having "all these depreciation options [the box] shown within an estimate." Moss Tr. 102:21-24 (Ex. 5). But State Farm never included the box, or advised it customers that non-materials were being depreciated. An equally important point: State Farm has been caught unlawfully depreciating labor in other states and has implemented refund programs to return that money. Why has it not done this for Ohioans? McKitterick honestly said, "I don't know. I can't answer that question." McKitterick Tr. 113:12-13 (Ex. 2).

## LAW AND ARGUMENT

### I. Plaintiffs' claims are within the eight-year limitation period for breach of contract.

Ohio law applicable to Cranfield and the other class members provides for an eight-year limitation period for breach of a written contract. R.C. 2305.06 (effective from September 28, 2012 through June 16, 2021). Cranfield filed his class action complaint on April 22, 2016. His date of loss, according to State Farm, was October 14, 2014. State Farm's brief, Doc 130-1, PageID 5438. That places Cranfield's claim well within the statutory limitations period. Northpointe's date of

6

loss, according to State Farm, is April 2, 2016. *Id.,* PageID 5441. Again, the statutory limitation period has not yet run on Northpointe's breach of contract claim.

## II.    State Farm waived its contractual limitation period.

### A.  Summary of argument.

Under Ohio law, when an insurer makes no specific denial of liability on the insured's policy, it waives the contractual limitation period. State Farm made no specific, or even general, denial of liability here.  Just the opposite, it paid these claims without ever suggesting there was a dispute. Therefore, neither Cranfield nor Northpointe was put on notice that a legal action should be initiated.

The purpose of a contractual limitation period in an insurance policy is to protect against fraudulent claims by the insured made at a point when an investigation would be hampered by the passage of time. State Farm has fully investigated Plaintiffs' claims. And its ability to defend a claim it improperly depreciated labor is not impaired by the passage of time. Under those circumstances, allowing State Farm to avoid liability by asserting a contractual limitation period would contravene Ohio courts' reasoning for enforcing such limitation periods.

### B.  State Farm must prove that its contractual limitation period is enforceable.

When dealing with an insurance contractual limitation period, the "burden of proof is upon [State Farm] to establish an ***enforceable*** limitation clause by a preponderance of the evidence to support its affirmative defense." (Emphasis added.) *Midwest Allergy Associates, Inc. v. The Cincinnati Insurance Co.,* 10th Dist. No. 82AP-970, 1983 WL 3568 at *4-5 (Ohio App. June 16, 1983 (reversing directed verdict for insurer because it waived enforcement of the contractual limitation period). State Farm cannot meet that burden here.

**C. State Farm waived the contractual limitation period by acknowledging liability under the policy, which occasioned Plaintiffs' delay in suing.**

In Ohio "[a]n insurance company may be held to have waived a limitation of action clause in a fire insurance policy by acts or declarations which evidence a recognition of liability[.]" *Hounshell v. American States Ins. Co.*, 67 Ohio St. 2d 427, 431 (1981). This is because an insured does not know to file suit when the carrier is proceeding by its acts and declarations to approve and pay the claim. Such "acts or declarations occasion the delay by the insured in filing an action on the insurance contract until after the period of limitation has expired." *Ibid.*

Recognizing that the purpose of a contractual limitation period is to protect an insurer from fraudulent claims that may be asserted so late as to handicap the insurer's investigation of the claim, the Ohio Supreme Court in *Hounshell* cautioned that "[w]hen claims are honestly made, care should be taken to prevent technical forfeitures such as would ensue from an unreasonable enforcement of a rule of procedure unrelated to the merits." *Id.* (quoting *Bollinger v. Nat'l Ins. Co. of Hartford,* 25 Cal.2d 399, 405, 154 P.2d 399 (1944)). For example, when an offer of settlement implicitly acknowledging liability is made under the policy and there is "no specific denial of liability upon the policy" an insurer waives the contractual limitation period. *Hounshell,* 67 Ohio St. 2d at 432-33.

State Farm suggests that waiver does not apply absent affirmative fraud, but that is not the law of Ohio. The *Hounshell* court **rejected** the insurer's argument "that the law of waiver, if applied, should only apply where it is found that the insurance company, by its overt acts, misled the insured into forbearing suit until after the limitation period had expired," finding such a rule "too narrow an interpretation of the law of waiver to be applied to this type of case." *Id.* at 431.

Ohio case law is replete with examples of courts refusing demands to enforce commencement of suit provisions where the carrier did not deny liability, and thus gave the insured no reason to know payments were being withheld and suit should be filed. The *Hounshell* rule has

been consistently applied to find waiver when either (1) the insurer acknowledged liability under the policy, or (2) failed to put the insured on notice there was a dispute during the contractual limitation period. For example, where "the insurance company acted as though all claims were going to be paid" and nothing put the insured on notice there was a dispute until after the limitation period expired, the Northern District of Ohio held that the insurer waived the limitation clause. *N.A. Water Systems, LLC v. Allianz Underwriters Ins. Co.,* No. 3:04CV7481, 2005 WL 1105069, at *2 (N.D. Ohio May 10, 2005). That court observed that were it to "give effect to such limitation clauses, insurance companies would be able simply to run out the clock on claims before rejecting them" and "[n]o company would ever have to pay, and no insured would ever prevail in a coverage action." *Id.* at *2. Here the contractual limitation period for Cranfield to file suit according to State Farm was one year after the date of loss of October 14, 2014, which would have required Cranfield to commence his action by October 14, 2015.  But at that point, the claim had not even been completely investigated and payments were continuing to be made. State Farm adjuster Alice Sandvick's testimony illustrates that Cranfield would not have been on notice he needed to sue State Farm by October 2015:

> Q.   Okay. Did you recall sending any communications to the Cranfields or their public adjuster during the time you were involved in this file indicating that he should file suit against State Farm while the adjustment process was going on?
>
> A.   No.

Sandvick Tr. 60:19; 61:1 (Ex. 1).

> Q.   Okay. Let's see here.  I'm looking on page 121. And tell us what the date of loss was.
>
> A.   October 14, 2014.
>
> Q.   And did you as the claims specialist have any dispute that that was the date of loss?
>
> A.   No.

*Id.* at 88:7-13.

> Q.     Okay. And you were still working on their claim long after one year following the date of loss; is that right?

> A.     Yes.

> Q.     And in fact, you subsequently paid them more on their claim after one year after the date of loss?

> A.     Yes.

*Id.* at 105:21-106:3.

> Q.     *** I'm asking you whether you ever told them in any of your various communications, "You must file a suit against us now even though I'm still adjusting your claim"?

> MR. KAHN: Objection. Form.

> A.     No.

*Id.* at 107:13-17.

> Q.     That's fair. And in that same letter that has this suit within one year of loss, and we're looking at the last page, instead, what you said to the Cranfields specifically is, "If you still feel additional reconciliation is needed, please forward a detailed estimate to us for our review," right?

> A.     Yes.

> Q.     You didn't say, "If you still feel additional reconciliation is needed, sue us," did you?

> MR. KAHN: Objection. Form.

> A.     No.

*Id.* at 108:14; 109:1.

> Q.     Sure. And my question is, but did they ever train you as to what this means, how does it apply, does it trigger while they're still adjusting things with people, et cetera? They never gave you any of that kind of training?

> MR. KAHN: Objection. Form.

A.   So the -- the paragraph was described as exactly how it reads, that suits against the company have to be started within one year from the date of loss. <u>We were never -- it didn't go any further to talk about whether or not the claim was still being adjusted.</u>

(Emphasis added.) *Id.* at 109:12-25.

In *Brewer v. Wayne Mut. Ins.,* 3d Dist. No. 7-92-6, 1992 WL 393324 (Ohio App. Dec. 29, 1992), the court affirmed the trial court's decision refusing to enforce the commencement of suit provision, because the insured had "no warning" the insurer would deny the claim and nothing "put them on notice that legal action should be initiated." *Id.* at *3. The *Brewer* court agreed that "[i]t would be unreasonable to require that an insured … file suit against an insurer who appears to be negotiating in good faith to settle a valid claim." *Id.*

Similarly, in *Grange Mut. Cas. Co. v. Fodor*, 21 Ohio App.3d 258 (8th Dist. 1984), the court of appeals reversed a trial court order granting summary judgment based on a contractual limitation period, because the insurer's communication with the insured "showed no indication whatsoever of 'a specific denial of liability upon the policy, either totally or in part.'" *Id.* at 261; *see, also, Rak v. Safeco Ins. Co. of Am.,* 8th Dist. No. 84318, 2004-Ohio-6284 (reversing summary judgment for insurer because reasonable minds could differ on whether insurer waived contractual limitation clause by not explicitly denying the claim).

The facts here do not support State Farm.  State Farm acknowledged liability under the policy, adjusted the claim, and made ongoing payment to Cranfield, without disputing his ACV. Cranfield had no reason to sue during the contractual limitation period because nothing put him "on notice that legal action should be initiated." *Brewer*, 1992 WL 393324 at *3.

It would be unreasonable to expect Cranfield to file suit within one year as State Farm "showed no indication whatsoever of 'a specific denial of liability upon the policy, either totally or in part.'" *Fodor,* 21 Ohio App.3d at 261. State Farm "acted as though all claims were going to be paid" and never gave Cranfield reason to dispute its ACV calculation. *N.A. Water Systems,*

2005 WL 1105069 at *2. So, Cranfield could not have been on notice that State Farm was denying "all or part" of this claim by depreciating labor.

The State Farm representatives, themselves, testified that Cranfield reasonably relied on State Farm to honestly process his claim. Asked if "insureds like Cranfield rely on State Farm to properly calculate the actual cash value of their claim," State Farm's long-time Ohio claims executive Harold Walton conceded under oath: "Yeah, I believe <u>they trust their – their insurance company to pay them what's owed.</u>" (Emphasis added.) Walton Tr. 70:19-24. With State Farm confirming that labor is not mentioned anywhere, nor is non-materials, along with Walton's concession that the customers "trust their insurance company to pay them what's owed," it is factually unreasonable for State Farm to claim that Cranfield and other class members had notice of a dispute with State Farm.

**D.  State Farm has no plausible argument that Plaintiffs should have known that it was depreciating labor.**

Whether Plaintiffs should have known that State Farm was depreciating labor is a genuine issue of material fact not properly resolved on summary judgment. Sandvick is a State Farm claims specialist, with 20 years of experience, who adjusts homeowner claims. Sandvick Tr. 16:18-24; 13:8-9 (Ex. 1). She testified that she does not know what labor depreciation is. *Id.* at 37:14-16. She also testified that State Farm does not use the term "nonmaterials depreciation." *Id.* at 37:23-38:1-2. Nor could she identify the components of nonmaterial depreciation. *Id.* at 96:5-8. State Farm does not even attempt to explain why its insureds should understand their repair estimates *better* than its own adjusters.

State Farm argues that Cranfield had assistance from a public adjuster. But his obligation was to calculate *replacement cost*, not to determine *how* State Farm was calculating ACV: "Q:  Did you ever do a (sic) ACV calculation for the Cranfields? A: I did not." Jacoby Tr. 99:1-3. (Deposition excerpts attached as Ex. 7.) State Farm has produced no evidence that, before Plaintiffs

12

received their ACV payments from State Farm, Plaintiffs sought or received professional advice on the amount of the ACV payment, or whether the ACV payment was being reduced due to labor depreciation.

**E.  Conflicting evidence on the enforceability of a contractual limitation period is properly submitted to the jury.**

When there is competing evidence on the issue, enforceability of the contractual limitation is an issue for the jury and summary judgment in not appropriate. *City of Lima, Ohio v. Indiana Ins. Co.,* 3d Dist. No. 1-86-12, 1987 WL 13487, at *3-4 (Ohio App. June 22, 1987 (reversing trial court order granting summary judgment for insurer where insurer never clearly denied insurance claim during the one-year limitation period). Here, the facts are in dispute on this issue.

**F.  Applying a contractual limitation period here would contravene the purpose of allowing insurers to include such provisions in insurance policies.**

Ohio courts do not enforce a contractual limitation clause where: 1) a claim is honestly made; and 2) there is no specific denial of liability upon the policy. *Hounshell,* 67 Ohio St.2d at 431-33. State Farm's effort to invoke a contractual limitation period in this context contradicts the purpose for permitting such limitation periods—to protect insurers against fraudulent claims. This case does not present a situation where liability under the policy is disputed or there is potential fraud.  No investigation of the underlying claim, which may be hampered by the passage of time, is necessary. No dispute exists over coverage. No dispute exists over the extent of the property damage. Therefore, applying a contractual limitation period here would not somehow protect State Farm against fraudulent claims. The only fraud here is State Farm's affirmative hiding of its improper nonmaterial depreciation. State Farm is not seeking to use the clause as a shield against false claims but rather as a sword to pocket millions of dollars that the Sixth Circuit held was unlawfully withheld by State Farm.

13

**G. The non-waiver clause in Plaintiffs' policies does not preclude State Farm's conduct from having the force and effect the law says it shall have.**

Under Ohio law, an "insurance company cannot by a non-waiver provision in its policy … prevent its future conduct from having the force and effect which the law says it will have[.]" *Van Dyne v. Fidelity-Phenix Ins. Co.,* 17 Ohio App.2d 116 (7th Dist. 1969); *Associates Discount Corp. v. Habermann,* 8th Dist. No. 36191, 1977 WL 201433, at *4 (Ohio App. Aug. 4, 1977). State Farm waived the limitation clauses in Plaintiffs' policies by acts or declarations that unequivocally acknowledged liability under the policy. State Farm also made ACV payments without indicating that, contrary to its contractual obligations, it was denying any portion of ACV for nonmaterial depreciation. Plaintiffs were not put on any notice by State Farm that legal action should be initiated.

The case cited by State Farm on this issue, *Lewis v. State Farm Fire and Cas. Co.,* 238 F.3d 422 (6th Cir. 2000) is inapposite. Applying Kentucky law, the Sixth Circuit held that when the insureds refused to provide a detailed proof-of-loss and submit to a requested examinations under oath, a State Farm agent's suggestion they videotape their possessions did not waive State Farm's right to require a proof-of-loss and examinations under oath. *Id.* at *1, 4 n.1. Unlike in this case, the plaintiffs in *Lewis* were told that their claim would be denied, unless they complied with the carrier's demands. Knowing their claims would be denied, the plaintiffs nevertheless refused to provide the materials required under their policy and failed to obtain a written waiver of those requirements. Here, Plaintiffs had no notice of their dispute with State Farm because State Farm never indicated that it intended to breach its contract with them.

**III.** **Cranfield's limitation period was tolled because State Farm fraudulently concealed that it was withholding non-material depreciation.**

   **A. Summary of Cranfield's fraudulent concealment argument.**

The limitation period for Cranfield's claim was also tolled by State Farm's fraudulent concealment of the fact that it breached its contract with Cranfield by depreciating labor.

Fraudulent concealment requires a wrongful concealment by defendants. Here, State Farm engaged in wrongful concealment.  State Farm's Building Estimate Summary Guide stated that depreciation was the "decrease in the value of property over a period of time due to wear, tear, condition, and obsolescence." Doc. 103-3, PageID 2741. That is half of the truth. State Farm omitted the rest of the truth—that it was depreciating labor.  Ohio law is clear that State Farm's half-truth is an affirmative misrepresentation.

State Farm knew how it was calculating depreciation, because it chose the depreciation settings for the software program, Xactimate, which calculated depreciation to determine the ACV payment. But State Farm both withheld the box indicating the Xactimate depreciation settings from Plaintiffs and gave Plaintiffs a misleading definition of depreciation that did not reflect those Xactimate settings.

   **B. Misleading half-truths are affirmative misrepresentations under Ohio law.**

Under Ohio law, a "statement which, while stating the truth so far as it goes, the maker of which knows or believes to be materially misleading because of his failure to state a qualifying matter, is a fraudulent misrepresentation." *Siebert v. Lalich*, 8th Dist. No. 87272, 2006-Ohio-6274, ¶¶ 68-69; *Long v. Rice,* 11th Dist. No. 2012-A-0056, 2013-Ohio-2402, ¶ 22. A "statement containing a half-truth may be as misleading as a statement wholly false. Thus, a statement which contains only those matters which are favorable and omits all reference to those which are unfavorable, is as much a false representation as if all the facts stated were untrue." *Steiner v. Roberts,* 131 N.E.2d 238, 242-243 (Ohio App. 8th Dist. 1955) (quoting CMT, 3 Rest. of the Law

15

of Torts, Sec. 529). The "law of Ohio imposes a duty to make a full disclosure in these circumstances where such disclosure is necessary to dispel misleading impressions created by a partial revelation of the facts." *Klasa v. Rogers,* 8th Dist. No. 83374, 2004-Ohio-4490, ¶ 25, quoting *Alpern v. Purcell,* 11th Dist. No. 2863, 1981 WL 4437, *1 (Ohio  App. Feb. 2, 1981.

State Farm argues that it could not commit fraud because its half-truths are the subject of a contract dispute. That is not a correct statement of the law. State Farm cites *Blount Financial Services, Inc. v. Walter E. Heller and Co.,* 819 F.2d 151 (6th Cir. 1987) to support its position. *Blount* is inapposite.

In *Blount,* the parties were a consumer loan company and a financier. *Id.* at 151. They signed a financing agreement with an interest rate based on the rate Continental Illinois Bank charged its most creditworthy customers. *Id.* at 152. Unknown to the plaintiff, Continental was "charging a lower than advertised prime rate to some of its best borrowers[.]" *Id.* at 153. The court noted that defendant was a "separate and distinct entity from Continental Illinois" and was "therefore in no better position than [the plaintiff] to obtain information about Continental Illinois' prime rate." *Ibid.*  So, where a third party determined the interest rate, both sophisticated financial institution parties could equally determine the interest rate set by that third party.

Here, State Farm calculated depreciation, not a third party. State Farm also drafted the definition of "depreciation" provided to its insureds, which contained a half-truth limiting depreciation to wear and tear.  Unlike in *Blount,* State Farm was in a *better position* to obtain information about how depreciation was calculated. But it chose not to disclose that information to its insureds.

### C.  State Farm told Cranfield a half-truth.

State Farm wrote a Building Estimate Summary Guide defining key terms on the first page of the estimate so insureds would understand the estimate. Walton Tr. 25:14; 27:23 (Ex. 3). The

Guide gives a specific, clear definition of depreciation to the customer: depreciation is "the decrease in the value of property over a period of time due to wear, tear, condition, and obsolescence." State Farm's Building Estimate Summary Guide, Doc. 1-1, PageID 23; Walton Tr. 27:19-23.  This definition is not true where State Farm knows it is also depreciating labor, because, as the Sixth Circuit observed, wear, tear, condition, and obsolescence do not apply to labor. *Hicks v. State Farm Fire & Cas. Co.,* 751 Fed. Appx. 703, 709 (6th Cir. 2018) ("[L]abor is not subject to wear and tear."). State Farm does not explain why an insured would conclude otherwise.  Yet, State Farm knows it is taking labor depreciation.

Further, State Farm knew from its own estimating software that the definition of depreciation it provided in the Guide was not true. State Farm uses a computer software program called "Xactimate" to estimate repair costs. Johnson report, ¶ 13, Doc. 99-6, PageID 2188; Moss Tr. 20:9-12 (Ex. 5).  The Xactimate program requires the user to select the "depreciation settings." State Farm must select (switch on or off): "depreciate non-material," "depreciate removal," "depreciate overhead and profit," and "depreciate sales tax." Johnson report, ¶¶ 21-22, Doc. 99-6, PageID 2189-90. "Non-material depreciation" includes labor depreciation, market condition depreciation, and equipment depreciation. Moss Tr. 61:11-16. The dollar value of the depreciation taken (and thus the ACV paid to the customer) varies significantly depending on the settings. The depreciation applied to a floor repair could range from $1,811.70 to $3,465 by changing just two of the Xactimate settings. Johnson report, ¶ 24, Doc. 99-6, PageID 2190-92.  But those settings were withheld from State Farm insureds.  The settings box is clear and simple, but not included on the customer's papers.  *See*, Cranfield Estimate, Doc. 1-1, PageID 22.  This is not something the customers could know. The settings vary from state to state. Moss Tr. 34:1-15. And State Farm's own managers do not know the depreciation settings for Ohio.  *See*, e.g., McKitterick Tr. 16:22-17:23; 37:7-11 (Ex. 2). Alice Sandvick, a State Farm adjuster with 20 years of experience, did not

even know the meaning of "non-material depreciation," testifying that State Farm does not use the term "non-material depreciation."  Sandvick Tr. 37:14-16; 37:23-38:1-2 (Ex. 1).

State Farm is thus moving for summary judgment on the premise that Ohio insureds should have known the Xactimate settings for Ohio (something State Farm's Ohio managers do not know), should have known that the setting for "non-material depreciation" includes labor depreciation (something State Farm's Ohio adjusters do not know), and should have gleaned all that information from the specific definition of "depreciation" contained in State Farm's Building Estimate Summary Guide, which the Sixth Circuit has held does NOT include labor.

Plaintiffs' position is that insureds do not have a better grasp of how State Farm calculates depreciation than State Farm's own employees and could not know how Xactimate was calculating depreciation when State Farm's own managers did not.

State Farm's decision to take these deceptive and concealing actions violates Ohio law: the "'law of Ohio imposes a duty to make a full disclosure in these circumstances where such disclosure is necessary to dispel misleading impressions created by a partial revelation of the facts.'" *Klasa,* 2004-Ohio-4490 at ¶ 25.  But State Farm chose not to.

State Farm does not explain why it did not conform its definition of depreciation provided to insureds, to the Xactimate settings it selected for Ohio. It could have done so, because its revised policy form now does exactly that, stating that "all components of this estimated cost including, but not limited to: a. materials, including any tax; b. labor, including any tax; and c. overhead and profit; are subject to depreciation." Doc. 116, PageID 4604 at ¶ 40. State Farm's affirmative choice not to be honest with Cranfield and to instead falsely tell Cranfield a half-truth by omitting labor from its definition of depreciation is, under Ohio law, a fraudulent misrepresentation. *Siebert*, 2006-Ohio-6274, at ¶¶ 68-69.

**D. State Farm's argument that Cranfield should have understood his estimate better than the State Farm adjuster who prepared it is implausible.**

Alice Sandvick was "involved in handling the structural damage claim submitted by Charles Cranfield." Sandvick Dec. ¶ 4, Doc. 124-2, PageID 5016. She "prepared an initial repair estimate for the claim." *Id.* at ¶ 8, PageID 5017.

State Farm argues that Sandvick's estimate disclosed to Cranfield that State Farm was depreciating labor and other non-materials. But Sandvick did not even know the meanings of the terms. Asked "[w]hat is labor depreciation?" Sandvick testified, "I don't – I don't even know." Sandvick Tr. 37:14-16 (Ex. 1). Asked "what is nonmaterial depreciation?" Sandvick testified "that's not a term that State Farm normally uses." *Id.* at 37:23-38:2. Yet, State Farm's defense is premised on Cranfield knowing that non-material depreciation was deducted from his ACV payment, when the State Farm adjuster that handled his claim testified that State Farm does not even use that term.

**E. State's Farm has not established that Cranfield's public adjuster knew State Farm was depreciating labor.**

State Farm argues that Cranfield's public adjuster, Mark Jacoby, knew that State Farm was depreciating labor and that his knowledge is imputed to Cranfield. The record is the opposite.

Jacoby's involvement in preparing an estimate was to "scope a loss." Jacoby Tr. 102:2-3. (Deposition excerpts attached as Ex. 7). Jacoby's estimate outlined the "replacement cost value of the damage that was incurred." *Id.* at 135:22-25. Depreciation is not used in calculating replacement cost value, which was Jacoby's task. Depreciation is used to calculate ACV, which Jacoby did not do. Jacoby never calculated an ACV for Cranfield. Jacoby Tr. 136:11-13. At the time he worked for Cranfield, Jacoby "did not assess depreciation of labor." *Id.* at 156:24-25. Nor did he consider depreciation generally: "I didn't consider what was included in depreciation at the time." *Id.* at 118:20-119:6.

State Farm also claims Jacoby must have known labor was depreciated because line items 'implicitly' showed labor, and Jacoby admitted some RCV line items included both materials and labor (such as painting a wall). But just because a line item includes both materials and labor doesn't mean that depreciation was applied to the labor component of the line item. There is an additional step to determine this—knowing what Xactimate is doing with the RCV figure and its components. An RCV figure of $20.20 material and labor may be 90% labor and 10% material, or the opposite, or something else. To get 8% overall depreciation, does the system proceed straight line where both labor and materials are factored at 8%? Or does it use a blended formula, where different percentages are applied to each? Applying 0% to the labor component and 80% to the materials gives $1.62 in 'depreciation'; or, you also reach the same $1.62 in depreciation if you apply 8% to both labor and materials. Which is it? Even State Farm management did not know how that works. Moss Tr. 86:14 – 88:2 (Xactimate uses some 'formula' but "that is the extent of my knowledge"); O'Toole Tr. 78:6-13 (What is Xactimate doing, what formula is it using to get the depreciation? "Again, I don't know what the Xactimate platform uses in order to do that.") Therefore, to determine what was being depreciated, rather than asking to see estimates, State Farm's manager Lisa O'Toole repeatedly asked to see the Xactimate settings box to confirm what was being depreciated. O'Toole Tr. 29:7-15, 30:1-11 (Ex. 5). The factfinder could easily reject State Farm's arguments and find that knowing that an RCV items includes both labor and materials does not show whether the labor aspect was depreciated.

**F.  The evidence in the record establishes a genuine issue of material fact as to whether State Farm fraudulently concealed labor depreciation.**

The elements of fraudulent concealment are "(1) wrongful concealment of their actions by defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts."

*Carrier Corp. v. Outokumpu Oyj,* 673 F.3d 430, 446 (6th Cir. 2012) (quoting *Dayco Corp. v. Goodyear Tire & Rubber Co.,* 523 F.2d 389, 394 (6th Cir. 1975)).

First, State Farm wrongfully concealed that it was depreciating labor by making an affirmative misrepresentation—that the depreciation being taken was for property wear and tear. Second, although its estimating program shows State Farm's employees the Xactimate box that reveals whether labor is being depreciated, State Farm affirmatively chose to withhold this information on the materials sent to its customers. By doing so, State Farm concealed the very information its own employees testified they needed to determine what was being depreciated. O'Toole Tr. 29-30 (Ex. 6).

Cranfield exercised reasonable diligence because he "receive[d] no hint of his claim, [saw] no need to actively inquire as to whether [State Farm] ha[d] wronged him, and timely file[d] a claim after facts emerge[d] disclosing his cause of action." *In re Polyurethane Foam Antitrust Litig.,* 799 F. Supp.2d 777, 802 (N.D. Ohio July 19, 2011). Cranfield had no idea that State Farm was depreciating labor. And no customer would know how State Farm was calculating depreciation when State Farm's managers could not answer the same question and did not even know the meaning of non-material depreciation.

## G. *Jenkins* is inapposite.

State Farm cites an Illinois case, *Jenkins v. State Farm Fire and Casualty Company,* 2017 IL App (1st) 160612-U, for the proposition that its conduct did not constitute fraudulent concealment. *Jenkins* is inapposite.

The *Jenkins* court noted that the plaintiff did "not allege which representations in the estimate are false." *Id.* at ¶ 29. Here, the opposite is true. Cranfield has identified the false representation in the estimate Guide—that depreciation that is subtracted is for "property wear and tear." The *Jenkins* court did not address this fraudulent half-truth. Nor did the *Jenkins* court discuss

or distinguish the body of law indicating this false statement is an affirmative misrepresentation under Ohio law.

Further, the *Jenkins* court did not have testimony from State Farm employees indicating that they did not know how State Farm was calculating depreciation. Nor did the Illinois court have testimony that State Farm had withheld from its customers the box generated by the Xactimate software disclosing the depreciation settings used by State Farm to diminish its ACV payments.  The record evidence in *Jenkins* is nothing like this case.

**IV.    Northpointe's claim is within the limitation period because Northpointe is a member of the class identified in the original complaint.**

**A.   Northpointe falls within the original class definition because State Farm never paid all the depreciation withheld from Northpointe.**

Cranfield, at paragraph 39 of his original complaint filed April 22, 2016, asked the trial court to certify the following class: "All persons and entities that received 'actual cash value' payments, directly or indirectly, from State Farm for loss or damage to a dwelling or other structure located in the State of Ohio … where the cost of labor was depreciated." Complaint, Doc. 1-1, PageID 19. On June 6, 2016, State Farm paid Northpointe an ACV of $173,957.22.  State Farm had ascertained the amount of Northpointe's ACV payment as of that date. Waller Decl. at ¶ 22, State Farm's Ex. 7, Doc. 130-9, PageID 5471-42, citing Ex. F, PageID 5868. (Waller is a State Farm representative who dealt with the Northpointe transaction).  Northpointe's ACV payment was calculated after depreciation was taken. Waller Decl. at ¶ 17, PageID 5741. State Farm admits the depreciation it withheld included non-material components, so State Farm did not pay Northpointe the full amount due as of June 6, 2016.[2] State Farm's Brief, Doc. 124-2, PageID 4862.

---

[2] Once an insured loss occurs, the insurer is "a debtor to the person entitled to the proceeds." 4 COUCH ON INS. § 61:2. *Insurer's Status as a Debtor* (Third Ed. June 2021 update).

Therefore, as of June 6, 2016, Northpointe was a class member who received an ACV payment from State Farm for damage to an Ohio dwelling where cost of labor was depreciated.

### B.  State Farms' notice of removal included Northpointe's claim.

State Farm, in its notice of removal, confirmed that Northpointe was a class member. In determining potential damages for purposes of removal, State Farm calculated the "amount of depreciation attributable to the labor component of estimate repair costs in respect to estimates State Farm prepared for structural damages to Ohio structures[.]" Notice of Removal, ¶ 24, Doc. 1, PageID 7. Those were the claims State Farm asserted would be in the class, and that definition includes Northpointe.

State Farm's damages calculation excluded from the class any insureds who received "full replacement costs for claims 'up front[.]'" *Id.* at ¶ 25. State Farm told this Court: "So as not to overstate the potential amount in controversy, State Farm accordingly attempted to identify claims that were more likely to have been paid with replacement cost benefits up front in whole or in part, and to remove the estimate data associated with those claims for purposes of its amount in controversy allegations[.]" *Ibid.*  And Northpointe is not within that exclusion.  Northpointe did not receive an "up front" payment of replacement cost. Instead, State Farm paid Northpointe an ACV payment. State Farm's Brief, p. 9, Doc. 124-2, PageID 4845. In calculating the amount in controversy, State Farm did not remove from the class insureds like Northpointe that received an ACV payment and **later** received a replacement cost payment. It *only* removed those insureds who received, **up front**, "a blend of replacement cost payments and actual cash value payments." Notice of Removal at ¶ 25, Doc. 1, PageID 7.

State Farm cannot justify federal jurisdiction by including claims identical to Northpointe's for purposes of removal, but in the same breath insist that Northpointe is not a class member.

**C.  Northpointe was not paid in full.**

The original proposed class definition excludes persons that "received payment from State Farm in the full amount[.]" Complaint, ¶ 39, Doc. 1-1, PageID 19. Northpointe was never paid in full. Northpointe's ACV payment was partial, because it was improperly reduced by labor depreciation, which the Sixth Circuit held to breach the insurance contract. Northpointe was entitled to interest, as a matter of law, on the amount by which its original ACV payment was improperly reduced. *Prepakt Concrete Co. v. Koski Constr. Co.,* 60 Ohio App.3d 28, 30 (8th Dist. 1989). Under Ohio law interest immediately accrued on the unpaid amount. *Id.* at 30 (interest accrues at the legal rate on an unpaid liquidated amount); *Bumpers, Inc. v. L & L Packaging and Plating, Inc.*, 6th Dist. No. L-95-051, 1995 WL 643129 at *3 (Ohio App. Nov. 3, 1995) (interest accrues on the unpaid amount from the date ascertainable and unpaid).

On July 25, 2016, State Farm paid the second installment to Northpointe in the amount of $278,637.39, the amount of the recoverable depreciation. Waller Decl. at ¶ 25. The problem for State Farm is that, under Ohio law, interest had already accrued.  The second installment under Ohio law is first applied to cover that interest due.  But that leaves part of the principal unpaid. *Prepakt Concrete*, 60 Ohio App.3d at 30.

On June 6, Northpointe's ACV payment was due, but State Farm underpaid it by $136,863.21, in breach of the written insurance policy.  Under Ohio law, R.C. 1343.03(A) interest automatically accrued on the unpaid ACV of $136,863.21 (the amount improperly taken as non-material depreciation). The total interest that accrued at the applicable Ohio legal rate (3%) was $550.19.[3]  The total due as of July 23, 2016, for the RCV and for the already accrued interest of $550.19, was: $ 278,637.39 (RCV) + $550.19 (accrued interest) = $ 279,187.58. On July 23, State Farm made its next payment, but only sent $278,637.39.  Ohio law applied that July 23 payment

---

[3]  The funds were withheld for 49 days, so the interest equals: (($136,863.21 x .03)/365) x 49).

first to the interest due, and then to principal. After taking $550.19 of that payment for the accrued interest that left $278,637.39 toward the principal.  But $278,637.39 was $550.19 short on the principal, which was $279,187.58.  Under Ohio law, $550.19 of principal remains due to this day, and has itself been accruing interest since July 23, 2016.

Because Northpointe has not been paid in full, any 'exclusion' claimed by State Farm for entities paid in full does not apply. This is consistent with State Farm's decision in its notice of removal to calculate the amount in controversy by ***including*** claims like Northpointe's.

### D. Northpointe's limitations period was tolled by the filing of the original class action complaint.

Ohio law governs whether the limitation period is tolled. *Wyser-Pratte Mgt. Co. v. Telxon Corp.,* 413 F.3d 553, 557 (6th Cir. 2005). And, under Ohio law, "the filing of a class action, whether in Ohio or the federal court system, tolls the statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class." *Vaccariello v. Smith & Nephew Richards, Inc.,* 94 Ohio St.3d 380, 382-383 (2002). As discussed above, Northpointe is a member of the class as originally defined and is not subject to the exclusion for fully paid claims.

### V. Northpointe has a claim for prejudgment interest.

The Sixth Circuit has held that State Farm's insureds "are eligible for damages in the form of prejudgment interest." *Hicks v. State Farm Fire & Cas. Co.,* 965 F.3d 452, 463 (2020); *see, also, Stuart v. State Farm Fire & Casualty Co.,* 910 F.3d 371, 377 (8th Cir. 2018) ("State Farm argues that insureds who went on to obtain RCV payments cannot show damages because they ultimately received a payment that included no labor depreciation. The district court concluded that this defense could be resolved using common proof[.]")

And Ohio requires payment of interest, by statute, under R.C. 1343.03.  Under division (A), interest applies to any instrument in writing (here, the policy), and accrual of the interest does

not depend on any demand, or upon filing of suit, or upon entry of judgment. Interest accrues when the money under the agreement becomes due: "when **money becomes due and payable upon** any bond, bill, note, or other **instrument** of writing, … **the creditor is entitled to interest** at the rate per annum determined pursuant to section 5703.47 of the Revised Code, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract." (Emphasis added). Thus, by statute, failure to timely pay money causes the immediate accrual of interest. That obligation stands equal to the principal, so payment in full of principal, without including the interest, is not payment in full. The obligation remains.

State Farm's argument also contradicts Ohio law that a partial payment of an insufficient amount breaches a contract, and interest accrues on that deficient amount until it is paid. In *Griffin Contracting and Restoration v. McIntyre*, 12th Dist. No. CA2017-11-058, 2018-Ohio-3121, at ¶¶ 40-41, the defendant homeowner breached its contract with plaintiff contractor by failing to pay the full amount owed under contract, so owed interest on the deficiency. Also, in *Reineck v. Westfield Ins. Co.,* 6th Dist. No. H-97-039, 1998 WL 568064, at *2 (Ohio App. Aug. 28, 1998), the defendant breached an insurance policy by paying an insufficient amount, and the appellate court affirmed the award of prejudgment interest, agreeing that plaintiffs were "entitled to prejudgment interest against Westfield National Insurance Company, pursuant to R.C. 1343.03(A), from the date that any applicable liability insurance coverage was exhausted, i.e., from the date the money owed pursuant to appellants' underinsured motorist coverage became due and payable."

Here, State Farm owed full ACV on June 6, 2016, in the amount of $310,820.43, but paid $136,863.21 less than owed, thereby breaching the policy contract.[4]  Interest immediately accrued on that $136,863.21 deficiency under R.C. 1343.03(A) until paid.  Under Ohio law, State Farm's subsequent payment on July 25, 2016 was applied first to that interest, which had accrued in the amount of $550.19.  That left the principal underpaid and deficient in that amount of $550.19, and State Farm continues to owe that principal to this day.

State Farm does not dispute that, under the Sixth Circuit's ruling, when State Farm made the ACV payments to its policyholders, it owed the full ACV payment, ***without depreciating labor and other non-materials.***  State Farm does not dispute it failed to make that full payment.  Its ACV payment was short the amount of improperly deducted non-material depreciation.  For Northpointe, the full ACV payment due under the contract was improperly reduced by State Farm (for non-material and labor depreciation) in the amount of $136,863.21. State Farm could have avoided its obligation for interest, under Ohio statute, by paying that amount when it made its ACV payment on June 6, 2016.  But it did not.  Its ACV payment was, it now admits, short that amount.  Therefore, interest began accruing on that amount under Ohio law on June 6, 2016. When State Farm paid Northpoint the second installment due under the contract, the RCV payment, it failed to include the already accrued interest.

State Farm insists this pure interest is not owed. It insists that when it paid the principal, all claims for the deficient amount in interest were waived. But in Ohio, once interest accrues under R.C. 1343.03(A), it stands in along with the principal owed. Therefore, when payment is made, it is first applied to the accrued interest, leaving a portion of the principal unpaid.  *Bumpers,* 1995 WL 643129 and *Prepakt,* 60 Ohio App.3d 28.

---

[4] *See* declaration of James A. DeRoche attached as Ex. 8, authenticating the Xactimate and payment data produced by State Farm for the Northpointe claim, verifying all the numbers set forth in this brief.

In *Prepakt* the court specifically rejected State Farm's argument that State Farm's later payment of (here) the improperly withheld depreciation relieved State Farm of its obligation to pay interest on the shortfall in its ACV payment: "Defendant argues its payment of the full principal amount owed constitutes a bar and a waiver of any claim to recovery of interest. Defendant's argument is unpersuasive." *Prepakt,* 60 Ohio App.3d at 29. Citing R.C. 1343.03(A), the court noted that interest accrues right when the debt becomes due, and failure to pay that interest simply added that amount to the debtor's obligation. *Id* at 29-30. Thus, when State Farm made the next payment, its application was "first made to interest and then once interest is paid the remaining portion of the payment[] is applied to principal." *Id.* at 30. The payment was therefore not in full because it did not include the accrued interest. *Id.*

The *Bumpers* court likewise held that statutory interest accrues once the debt is due, but not paid. The court explained that under R.C. 1343.03(A), prejudgment interest accrues when the amount is "due and payable." *Bumpers,* 1995 WL 643129 at *3. Once prejudgment interest accrues, it becomes a part of the obligation. The court thus noted that "mere denial that a party is liable for a debt does not render it undeterminable for purposes of adjudicating a claim for prejudgment interest." *Id.* So, State Farm's argument that it did not realize that its ACV payment to Northpointe was inadequate due to improper depreciation changes nothing.

The *Bumpers* court also noted that the acceptance of late payments of the principal amount owed does not waive the right to statutory interest: "where a debtor paid a debt which had become due and payable in installments and no rate of interest was agreed upon by the parties in advance, 1) the creditor did not waive his right to collect interest at the statutory rate by accepting installment payments; and 2) when such payments are made they may properly be applied first to interest and then to principal." *Id.*

In sum, State Farm's payments to Northpointe were two installments: first, an ACV payment, then an RCV payment.  State Farm breached the contract when it paid, for ACV, less than due.  When State Farm paid less than due for ACV, that deficiency accrued interest.  When State Farm made the RCV payment, it did not include that already accrued interest.  State Farm was deficient, and the deficiency is not waived. *Prepakt,* 60 Ohio App.3d at 29 ("Defendant argues its payment of the full principal amount owed constitutes a bar and a waiver of any claim to recovery of interest.  Defendant's argument is unpersuasive.").

Finally, State Farm argues that no money was ever due since no proof of loss was filed.  Ohio law does not require a proof of loss.  Rather, even where the policy calls for one, the carrier must provide to the insured the document required to be completed and specific instructions on how to complete it, if they seek to condition payment on providing the document. *See* O.A.C. 3901-1-54: "If the form and execution of a proof of loss is material to an insurer, the insurer shall immediately provide the claimant with the specific documents and specific instructions so the claimant can submit the claim."  State Farm provides no evidence that it met that requirement.

Under Ohio law, proof of loss is only relevant when demanded by the carrier (after providing the customer the specific form and instructions on completing it). Since proof of loss deals with allowing the carrier to confirm coverage for the claim, it does not apply to any claim where the carrier already confirmed coverage, including by making payment on the claim.  *Dehart v. Aetna Life Insurance Company*, 8th Dist. No. 42932, 1982 WL 2473, at *5 (Ohio App. July 15, 1992) ("[P]art payment of a policy claim or a promise to pay such claim has been found to be a waiver of the requirement concerning proof of loss. Similarly, payment for a claim or promise or even tender of payment by an insurance company under an untimely filed proof of loss has been held to be a waiver of the policy provisions regarding timely notice of proof."). Since the proposed Class here only includes policyholders whose claims State Farm paid, and payment constitutes

waiver of any proof of loss requirement, State Farm's proof of loss argument in this context is nonsense.

## VI.     Northpointe's claim is not barred by accord and satisfaction.

In accord and satisfaction, "effective consent cannot be given and a meeting of the minds cannot be achieved unless the parties have knowledge of facts which are material to the agreement." *Maine v. Leonard Truck & Trailer, Inc.,* 7th Dist. No. 13 MA 156, 2014-Ohio-5722, ¶ 23. Here, Northpointe did not know that State Farm improperly depreciated labor in calculating ACV, so did not know the facts material to the putative accord. And, if there is a dispute over what Northpointe knew when it accepted payments from State Farm, the issue of a putative accord and satisfaction is not properly resolved on summary judgment. *Warner Storage, Inc. v. Systemation, Inc.,* 64 Ohio App.3d 1, 4 (8th Dist. 1989) ("[w]here the negotiations surrounding an alleged accord and satisfaction permit conflicting deductions, they are to be resolved by the trier of fact."). Therefore, summary judgment on the defense of accord and satisfaction is not proper here.

## VII.     Conclusion.

State Farm's arguments consistently portray facts as true when its own management testified otherwise, and the record evidence properly construed in favor of Plaintiffs raises factual disputes for trial.  Summary judgment does not lie when material facts are in dispute or differing reasonable inferences may be drawn from the facts. Summary judgment is not appropriate on this record. The Court should deny State Farm's motion.

Respectfully submitted,

*/s/Patrick J. Perotti*

Patrick J. Perotti, Esq. (#0005481)
Dworken & Bernstein Co., L.P.A.
60 South Park Place
Painesville, Ohio 44077
Phone: (440) 352-3391
Fax:   (440) 352-3469
Email:  pperotti@dworkenlaw.com

James A. DeRoche (#0055613)
GARSON JOHNSON LLC
2900 Detroit Avenue
Van Roy Building, 2nd Floor
Cleveland, OH 44113
Phone:  (216) 696-9330
Fax:  (216) 696-8558
Email: jderoche@garson.com

R. Eric Kennedy (#0006174)
Daniel P. Goetz (#0065549)
Weisman, Kennedy & Berris Co., L.P.A.
2900 Detroit Avenue
Van Roy Building 2nd Floor
Cleveland, OH 44113
Phone:  (216)781-1111
Fax:  (216)781-6747
Email:  ekennedy@weismanlaw.com
        dgoetz@weismanlaw.com

Erik D. Peterson (PHV)
MEHR, FAIRBANKS & PETERSON
TRIAL LAWYERS, PLLC
201 West Short Street, Suite 800
Lexington, KY 40507
Telephone:  859-225-3731
Facsimile:  859-225-3830
Email:  edp@austinmehr.com

Stephen G. Whetstone (#0088666)
WHETSTONE LEGAL, LLC
P.O. Box 6
2 N. Main Street, Unit 2
Thornville, Ohio 43076
Telephone: 740.974.7730
Facsimile:  614.829.307
Email: steve@whetstonelegal.com

*Counsel for Plaintiffs and the Putative Class*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(f), this brief does not exceed thirty (30) pages in this action designated as complex litigation.


## **CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants today (July 30, 2021)

*/s/Patrick J. Perotti*
Patrick J. Perotti, Esq. (#0005481)
Dworken & Bernstein Co., L.P.A.
Email:  pperotti@dworkenlaw.com

*One of the Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION AT CLEVELAND

| | |
|---|---|
| CHARLES CRANFIELD, etc., et al. | CASE NO. 1:16-CV-01273 |
| Plaintiffs, | JUDGE CHRISTOPHER A. BOYKO |
| -vs- | |
| STATE FARM FIRE & CASUALTY COMPANY, | **PLAINTIFFS' EXHIBITS IN SUPPORT OF THE BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| Defendant. | |

Exhibit 1 - Sandvick Tr. excerpts

Exhibit 2 - McKitterick Tr. excerpts

Exhibit 3 - Walton Tr. excerpts

Exhibit 4 - Building Estimate Summary Guide

Exhibit 5 - Moss Tr. excerpts

Exhibit 6 - O'Toole Tr. excerpts, Arnold v. State Farm

Exhibit 7 - Jacoby Tr. excerpts

Exhibit 8 - DeRoche Affidavit RE Northpointe Data