# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

CHARLES CRANFIELD, et al.,     )
                                   )
             Plaintiffs,     )     No. 1:16-cv-01273-CAB
     v.                        )
                                   )     Hon. Christopher A. Boyko

STATE FARM FIRE AND CASUALTY     )
COMPANY,                   )
                                   )
             Defendant.     )
                                   )
                                   )

## DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S
## REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Karl A. Bekeny (OH #0075332)
Benjamin C. Sassé (OH #0072856)
Elisabeth C. Arko (OH #0095895)
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113-7213
Telephone:  216.592.5000
karl.bekeny@tuckerellis.com
benjamin.sasse@tuckerellis.com
elisabeth.arko@tuckerellis.com

Joseph A. Cancila, Jr. (IL #6193252)
Jacob L. Kahn (IL #6296867) (*pro hac vice*)
Brian Neff (NY # 4304648) (*pro hac vice*)
Rachel F. Sifuentes (IL #6304016) (*pro hac vice*)
Allison N. Siebeneck (IL #6313603)
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison St., Suite 2900
Chicago, IL 60602
Telephone:  312.471.8700
jcancila@rshc-law.com
jkahn@rshc-law.com
bneff@rshc-law.com
rsifuentes@rshc-law.com
asiebeneck@rshc-law.com

*Attorneys for Defendant State Farm Fire and Casualty Company*

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

FACTUAL DISCUSSION................................................................................................. 1

      A.      There is No Genuine Dispute of Material Fact on Cranfield's Claim. ................. 2

      B.      There is No Genuine Dispute of Material Fact on Northpointe's Claim............... 4

ARGUMENT ................................................................................................................... 5

I.      Cranfield Fails to Establish a Genuine Dispute of Material Fact as to State Farm's Supposed Waiver of the Suit Limitations Provision in His Policy.................................... 5

      A.      No Waiver Occurred Under the Waiver Provision in Cranfield's Policy.............. 6

      B.      The Undisputed Material Facts Defeat Cranfield's Waiver Argument. ................ 8

      C.      Cranfield's Purported State of Mind is Irrelevant to the Issue of Waiver. .......... 10

II.     Cranfield Fails to Establish a Genuine Dispute of Material Fact as to State Farm's Alleged Fraudulent Concealment of Its Depreciation Practices. ..................................... 11

      A.      Fraudulent Concealment Cannot Be Founded Upon the Parties' Legitimate Dispute Over the Meaning of Ambiguous Language. ......................................... 12

      B.      Cranfield's Fraudulent Concealment Arguments are Factually Unsupported...... 14

              1.      Cranfield Fails to Identify Any Actionable Misrepresentation or Concealment. ..................................................................................... 15

              2.      Cranfield Fails to Create a Genuine Dispute of Material Fact Regarding His Supposed Actual, Reasonable Reliance.......................... 18

III.    Northpointe Fails to Establish a Genuine Dispute of Material Fact Sufficient to Avoid Summary Judgment on Any of the Independent Grounds Identified by State Farm..................................................................................................................... 21

      A.      Northpointe's Claim is Untimely as a Matter of Law............................................ 22

              1.      The Undisputed Material Facts Defeat Northpointe's Waiver Argument. ........................................................................................... 22

              2.      The Undisputed Material Facts Defeat Northpointe's Tolling Argument. ........................................................................................... 23

      B.      Northpointe Has No Viable Claim for Breach of Contract as a Matter of Law. .................................................................................................................... 25

1.    The Undisputed Material Facts Defeat Northpointe's Claim for
      Prejudgment Interest. ............................................................... 25

2.    The Undisputed Material Facts Refute Northpointe's "Installment
      Payment" Theory. ...................................................................... 27

3.    The Undisputed Material Facts Establish Accord and Satisfaction,
      Thereby Defeating Northpointe's Claim. ................................. 30

CONCLUSION.................................................................................................. 30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*American Pipe & Construction Co. v. Utah*,
  414 U.S. 538 (1974)........................................................................................23, 24, 25

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)........................................................................................................2

*Assocs. Disc. Corp. v. Habermann*,
  No. 36191, 1977 WL 201433 (Ohio Ct. App. Aug. 4, 1977) ....................................7

*Bailey v. State Farm Fire & Cas. Co.*,
  No. CIV.A. 14-53-HRW, 2015 WL 1401640 (E.D. Ky. Mar. 25, 2015) ...............13

*Bethel v. Jenkins*,
  988 F.3d 931 (6th Cir. 2021) ....................................................................2, 17, 18

*Blount Financial Services, Inc. v. Walter E. Heller & Co.*,
  819 F.2d 151 (6th Cir. 1987) ..................................................................................13, 14

*Borden, Inc. v. Milk Mktg., Inc.*,
  No. 81AP-435, 1982 WL 4274 (Ohio Ct. App. July 1, 1982)................................14

*Branch v. Farmers Ins. Co.*,
  311 F.3d 1241 (10th Cir. 2002) ...............................................................................14

*Brewer v. Wayne Mutual Insurance.*
  No. 7-92-6, 1992 WL 393324 (Ohio Ct. App. Dec. 29, 1992)................................9

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)........................................................................................................2

*Cranfield v. State Farm Fire & Cas. Co.*,
  798 F. App'x 929 (6th Cir. 2020) ...............................................................4, 10, 13

*Dehart v. Aetna Life Insurance Company*,
  8th Dist. No. 42932, 1982 WL 2473 (Ohio Ct. App. July 15, 1982)......................28

*Doe v. Archdiocese of Cincinnati*,
  849 N.E.2d 268 (Ohio 2006)...............................................................4, 14, 20, 21

*Dominish v. Nationwide Ins. Co.*,
  953 N.E.2d 820 (Ohio 2011)......................................................................................6

*Evanoff v. The Standard Fire Ins. Co.*,
  No. 1:07CV00631, 2007 WL 2407069 (N.D. Ohio Aug. 21, 2007) .....................................28

*Friendly Farms v. Reliance Ins. Co.*,
  79 F.3d 541 (6th Cir. 1996) ..........................................................................................10

*Gawne v. Casanova*,
  90 N.E.2d 444 (Ohio Ct. App. 1948)..............................................................................30

*Gourmet Café v. Travelers Indem. Co.*,
  No. 5:01CV2658, 2003 WL 27381210 (N.D. Ohio June 10, 2003)...................................28

*Grange Mutual Casualty Company v. Fodor*,
  487 N.E.2d 571 (Ohio Ct. App. Dec. 31, 1984) .................................................................9

*Graves v. Am. Fam. Mut. Ins. Co.*,
  686 F. App'x 536 (10th Cir. 2017) ..........................................................................12, 13

*Hicks v. State Farm Fire & Cas, Co.*,
  965 F.3d 452 (2020)........................................................................................................26

*Hicks v. State Farm Fire & Cas. Co.*,
  751 F. App'x 703 (6th Cir. 2018) .............................................................................13, 26

*Hoeppner v. Jess Howard Elec. Co.*,
  780 N.E.2d 290 (Ohio Ct. App. 2002)....................................................................14, 18, 19

*Hounshell v. American States Ins. Co.*,
  424 N.E.2d 311 (Ohio 1981)..........................................................................8, 23, 24

*Jenkins v. State Farm Fire & Cas. Co.*,
  2017 IL App (1st) 160612-U ........................................................................................17, 18

*Klasa v. Rogers*,
  8th Dist. No. 83374, 2004-Ohio-4490 ...........................................................................17

*Kuntz Drug Stores, Inc. v. Ohio Dep't of Pub. Welfare*,
  No. 82AP-23, 1982 WL 4316 (Ohio Ct. App. Aug. 3, 1982)................................................30

*Long v. Rice*,
  992 N.E.2d 1220 (Ohio Ct. App. 2013)............................................................................17

*Midwest Allergy Associates, Inc. v. The Cincinnati Ins. Co.*,
  No. 82AP-970, 1983 WL 3568 (Ohio Ct. App. June 16, 1983) .............................................6

*Monreal Funeral Home, Inc. v. Farmers Ins. Co.*,
  937 N.E.2d 159 (Ohio Ct. App. 2010)................................................................................6

*N.A. Water Systems, LLC v. Allianz Underwriters Ins. Co.*,
No. 3:04CV7481, 2005 WL 1105069 (N.D. Ohio May 10, 2005) ..........................................9

*Navarro v. Procter & Gamble Co.*,
515 F. Supp. 3d 718 (S.D. Ohio 2021) ..................................................................................22

*Notredan, L.L.C. v. Old Republic Exch. Facilitator Co.*,
531 F. App'x 567 (6th Cir. 2013) .........................................................................................22

*Perry v. Allstate Indem. Co.*,
953 F.3d 417 (6th Cir. 2020) ................................................................................................13

*Prepakt Concrete Co. v. Koski Constr. Co.*,
573 N.E.2d 209 (Ohio Ct. App. 1989) ..................................................................................29

*Rak v. Safeco Ins. Co. of Am.*,
8th Dist. No. 84318, 2004-Ohio-6284 .....................................................................................9

*Randleman v. Fid. Nat'l Title Ins. Co.*,
465 F. Supp. 2d 812 (N.D. Ohio 2006) (Carr, C.J.) ........................................................16, 17

*Royal Elec. Constr. Corp. v. Ohio State Univ.*,
652 N.E.2d 687 (Ohio 1995) .................................................................................................26

*Shipp v. Farmers Ins. Exch.*,
No. 4:14-cv-04003, 2015 WL 2227931 (W.D. Ark. May 12, 2015) ......................................17

*Siebert v. Lalich*,
8th Dist. No. 87282, 2006-Ohio-6274 ...................................................................................17

*Steiner v. Roberts*,
131 N.E.2d 238 (Ohio Ct. App. 1955) ..................................................................................17

*Van Dyne v. Fidelity-Phenix Ins. Co.*,
244 N.E.2d 752 (Ohio Ct. App. 1969) .....................................................................................7

*Walls v. Kemper Ins. Companies*,
No. 81AP-201, 1981 WL 3580 (Ohio Ct. App. Nov. 5, 1981) ................................................6

*Wasserman v. The Home Corp.*,
8th Dist. No. 90915, 2008-Ohio-5477 ...................................................................................26

*White Co. v. Canton Transp. Co.*,
2 N.E.2d 501 (Ohio 1936) .......................................................................................................6

*Wilcox v. State Farm Fire & Cas. Co.*,
Civ. No. 14-2798, 2015 WL 927093 (D. Minn. Jan. 16, 2015) .............................................18

*Willits v. Peabody Coal Co.*,
No. 98-5458, 1999 WL 701916 (6th Cir. Sept. 1, 1999) ........................................14

*Zemcik v. LaPine Truck Sales & Equip. Co.*,
706 N.E.2d 860 (Ohio Ct. App. 1998) ..................................................................20

**Rules and Statutes**

Fed. R. Civ. P. 56 ................................................................................1, 2, 5, 11, 20, 30

Ohio Admin. Code 3901-1-54(G)(1) ...........................................................................27

R.C. 1343.03 ...............................................................................................................26

**Other Authorities**

Black's Law Dictionary (10th ed. 2014) .......................................................................12

Black's Law Dictionary (11th ed. 2019) .......................................................................11

## INTRODUCTION

The Opposition filed by Plaintiffs Charles Cranfield ("Cranfield") and The Condominiums at Northpointe ("Northpointe") (collectively, "Plaintiffs") confirms that State Farm is entitled to judgment as a matter of law on both Plaintiffs' individual claims.[1] While Plaintiffs declare at the outset of the Opposition that State Farm necessarily breached its contracts with them by applying labor depreciation when calculating their ACV payments, Opp'n. 1, as this Court recently held, determining whether State Farm breached any insured's policy requires an individualized evaluation of the facts of each insured's claim. *See* Doc. 135 at 10. Here, the undisputed material facts demonstrate that Cranfield's claim fails as a matter of law because it is barred by the suit limitations provision in his policy and that Northpointe's claim fails as a matter of law because (i) it is barred by the suit limitations provision in Northpointe's policy; (ii) State Farm's full payment of Northpointe's loss precludes any finding of breach; and (iii) the doctrine of accord and satisfaction precludes any claim for damages by Northpointe relating to its loss.

Remarkably, Plaintiffs fail in the Opposition to dispute the vast majority of facts set forth in State Farm's Motion. And for the facts they do take issue with, Plaintiffs generally fail to support their contentions with admissible evidence. Plaintiffs' legal arguments likewise are without merit.

For the reasons set forth below and in State Farm's Motion, summary judgment should be entered on both Plaintiffs' claims in favor of State Farm.

## FACTUAL DISCUSSION

Pursuant to Rule 56(c), State Farm supported its summary judgment motion by citations to the record, establishing the absence of any genuine dispute regarding the facts material to its

---

[1] Plaintiffs' Brief in Opposition to Defendant State Farm Fire and Casualty Company's Motion for Summary Judgment, Doc. 134, is referred to herein as the "Opposition" or "Opp'n." State Farm's Memorandum in Support of its Motion for Summary Judgment, Doc. 130-1, is referred to herein as the "Motion" or "Mot."

defenses to Cranfield's and Northpointe's individual claims. Fed. R. Civ. P. 56(c)(1). The burden then shifted to Plaintiffs to demonstrate the existence of specific facts showing a genuine dispute of material fact for trial. *See Bethel v. Jenkins*, 988 F.3d 931, 938 (6th Cir. 2021) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)); *Celotex*, 477 U.S. at 324 (the nonmoving party may not rest on its pleadings; it must come forward with some significant probative evidence to support its claim); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (the burden falls on the nonmoving party to "designate specific facts or evidence in dispute").

Plaintiffs failed to meet their burden here. They ignore State Farm's factual presentation and instead present irrelevant, immaterial, and largely unsupported contentions in their Opposition. State Farm briefly summarizes below the material facts from its Motion that remain undisputed.

## A.     There is No Genuine Dispute of Material Fact on Cranfield's Claim.

Plaintiffs concede that Cranfield's claim was filed outside of the one-year suit limitation period in his policy. *See* Doc. 135 at 11. While they assert waiver and fraudulent concealment in an effort to overcome the limitations bar, they fail to present any evidence showing a genuine dispute of material fact for trial.

Plaintiffs do not dispute any of the facts that State Farm presented about Cranfield's policy, its handling of Cranfield's claim, or its communications with Cranfield and his public adjuster representative. Thus, it is undisputed that Cranfield's policy expressly required that any waiver be in writing to be valid, and that no written waiver was provided by State Farm. Mot. 7. It is further undisputed that, on March 25, 2015, State Farm sent to Cranfield via his experienced public adjuster, Mark Jacoby of Metro Public Adjustment ("Metro"), a letter enclosing its March 2015 estimate for Cranfield's covered property damages and its initial ACV payment. *Id.* at 5-6. It is also undisputed that the March 2015 estimate set forth the method by which ACV would be calculated and specified the estimated repair costs and any applied depreciation for *each* individual

repair task. And, critically, ***Plaintiffs do not dispute that the March 2015 letter (which denied coverage for some of Cranfield's claimed property damages) expressly advised Cranfield of the one-year suit limitation clause in his policy, quoting the relevant language and instructing Cranfield (through Metro) to review it***. *Id.* at 6.

Plaintiffs further do not dispute Jacoby's testimony that he is an experienced public adjuster with an understanding of how depreciation is applied to determine an estimated ACV, and that he knew the depreciation shown on State Farm's March 2015 estimate included labor depreciation. *Id.* at 5-6.[2] Plaintiffs also do not refute Cranfield's testimony that he hired Jacoby to represent him in all aspects of his claim, nor Jacoby's status as a consulting expert retained by Plaintiffs' counsel in labor depreciation matters. *Id.* Plaintiffs have failed to identify a single piece of admissible evidence showing that either Cranfield or Jacoby was prevented from understanding that labor depreciation was applied in calculating the initial ACV payment for Cranfield's loss. They cannot do so. It is undisputed that Cranfield and his public adjuster had all of the materials they needed to identify the fact of labor depreciation—State Farm's alleged wrongful conduct. Indeed, they cite these very estimate materials in the Third Amended Complaint as evidence of State Farm's application of labor depreciation. Mot. 16.

To be sure, Plaintiffs do *argue* that there is a genuine dispute regarding whether Cranfield or Jacoby knew or could have discovered that State Farm's March 2015 estimate reflected labor deprecation. Opp'n 21. But they provide no evidentiary support for that contention. They do not provide an affidavit from Cranfield. Nor do they provide an affidavit or testimony from Jacoby

---

[2] While Plaintiffs attempt to create a factual smokescreen by citing Jacoby's testimony that his focus at the time was the scope of Cranfield's loss, not depreciation, Opp'n 19, that testimony is immaterial. It does not place in dispute Jacoby's testimony about his understanding of the March 2015 estimate. Mot. at 5-6. Nor does that testimony refute any of the information that was given to Cranfield and Jacoby.

that supports that contention. Instead, they misstate the substance of testimony from *State Farm's witnesses*.[3] The testimony Plaintiffs cite is immaterial to the relevant question: Did *Cranfield* or *Jacoby* know—or could they have discovered—that State Farm's initial ACV payment applied labor depreciation? *See Doe v. Archdiocese of Cincinnati*, 849 N.E.2d 268, 279 (Ohio 2006) ("We hold that Doe's cause of action was not concealed *from him*—i.e., *he knew or should have known* all of the elements of potential causes of action against the archdiocese within two years after he reached majority.") (emphasis added). As to that question, Plaintiffs have failed to create a genuine dispute of material fact.

### B.     There is No Genuine Dispute of Material Fact on Northpointe's Claim.

As with Cranfield's claim, Plaintiffs do not dispute any of the material facts that State Farm presented in its Motion regarding Northpointe's policy, State Farm's handling of Northpointe's claim, or State Farm's communications during claim handling with Northpointe and its labor depreciation attorney representative, Stephen Whetstone. Those undisputed facts include that Northpointe's interest-only claim was added to this case after the two-year suit limitations period in its policy had expired; that Northpointe's policy was not part of the originally asserted class definition (a fact this Court also has recognized, Doc. 135 at 9); that Northpointe's policy (like Cranfield's) required that any waiver be in writing to be effective; that no evidence of any written waiver has been submitted, Mot.10; and that State Farm expressly informed Northpointe with its

---

[3] While Plaintiffs contend that State Farm's witnesses testified that they "could not tell if [Cranfield's] estimate included labor depreciation," Opp'n 2, that contention is unsupported by the record. In fact, each of State Farm's witnesses testified that Cranfield's estimates showed that labor depreciation was being applied in calculating ACV; State Farm's witnesses merely acknowledged that the *specific amount* of labor depreciation was not spelled out on the estimates. Sandvick Tr., Ex. 1, at 93:18-94:9, 95:24-96:2 (witness testifying that Cranfield's March 2015 estimate showed labor depreciation; specifically, for removal); McKitterick Tr., Ex. 2, at 66:3-17 (witness testifying that you can determine from Cranfield's March 2015 estimate that labor has been depreciated to calculate ACV); Walton Tr., Ex. 3, at 71:18-72:4 (estimate reflects depreciation applied, including components of labor).

ACV payment that "All policy provisions apply to your claim." Doc. 130-9 at 135. Finally, Plaintiffs do not dispute that Whetstone negotiated a settlement payment for Northpointe with State Farm that was higher than the amount State Farm initially had proposed to pay and that, on Northpointe's behalf, Whetstone accepted the same in full and final settlement of Northpointe's claim. Mot. at 9-10.

As they did with Cranfield, Plaintiffs *argue* that Northpointe and Whetstone did not know, and could not have discovered, that State Farm had applied labor depreciation when calculating the ACV payment to which Northpointe agreed as part of the overall settlement of its claim. Opp'n 7, 30. Yet, here too, Plaintiffs did not submit an affidavit or declaration from either Northpointe nor Whetstone supporting their purported lack of knowledge or inability to discover the alleged wrongful conduct. *See* Fed. R. Civ. P. 56(c)(4). Nor could they. As State Farm explained in its Motion, Whetstone is one of the labor depreciation attorneys representing Plaintiffs in this litigation. It is undisputed that he is counsel of record for the plaintiffs in over a dozen other asserted labor depreciation class actions in Ohio. Mot. 9. And he has represented to this Court that he has been a certified umpire in insurance appraisals since 2016 and is "proficient" in damages estimating for insurance claims. *Id.* Likewise, as with Cranfield's claim, Plaintiffs pointed in the Third Amended Complaint to Northpointe's estimate as proof that State Farm had applied labor depreciation in paying Northpointe's claim—the very same estimate that Plaintiffs now suggest somehow concealed State Farm's conduct from them. *See* Third Am. Compl., Doc. 103, ¶¶57-61.

## **ARGUMENT**

### I. **Cranfield Fails to Establish a Genuine Dispute of Material Fact as to State Farm's Supposed Waiver of the Suit Limitations Provision in His Policy.**

State Farm demonstrated in its Motion that Cranfield's policy contains a fully enforceable contractual limitations provision and that Cranfield failed to file suit within the time required under

that provision. *See* Mot. 4-5. Indeed, the Supreme Court of Ohio has repeatedly enforced contractual limitations provisions with language virtually *identical* to the provision in Cranfield's policy. *See id.* at 11-12 (citing, *e.g.*, *Dominish v. Nationwide Ins. Co.*, 953 N.E.2d 820, 821 (Ohio 2011)).

In response, Cranfield contends that State Farm purportedly waived its right to enforce the suit limitations provision.[4] Under longstanding Ohio law, Cranfield has the burden to show waiver. *Monreal Funeral Home, Inc. v. Farmers Ins. Co.*, 937 N.E.2d 159, 164 (Ohio Ct. App. 2010) (waiver requires showing "a clear, unequivocal, decisive act of the party against whom the waiver is asserted") (quoting *White Co. v. Canton Transp. Co.*, 2 N.E.2d 501, 505 (Ohio 1936)); *Walls v. Kemper Ins. Companies*, No. 81AP-201, 1981 WL 3580, at *3 (Ohio Ct. App. Nov. 5, 1981) ("The burden of proving the waiver of a policy limitation rests upon the one asserting the waiver…."). Thus, to avoid summary judgment, Cranfield must demonstrate a genuine dispute of material fact as to State Farm's supposed waiver. He fails to do so.

## A. No Waiver Occurred Under the Waiver Provision in Cranfield's Policy.

This Court's consideration of Cranfield's waiver argument must start with his policy. It is undisputed that the policy contains a clause requiring that any waiver be set forth expressly in writing. Mot. 21. Moreover, the Opposition confirms that Cranfield has no evidence of any written

---

[4] While Cranfield also suggests that State Farm supposedly failed to establish an enforceable limitations clause, *see* Opp'n 7, this argument should be rejected out of hand. Cranfield relies exclusively on *Midwest Allergy Associates, Inc. v. The Cincinnati Insurance Company*, No. 82AP-970, 1983 WL 3568 (Ohio Ct. App. June 16, 1983), where the court disallowed a limitations defense because there was no evidence that the clause was a part of the insured's policy. *Id.* at *4. In this case, however, there is no dispute that Plaintiffs' policies each contained a limitations clause; indeed, Plaintiffs attached their policies to the Third Amended Complaint. *See* Doc. 135 at 9 (discussing limitations clauses in Homeowners and Businessowners policies attached to Third Amended Complaint). The limitations provisions in Plaintiffs' policies are fully enforceable under Ohio law. *See* Mot. 11-12.

waiver. On these undisputed material facts alone, summary judgment should be granted to State Farm.

Cranfield's response to this argument is unavailing. Essentially, Cranfield contends that if he can establish State Farm's waiver of the suit limitations provision, then that waiver would also establish waiver of the policy provision requiring that any waiver be set forth in writing. *See* Opp'n 14. Cranfield fails to support this strained argument with any on-point authority. The cases that Cranfield cites all involved express oral agreements by the insurer to modify the policy despite knowledge that the insured had breached the policy. *See Van Dyne v. Fidelity-Phenix Ins. Co.*, 244 N.E.2d 752, 759-60 (Ohio Ct. App. 1969) (agent received notice that insured moved their personal property to a different address than stated on the policy declaration, and agreed to continue coverage and continued to collect premiums); *Assocs. Disc. Corp. v. Habermann*, No. 36191, 1977 WL 201433, at *5 (Ohio Ct. App. Aug. 4, 1977) (insured notified agent that vehicle was subject to a conditional sale in violation of policy, but agent assured insured of continued coverage and continued collecting premiums).

Here, in contrast, Cranfield presents no facts showing that State Farm expressly agreed to modify any provision in his policy. On the contrary, the undisputed material facts show that State Farm specifically informed Cranfield in writing that it would invoke a defense based on the suit limitations clause, if necessary, and that State Farm communicated this position to Cranfield in March of 2015—*seven months* before the limitations period expired. Rather than address State Farm's March 2015 letter in the Opposition, Cranfield ignores it entirely. Because there is no genuine dispute of material fact on this issue, the Court's analysis of the waiver issue need not go any further.

-7-

### B.    The Undisputed Material Facts Defeat Cranfield's Waiver Argument.

Cranfield also argues that, under Ohio law, State Farm necessarily waived the contractual limitations provision in his policy by making its initial ACV payment to him. Opp'n 7-12. This argument is wrong, both on the law and the facts.

As a threshold matter, the Ohio Supreme Court has specifically rejected the *per se* waiver rule that Cranfield asks this Court to adopt. In *Hounshell v. American States Insurance Company*, 424 N.E.2d 311 (Ohio 1981), the principal case relied upon by Cranfield, the Ohio Supreme Court held that whether an insurer has waived a contractual limitations provision by issuing a claim payment depends on the circumstances surrounding the insurer's interactions with that particular insured: "It is *not* our conclusion here that all offers of settlement made by insurance companies to the insured are to be construed as waivers of the time limitation." *Id*. at 432-33 (emphasis added). For example, the Court recognized that waiver generally would not exist "[w]here there is a specific denial of liability upon the policy, either totally or in part," made in connection with an offer of settlement. *Id* at 433. Similarly, if an insurer makes it "clear" when making an offer to the insured that the offer represents "the full extent of its liability, and that it [is] refusing to recognize any further liability," then the insurer can still "rel[y] upon the limitation of action clause within the policy." *Id.* Thus, while the Court in *Hounshell* found that the question of waiver presented in that case needed to be resolved by the trier of fact, it correctly recognized that summary judgment could be granted to insurers in appropriate cases. *See id.* at 432-34. This is such a case.

Specifically, the facts of Cranfield's claim fit squarely into one of the fact patterns that the Court in *Hounshell* recognized would preclude any finding of waiver: State Farm denied "in part" Cranfield's claim when making its initial ACV payment to him. On March 25, 2015, State Farm sent a letter to Cranfield, via Metro, with its initial ACV payment. Doc. 130-6 at 9-13. State Farm's letter clearly set forth that liability was being accepted for some portions of Cranfield's claim, but

that State Farm also was partially denying the claim. *Id.* at 9. Moreover, after describing the partial denial of liability in its letter, State Farm encouraged Cranfield to refer to his policy and *specifically quoted* the suit limitation language from the policy. *Id*. at 13.

Cranfield does not dispute any of these facts. In fact, Cranfield makes no mention of State Farm's March 2015 letter anywhere in the Opposition, even though the letter was a focal point of the arguments in State Farm's Motion, including specifically as to the issue of waiver. *See* Mot. 5-7, 21. Cranfield also does not dispute that there were no other communications between State Farm and Cranfield, or between State Farm and Cranfield's public adjuster, from the time the March 2015 letter was sent until after the suit limitations period had expired. *See id*. at 21-22.

Based on the circumstances of Cranfield's claim, the remaining waiver cases he cites are also inapplicable. In *N.A. Water Systems, LLC v. Allianz Underwriters Insurance Company*, for example, the insurer did not reject any claims, in part or otherwise, until *after* the limitations period had expired. *See* No. 3:04CV7481, 2005 WL 1105069, at *2 (N.D. Ohio May 10, 2005). And in both *Brewer v. Wayne Mutual Insurance* and *Grange Mutual Casualty Company v. Fodor*, the insurers not only waited until after the suit limitation periods had passed before communicating any denial of the claims, they also offered settlements prior to the expiration of the period. *See Brewer*, No. 7-92-6, 1992 WL 393324, at *3 (Ohio Ct. App. Dec. 29, 1992); *Fodor,* 487 N.E.2d 571, 574 (Ohio Ct. App. Dec. 31, 1984). Here, the undisputed evidence is that State Farm partially denied Cranfield's claim *seven months* before the suit limitation period expired, and there are no communications showing any contrary conduct before the expiration of that period.

Cranfield also cites *Rak v. Safeco Insurance Company of America*, 8th Dist. No. 84318, 2004-Ohio-6284, but the insured in *Rak* testified that he never received the letter his insurer sent denying his claim or had otherwise been informed of the denial of his claim. *Id*. ¶25. Here, in

contrast, Cranfield's public adjuster firm (Metro) not only produced the March 2015 letter during discovery, *see* Doc. 109-13; Ex. 1 at 124:4-125:13 (attached hereto), but when Jacoby finally contacted State Farm in November 2015 (after the suit limitations period had expired), he asked for an adjustment of the estimated loss based on the information contained in State Farm's March 2015 letter. *See* Mot. 7.

Finally, while Cranfield correctly notes that he received additional payments after the suit limitations period had expired, Opp'n 9-10, those payments do not restart the limitations period. Ohio law is clear that conduct occurring after the limitations period has passed is immaterial to whether the insurer has waived the suit limitation clause. As explained in State Farm's motion, the only conduct that can give rise to waiver is conduct occurring *during* the limitations period. *See* Mot. 21 (quoting *Friendly Farms v. Reliance Ins. Co.*, 79 F.3d 541, 545 (6th Cir. 1996)).[5] Cranfield does not—and cannot—distinguish the Sixth Circuit's decision in *Friendly Farms*; it is dispositive of his waiver argument.

In sum, because there are no disputed issues of material fact on Cranfield's claim that could support any finding of waiver, State Farm is entitled to judgment as a matter of law.[6]

### C. Cranfield's Purported State of Mind is Irrelevant to the Issue of Waiver.

Cranfield's final waiver argument suggests that the Court should conclude that State Farm waived the limitations provisions in Cranfield's policy because *Cranfield* purportedly did not know that State Farm was depreciating estimated labor costs. *See* Opp'n 12-13. This argument

---

[5] As discussed *supra* at 9, the cases that Cranfield relies upon in support of his waiver argument concerned an insurer's conduct which occurred *before* the limitation period passed, not after. Therefore, those authorities do not undermine or conflict with *Friendly Farms*.

[6] While Cranfield's waiver argument fails for the reasons discussed herein, the fact-based waiver argument in general further demonstrates why—as this Court already has concluded—Plaintiffs' claims cannot be tried on a class-wide basis. *See* Doc. 135 at 13 (denying class certification given the predominance problems presented by the limitations provisions in State Farm's policies).

also fails. Not only does Cranfield attempt to prove his own purported lack of knowledge by relying on misstated testimony from State Farm's witnesses[7] instead of through his own affidavit or one from Jacoby, *see* Fed. R. Civ. P. 56(c)(1)(4) (discussing supporting a genuinely disputed fact through an affidavit or declaration made on personal knowledge), but State Farm is aware of no legal authority supporting a waiver theory based on the alleged state of mind of the *non*-waiving party. Cranfield certainly does not point to any such law. Therefore, summary judgment should be granted in favor of State Farm.

## II. Cranfield Fails to Establish a Genuine Dispute of Material Fact as to State Farm's Alleged Fraudulent Concealment of Its Depreciation Practices.

While Plaintiffs' fraudulent concealment allegations have been a moving target throughout this litigation, their Opposition confirms just how threadbare those claims really are. Plaintiffs' entire fraud theory rests on the following supposed "misrepresentation" that appears on the Building Estimate Summary Guide provided with State Farm's estimates:

> Depreciation - The decrease in the value of property over a period of time due to wear, tear, condition, and obsolescence.

Opp'n 15 (quoting Doc. 103-3 at 3).

Nothing is false about this statement. On the contrary, the statement tracks the dictionary definition of "depreciation." According to Black's Law Dictionary, depreciation is "a decline in an asset's value because of use, wear, obsolescence, or age." DEPRECIATION, Black's Law Dictionary (11th ed. 2019).

Without a false statement, Plaintiffs are left to argue that the dictionary definition of depreciation is a supposed "half-truth" in the context of labor depreciation claims because labor purportedly does not depreciate. *See* Opp'n 15-17. In other words, they contend that State Farm's

---

[7] *See* discussion at note 11, *infra*.

use of the dictionary definition of depreciation fraudulently misled Cranfield into believing that State Farm had applied depreciation only to material costs, not to labor costs, when calculating the estimated ACV for his claim. They contend that this alleged fraud excuses Cranfield's lack of diligence in filing suit.

As explained below and in State Farm's Motion, Plaintiffs' fraudulent concealment theory is legally deficient and factually unsupported. It does not save Cranfield's untimely claim from summary judgment.

### A. Fraudulent Concealment Cannot Be Founded Upon the Parties' Legitimate Dispute Over the Meaning of Ambiguous Language.

Plaintiffs' fraudulent concealment theory, finally explained in their Opposition, crumbles in the face of numerous state supreme court and federal appellate court decisions in labor depreciation cases. The reason is that multiple courts have cited *virtually identical* definitions of "depreciation" in holding as a matter of law that either (1) an insurer's policy expressly permits labor depreciation or (2) the concept of depreciation in general *necessarily* contemplates depreciation of labor costs in the calculation of ACV. *See* Mot. 15 n.2 (citing cases). For example, the Tenth Circuit reasoned as follows in rejecting the same labor depreciation theory asserted here:

> [W]e see no reason to dissect depreciation into separate components of materials and labor costs in the first instance. **"Depreciation" is defined as "[a] decline in an asset's value because of use, wear, obsolescence, or age."** *Black's Law Dictionary* (10th ed. 2014). A "depreciation method" is "[a] set formula used in estimating an asset's use, wear, or obsolescence." *Id. Black's Law Dictionary* describes ten different depreciation methods, none of which involves distinguishing materials from labor costs. Rather, its descriptions focus on the asset itself and various approaches to determining its value as a whole. **Based on the plain and ordinary meaning of "depreciation," a reasonably prudent insured would not expect the insurer to apply such an unorthodox depreciation method when determining actual cash value.**

*Graves v. Am. Fam. Mut. Ins. Co.*, 686 F. App'x 536, 540 (10th Cir. 2017) (emphasis added).

-12-

State Farm acknowledges that the Tenth Circuit's decision in *Graves* is not binding upon this Court. Plaintiffs, however, ignore that the Sixth Circuit upheld the viability of labor depreciation claims under Ohio law (and in this case) only because it found that the term "depreciation" was subject to *two* reasonable interpretations: (1) the reasonable interpretation presented by insurers (and adopted in *Graves*); and (2) the contrary interpretation presented here by Plaintiffs. *See Perry v. Allstate Indem. Co.*, 953 F.3d 417, 422-23 (6th Cir. 2020) (discussing the two "competing reasonable interpretations" of "depreciation"); *Cranfield v. State Farm Fire & Cas. Co.*, 798 F. App'x 929, 930 (6th Cir. 2020) (following *Perry*). Plaintiffs do not explain how State Farm's interpretation of "depreciation" can be both reasonable—and, as the Sixth Circuit acknowledged, reflective of the view adopted by the "majority" of courts nationwide, *Cranfield*, 798 F. App'x at 930—and yet fraudulent at the same time. It cannot.[8]

Moreover, Plaintiffs fail to distinguish the cases cited by State Farm demonstrating that, under well-established law in the Sixth Circuit (and in Ohio), fraud claims cannot be premised upon a legitimate dispute as to the meaning of ambiguous language. *See* Mot. 18-19 & n.5. The only one of the cases that Plaintiffs address is *Blount Financial Services, Inc. v. Walter E. Heller & Co.*, 819 F.2d 151 (6th Cir. 1987), but they focus solely on the alternate grounds for affirmance identified by the Sixth Circuit (that reasonable reliance was missing, *id.* at 153) and ignore the independent holding cited by State Farm (that the parties' legitimate dispute as to what the contract

---

[8] Plaintiffs incorrectly assert that the Sixth Circuit held that labor "is not subject to wear and tear," which they suggest makes State Farm's use of the dictionary definition of "depreciation" a false statement whenever State Farm is applying depreciation to estimated labor costs. Opp'n 17 (quoting *Hicks v. State Farm Fire and Cas. Co.*, 751 F. App'x 703, 709 (6th Cir. 2018)). In fact, however, the Sixth Circuit in *Hicks* merely held that the district court's conclusion in that case represented one "reasonable construction" of the policy and that, because there were *multiple* reasonable constructions, the policy was ambiguous. *See Hicks*, 751 F. App'x at 708-10. Indeed, the language that Plaintiffs misleadingly attribute to "the Sixth Circuit" (Opp'n 17) was in fact language from the district court's decision in that case. *See Hicks*, 751 F. App'x at 709 (quoting *Bailey v. State Farm Fire and Cas. Co.*, No. CIV.A. 14-53-HRW, 2015 WL 1401640, at *6 (E.D. Ky. Mar. 25, 2015)).

-13-

requires "does not give rise to a valid claim for fraud," *id.* at 152). *See* Opp'n 16. Plaintiffs do not even attempt to distinguish the Sixth Circuit's analogous decision in *Willits v. Peabody Coal Co.*, No. 98-5458, 1999 WL 701916, at *11 (6th Cir. Sept. 1, 1999) (holding that summary judgment should have been granted to the defendant on fraud claims that were based upon the parties' legitimate dispute as to the meaning of their contract), or the Ohio Appellate Court's similar decision in *Borden, Inc. v. Milk Mktg., Inc.*, No. 81AP-435, 1982 WL 4274, at *7 (Ohio Ct. App. July 1, 1982) (holding that the trial court should have granted a directed verdict to the defendant on fraud claims that were "based upon ambiguous language in the contract").

Notably, the cases and holdings that Plaintiffs ignore from the Sixth Circuit and Ohio are consistent with courts' treatment of fraudulent concealment allegations nationwide, including in labor depreciation cases. *See, e.g.*, *Branch v. Farmers Ins. Co.*, 311 F.3d 1241, 1243 (10th Cir. 2002) (affirming summary judgment on fraud claims in labor depreciation suit because insurer's interpretation "was a reasonable position taken in litigation of a legitimate coverage dispute"—*not* fraud). Plaintiffs fail to cite any authority to the contrary. For this reason alone, the Court should reject Plaintiffs' fraudulent concealment allegations as a matter of law.

## B.    Cranfield's Fraudulent Concealment Arguments are Factually Unsupported.

While Cranfield presents a variety of arguments in an effort to transform State Farm's use of the dictionary definition of depreciation into fraudulent concealment, he fails to establish a genuine dispute of material fact as to any of the required elements of fraudulent concealment. Simply put, there was no misrepresentation of fact or other affirmative act of concealment in this case, nor any reasonable and actual reliance thereon. *See Archdiocese of Cincinnati*, 849 N.E.2d at 279 (discussing the elements of fraudulent concealment); *Hoeppner v. Jess Howard Elec. Co.*, 780 N.E.2d 290, 297 (Ohio Ct. App. 2002) (same).

### 1. Cranfield Fails to Identify Any Actionable Misrepresentation or Concealment.

As explained above, Cranfield's reliance on the dictionary definition of "depreciation" from State Farm's Building Estimate Summary Guide as a supposed misrepresentation does not create a triable issue of fact because the definition is not false. While Cranfield attempts to cure this problem by arguing that the statement was added to explain to policyholders what State Farm was taking as depreciation and thus operates as a "half-truth" in this case, *see* Opp'n 16-17, as discussed above Cranfield's argument improperly turns a legitimate contract dispute into purported fraud. Cranfield's argument also is not based on a fair reading of the materials State Farm provided to him. In particular, the Building Estimate Summary Guide does not purport to explain what State Farm was applying as depreciation; it merely recites a definition of "depreciation." *See* Doc. 103-3 at 3. Cranfield's argument further ignores that the additional materials he received from State Farm specifically directed him to refer to the line items on his estimate (not the Guide) to understand what State Farm was applying as depreciation. *See* Doc. 130-6 at 16 ("We determined the actual cash value by deducting depreciation from the estimated repair or replacement cost. *Our estimate details the depreciation applied to your loss*.") (emphasis added).

As State Farm demonstrated in its Motion, the estimate it provided to Cranfield showed each individual repair task State Farm had estimated along with the specific amount of depreciation applied to each task. *See* Mot. 15. Moreover, it disclosed that depreciation was applied to repair tasks that necessarily included embedded labor—as Jacoby conceded during his deposition, and as Cranfield affirmatively alleged in his original Complaint. *See id.* 15-16; Doc. 1-1 ¶20. While Cranfield now argues that the estimate did not disclose *how much* depreciation was attributable to estimated labor costs, *see, e.g.*, Opp'n 3, his claims in this case are not based upon depreciation above a certain threshold, but rather upon the *fact* of labor depreciation, which was evident from

the face of his estimate. In short, Cranfield fails to create a factual dispute for trial based upon State Farm's use of the dictionary definition of "depreciation."

The only other alleged "misconduct" identified in the Opposition—State Farm's supposed removal of the "box" of depreciation settings from the Xactimate estimates that it provides to policyholders, *see* Opp'n 5-6, 15—is nothing more than unsupported attorney argument and supposition. Plaintiffs did not ask one witness about State Farm's supposed removal of depreciation settings from its estimates. State Farm, in contrast, submitted a declaration from Claims Section Manager Tyler McKitterick demonstrating that Plaintiffs' assertions are factually unfounded. *See* Doc. 109-6 ¶¶29-30. As Mr. McKitterick explained, the form of State Farm's estimates is similar "to the default form of the 'printed' (*i.e.*, final) estimate that Xactware makes available for use by insurers, in that neither contains any 'box' that identifies the components of depreciation that were applied to the estimate." *Id.* ¶30. Plaintiffs ignore this evidence entirely. They also ignore the fact that their own expert's estimates likewise do not identify any depreciation settings. *See* Doc. 109-10 at 55-68. All of those estimates, however—including Cranfield's—disclose the precise amount of depreciation applied to each repair task shown on the estimate, including those with non-material components.

At bottom, the recurring theme from Cranfield's fraud argument is that because State Farm conceivably *could* have expressly disclosed that labor depreciation was applied (even though Cranfield's estimate clearly implied that it was), State Farm's failure to make such an express disclosure was fraudulent. But that theory of fraud does not fit the facts of this case. To establish fraudulent concealment by omission under Ohio law, the plaintiff must show that the defendant had "an underlying duty to speak." *Randleman v. Fid. Nat'l Title Ins. Co.*, 465 F. Supp. 2d 812, 822 (N.D. Ohio 2006) (Carr, C.J.). Such a duty only exists where, as a result of the parties'

relationship, the allegedly injured party has placed a heightened degree of trust and confidence in the other party and that other party knows it. *Id.* No such relationship existed here. Thus, the fact that more information theoretically *could* have been disclosed on Cranfield's estimate is not actionable as fraudulent concealment under Ohio law. *See id.*; *cf. Shipp v. Farmers Ins. Exch.*, No. 4:14-cv-04003, 2015 WL 2227931, at *4 (W.D. Ark. May 12, 2015) (holding that insurer's "failure to disclose a line item on [its estimate for labor depreciation] is not the type of actively concealed fraudulent action that [is] require[d] to toll the statute of limitations").[9]

While State Farm identified an illustrative list of cases in its Motion, including *Shipp*, rejecting the same arguments that Cranfield has recycled here, *see* Mot. 16-17 (citing cases), Cranfield ignores all of them except for the Illinois Appellate Court's decision in *Jenkins v. State Farm Fire and Casualty Company*, 2017 IL App (1st) 160612-U. But Cranfield's purported distinction of *Jenkins* fails as well. *See* Opp'n 21-22. This case differs from *Jenkins* in just one respect. Whereas the court in *Jenkins* was unable to figure out what was allegedly misleading on State Farm's estimates, Cranfield has spelled it out in underwhelming detail: his fraud claims rest upon the dictionary definition of "depreciation" from his estimate. This added detail does not help, however, for the court in *Jenkins* had the *exact same definition of depreciation* before it and, as here, the plaintiff argued that the materials he got from State Farm "suggest[ed] that depreciation

---

[9] The Ohio Appellate Court decisions that Cranfield cites do not identify a different rule. *See* Opp'n 15-16 (citing *Klasa v. Rogers*, 8th Dist. No. 83374, 2004-Ohio-4490; *Siebert v. Lalich*, 8th Dist. No. 87282, 2006-Ohio-6274; *Long v. Rice*, 992 N.E.2d 1220 (Ohio Ct. App. 2013); *Steiner v. Roberts*, 131 N.E.2d 238 (Ohio Ct. App. 1955)). None of those cases involved insurance, but rather the law regarding required disclosures for sales of real property, *see Klasa*, 2004-Ohio-4490, ¶2; *Siebert*, 2006-Ohio-6274, ¶1; *Steiner*, 131 N.E.2d 238 at 239, and personal property, *see Long*, 992 N.E.2d at 1222. In addition, none of the cases involved concealment by omission—effectively all that is asserted here. *Klasa, Seibert,* and *Steiner* concerned partial factual disclosures about supposedly "limited" incoming water problems that were misleading without disclosure of the missing facts. *See Klasa*, 2004-Ohio-4490, ¶25; *Siebert*, 2006-Ohio-6274, ¶¶37-38; *Steiner*, 131 N.E.2d 238 at 242-43. *Long* concerned a seller's known sale of a "lemon" vehicle as fully operational. *Long*, 992 N.E.2d at 1226. This case does not involve any such misleading, partial factual disclosures.

only applies to materials." *See Jenkins*, 2017 IL App (1st) 160612-U at ¶6 (quoting the definition of "depreciation"), ¶26 (describing the plaintiff's fraud theory). The Illinois Appellate Court nonetheless concluded, correctly, that there was no actionable misrepresentation. *See id.* at ¶29.

The decision in *Jenkins* is not an outlier. On the contrary, it reflects the consistent manner by which Courts nationwide have rejected fraudulent concealment allegations just like the ones Cranfield asserts here, including fraud claims (like Cranfield's) based upon the supposedly misleading definition of "depreciation" on State Farm's estimates. *See, e.g.*, *Wilcox v. State Farm Fire & Cas. Co.*, Civ. No. 14-2798 RHK/FLN, 2015 WL 927093, at *7 (D. Minn. Jan. 16, 2015) (recommending dismissal of fraud claims in labor depreciation suit against State Farm where sole allegation of fraud was estimate's supposed misleading definition of "depreciation" as the "decrease in the value of property over a period of time due to wear, tear, and obsolescence"), report and recommendation adopted in relevant part, Civ No. 14-2798 RHK/FLN, 2015 WL 927342 (D. Minn. Mar. 4, 2015).

### 2.     Cranfield Fails to Create a Genuine Dispute of Material Fact Regarding His Supposed Actual, Reasonable Reliance.

State Farm demonstrated in its Motion that, under Ohio law, fraudulent concealment does not exist if the plaintiff in fact knew or, by exercising reasonable diligence, could have discovered, the facts that allegedly were concealed. Mot. 19. When the fraudulent concealment is based upon an alleged misrepresentation—as Cranfield argues—the standard is even higher: the party claiming fraudulent concealment must prove that the misrepresentation "induced actual reliance that was reasonable and in good faith." *Hoeppner*, 780 N.E.2d at 297. The Opposition barely touches this key element beyond baldly asserting that Cranfield was "diligent" and "had no idea" that State Farm was depreciating labor, Opp'n 21, arguing that Cranfield's public adjuster "did not assess" State Farm's potential depreciation of labor in 2015, *id.* at 19, and suggesting that Cranfield could

not be expected to know how State Farm applied depreciation if State Farm's own employees did not know, *id.* at 21. None of these arguments creates a disputed issue of material fact for trial.[10]

Most importantly, the Opposition points to no testimony from Cranfield or his public adjuster suggesting that they even *read* the alleged "half-truth" that forms the basis for the fraudulent concealment allegations—*i.e.*, the definition of "depreciation" that appears on the Building Estimate Summary Guide—much less that they were misled by it. No such evidence exists. During his deposition, Cranfield was shown a copy of his March 2015 estimate and testified that it did not look familiar and that he did not recall whether he had received it. Cranfield Tr., Ex. 4, at 203:14-204:13; *see also id.* at 219:9-20. Jacoby was also shown a copy of Cranfield's March 2015 estimate and said that to the extent he discussed it at all with Cranfield, he would only have "talked numbers" with him. Doc. 109-4 at 114:10-20. Neither Cranfield nor Jacoby mentioned anything in their depositions regarding the definition of "depreciation" in the Building Summary Estimate Guide, and the Opposition did not attach an affidavit from either of them suggesting that they relied upon it or were misled by it. It is not enough for Cranfield's attorneys to find an isolated sentence in the documents provided to him and then *argue* that the sentence is misleading. *See Hoeppner*, 780 N.E.2d at 297 (plaintiff must show "actual" reliance on the alleged misrepresentation). For this reason alone, Cranfield's fraudulent concealment allegations fail as a matter of law.

The limited arguments that Cranfield does present on the reliance element likewise do not preclude summary judgment. First, while Cranfield argues that he "had no idea" that State Farm

---

[10] While Cranfield also suggests that State Farm supposedly had the burden to prove that his adjuster knew that State Farm had depreciated labor and that State Farm failed to meet this burden, Opp'n 19, he cites no case law for this purported standard. Regardless, as demonstrated herein and in State Farm's Motion, the only reasonable conclusion to be drawn from the undisputed material facts in this case is that Cranfield and his adjuster had more than enough facts to "investigate" Cranfield's potential claims and that the only explanation for Cranfield's untimely filing is his own (and his adjuster's) lack of diligence. *See supra* 8-9.

had depreciated labor, Opp'n 21, he does not cite to supporting evidence as required under Rule 56. *See* Fed. R. Civ. P. 56(c)(1). Second, while Cranfield cites testimony from his public adjuster stating that he "didn't consider" or "assess" whether State Farm had depreciated labor in 2015, Opp'n 19, that testimony is immaterial. The relevant test here is whether Jacoby *could* have discovered the allegedly concealed facts—State Farm's depreciation of labor costs—through the exercise of reasonable diligence. *Zemcik v. LaPine Truck Sales & Equip. Co.*, 706 N.E.2d 860, 865 (Ohio Ct. App. 1998). Cranfield has failed to demonstrate a genuine dispute of material fact on that issue. The undisputed facts show that Jacoby represented Cranfield in 2015 as his professional, licensed public adjuster; that he regularly prepared estimates using Xactimate; that he understood how Xactimate priced individual repairs; and that he understood how depreciation was applied within Xactimate—so much so that Plaintiffs' counsel retained him as their consulting expert in labor depreciation litigation even before filing this case. *See* Mot. 5. In short, Jacoby had the necessary knowledge and documentation to fully "investigate" Cranfield's potential claims in 2015; as a result, there can be no reasonable reliance. *See Archdiocese of Cincinnati*, 849 N.E.2d at 279 (fraudulent concealment failed because plaintiff "had all of the facts necessary to investigate and prosecute his potential causes of action" within the limitations period). Third, Cranfield's rhetorical arguments throughout the Opposition regarding how he could be expected to identify labor depreciation if State Farm's witnesses purportedly did not understand it are just that— arguments. They do not create a genuine issue of material fact as to Cranfield's actual reliance.[11]

---

[11] As noted earlier, *see supra* note 3, Plaintiffs misstate the substance of testimony from State Farm's witnesses on these issues. For example, they highlight the fact that Mr. McKitterick could not identify the precise, data-driven breakdown of the components of non-material depreciation in the Xactimate software that was developed by Xactware Solutions, Inc. (not State Farm), and argue that this lack of knowledge effectively proves that Cranfield and his adjuster could not possibly know whether labor costs were depreciated by looking at an estimate. *See* Opp'n 3. Yet Plaintiffs ignore the more relevant testimony Mr. McKitterick gave when asked whether he could determine if Plaintiffs' estimates reflected the depreciation of estimated labor costs, when he explained how that could be done. *See* Ex. 2 at 66:3-17.

Ultimately, Cranfield's arguments addressing his and Jacoby's purported inability to discover State Farm's labor depreciation practice directly conflict with the allegations in Cranfield's original Complaint. That pleading demonstrates that Cranfield had everything he needed to identify State Farm's practice. It points to State Farm's estimate, identifies "mixed items of labor and materials" to which depreciation was applied, and even calculates a labor depreciation rate for certain repair tasks. *See* Doc. 1-1 ¶20.

In sum, Cranfield's claim fails for the same reasons as the plaintiff's fraud claim in *Archdiocese of Cincinnati*: the complaint demonstrates that "he had all of the facts necessary to investigate and prosecute his potential causes of action" in a timely manner. 849 N.E.2d at 279.

## III.  Northpointe Fails to Establish a Genuine Dispute of Material Fact Sufficient to Avoid Summary Judgment on Any of the Independent Grounds Identified by State Farm.

State Farm demonstrated in its Motion that it is entitled to summary judgment on Northpointe's claim for three independent reasons: (1) the claim was untimely under the two-year limitations provision in Northpointe's policy, which provision was not tolled; (2) State Farm pre-suit had already paid Northpointe in full on its insurance claim and, thus, there are no additional amounts Northpointe could recover in this case; and (3) the parties' negotiation and eventual agreement on a settlement of Northpointe's loss during claim handling operated as an accord and satisfaction barring the claims Northpointe has asserted here. *See* Mot. 22-30.

In response, Northpointe does not dispute *any* of the material facts State Farm set forth in its Motion regarding Northpointe's claim.[12] Moreover, Northpointe completely ignores State

---

[12] At most, Northpointe asserts—albeit without supporting evidence—that it "did not know" State Farm had applied labor depreciation in calculating Northpointe's ACV payment. Opp'n 30. But this unsupported assertion does not create a genuine dispute of material fact for trial given that Northpointe did not discuss or even attempt to dispute the material facts State Farm set forth in its Motion, including the fact that Northpointe's representative during claim handling was one of the labor depreciation attorneys for Plaintiffs in this case and for the plaintiffs in more than a dozen other asserted labor depreciation class actions, who further claims to have a "proficiency" in property damage repair estimating. *See* Mot 26-27.

Farm's argument that Northpointe cannot establish a viable fraudulent concealment defense to the limitations provision in his policy as a matter of law. *See* Mot. 26-27. Northpointe's non-response operates as a forfeiture of any limitations defense based upon fraudulent concealment. *See Navarro v. Procter & Gamble Co*., 515 F. Supp. 3d 718 (S.D. Ohio 2021) (holding that the failure to respond to summary judgment arguments forfeits the issues as to which those arguments are addressed (citing *Notredan, L.L.C. v. Old Republic Exch. Facilitator Co.,* 531 F. App'x 567, 569 (6th Cir. 2013))). As explained below, the few arguments that Northpointe does present in the Opposition do not preclude summary judgment on its claim.

> **A.      Northpointe's Claim is Untimely as a Matter of Law.**

Northpointe does not dispute that its Businessowners policy had a fully enforceable suit limitations provision requiring that any lawsuit be filed within two years of the date of loss, and that Northpointe was not added as a plaintiff in this case until March of 2021—almost *three years* after the limitations period in his policy had expired. *See* Mot. 8. Instead, Northpointe contends that State Farm either waived its right to rely on the limitations provision by making claim payments to Northpointe, *see* Opp'n 8-14, or that the limitations provision in Northpointe's policy was tolled through Cranfield's filing of the original Complaint, pursuant to the class action tolling doctrine recognized in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 554 (1974).[13] The Court should reject both arguments for the reasons set forth below.

> **1.      The Undisputed Material Facts Defeat Northpointe's Waiver Argument.**

Northpointe's waiver argument fails for the same reasons as Cranfield's waiver argument in light of the material, undisputed facts set forth in State Farm's Motion. *See discussion, supra* at

---

[13] As noted earlier, *supra* note 12, Northpointe makes no effort to defend its fraudulent concealment allegations and, accordingly, has waived the right to rely on that theory as a basis for tolling.

6-11. First, similar to Cranfield's Homeowners policy, Northpointe's Businessowners policy also contained a non-waiver provision requiring that any waiver be expressly documented in writing. *See* Doc. 130-8 at 30. Yet Northpointe, just like Cranfield, submitted no evidence of such a written waiver here. *See supra* at 6-7.

Second, similar to the letter State Farm sent to Cranfield with his ACV payment, State Farm's letter to Northpointe with its ACV payment also specifically indicated that State Farm was *not* waiving any of the provisions in Northpointe's policy. The letter, dated June 6, 2016, expressly advised Northpointe that, even though State Farm had agreed to make a claim payment, "All policy provisions apply to your claim." Doc. 130-9 at 135. Such an express reservation of rights is inconsistent with Northpointe's "implied" waiver theory. *See supra* at 7.

And finally, like Cranfield's claim, Northpointe's claim tracks one of the fact patterns that the Ohio Supreme Court in *Hounshell* concluded would refute any alleged waiver. In particular, State Farm made it "clear" that its payments to Northpointe represented "the full extent of its liability." 424 N.E.2d at 315. As explained in State Farm's Motion, State Farm and Northpointe engaged in extensive negotiations regarding the amount of Northpointe's claim and State Farm agreed to make claim payments to Northpointe only after the parties had reached agreement on the maximum amount State Farm would pay on the loss. *See* Mot. 29-30; *see also infra* at 28-29. On these facts, State Farm is entitled to "rel[y] upon the limitation of action clause within the policy." *Hounshell*, 424 N.E.2d at 315. No waiver exists as a matter of law.

## 2. The Undisputed Material Facts Defeat Northpointe's Tolling Argument.

As this Court has already concluded, and as State Farm demonstrated in its Motion, Northpointe's Businessowners policy "was not part of the originally-asserted Class definition," Doc. 135 at 9, because that definition was expressly limited to persons "insured under a State Farm

*homeowners'* policy." Doc. 1-1 ¶31 (emphasis added); *see also* Mot. 24. That fact is significant, for the class-action tolling rule recognized in *American Pipe* does not apply to extend the claims of anyone who was not included in the original class definition. *See* Mot. 23-26.

Rather than disputing the facts material to this issue, Northpointe simply ignores them. That is, Northpointe selectively quotes from Cranfield's original Complaint, *see* Opp'n 22, and fails to acknowledge the multiple places in that pleading where Cranfield clearly demonstrated that he intended to represent an asserted class limited to homeowners' insureds. *See, e.g.*, Doc. 1-1 ¶31 (stating that "Cranfield seeks to represent a class consisting of all persons and entities insured under a State Farm *homeowners'* policy . . .") (emphasis added); *id.* at ¶¶29-30 (alleging that State Farm's conduct resulted in "class members" receiving less than they were owed "under their *homeowners'* insurance policies," and that State Farm's conduct breached its "*homeowners'* policies") (emphasis added).

In addition, while Northpointe argues extensively that its claim did not satisfy the *exclusions* from the original class definition, Opp'n 23, even if that contention were true (and it is not[14]), it is immaterial. The fact that Northpointe's claim purportedly did not meet an exclusion from the class definition does not establish that Northpointe's claim fell *within* the class definition; the exclusions only apply to homeowners' claims that are already within the class definition.

In sum, because the Court correctly concluded that Northpointe's policy was not within the class definition from Cranfield's original complaint, the two-year period for Northpointe to file suit under its policy was not tolled under *American Pipe*, and its claims therefore expired in 2018.

---

[14] While Northpointe contends that State Farm "never paid all the depreciation" it applied in determining Northpointe's ACV payment, Opp'n 22, that contention is refuted by the undisputed material facts showing that, pursuant to the parties' negotiated settlement, State Farm paid Northpointe first an agreed ACV and then, after repairs were completed, the agreed remaining depreciation that had been applied to the ACV payment. *See infra* at 28-29.

**B.     Northpointe Has No Viable Claim for Breach of Contract as a Matter of Law.**

In addition to demonstrating that Northpointe's claim is time-barred, State Farm also showed that Northpointe has no viable claim for breach of contract under Ohio law. In particular, the undisputed material facts confirm that State Farm paid Northpointe the full amount available under its policy (its "cost to repair") in an agreed settlement amount years before Northpointe was added to this case as a plaintiff, thereby defeating Northpointe's claim to prejudgment interest and operating as an accord and satisfaction to preclude Northpointe from pursuing any further claim for damages in this case. Mot. 27-30.

Once again, Northpointe does not dispute any of the facts State Farm presented in its Motion. Instead, Northpointe (i) incorrectly *assumes* that prejudgment interest is recoverable; (ii) mischaracterizes State Farm's fully agreed upon claim payments as purported "installment" payments; and (iii) presents arguments about its understanding of State Farm's estimates without any evidentiary support. Northpointe's arguments are unavailing.

**1.     The Undisputed Material Facts Defeat Northpointe's Claim for Prejudgment Interest.**

Northpointe's prejudgment interest arguments seriously misstate the applicable law. First, Northpointe suggests that the Sixth Circuit has already decided that "State Farm's insureds are 'eligible for damages in the form of prejudgment interest.'" Opp'n 25 (quoting *Hicks v. State Farm Fire & Cas, Co.*, 965 F.3d 452, 463 (2020)). Not so. In fact, the Sixth Circuit in *Hicks* (applying Kentucky law) expressly *declined* to decide whether prejudgment interest was available for policyholders—like Northpointe here—who have been paid in full under their policies. *Hicks*, 965 F.3d at 463. As demonstrated by the full sentence from the *Hicks* opinion that Northpointe selectively quotes, the Sixth Circuit in *Hicks* was merely observing that the plaintiffs in that case *sought* prejudgment interest for these insureds—not that they were entitled to it. *See id.* ("In any

case, Plaintiffs' complaint and damages formula include *the claim* that even those class members who recovered depreciated labor costs are eligible for damages in the form of prejudgment interest.") (emphasis added).

Second, Northpointe suggests that payment of prejudgment interest in Ohio is purportedly "require[d]." Opp'n 25 (citing R.C. 1343.03). Once again, this assertion is false. As the Ohio Supreme Court has explained, prejudgment interest may be—but is not always—awarded on breach of contract claims in Ohio. *Royal Elec. Constr. Corp. v. Ohio State Univ.*, 652 N.E.2d 687, 692 (Ohio 1995). Moreover, to the extent interest is awarded, it is not designed to punish but rather to "make the aggrieved party whole." *Id.* Thus, "in determining whether to exercise its discretion and award prejudgment interest pursuant to R.C. 1343.03(a), a court need only ask one question: 'Has the aggrieved party been fully compensated?'" *Wasserman v. The Home Corp.*, 8th Dist. No. 90915, 2008-Ohio-5477, ¶7 ("[P]rejudgment interest is not an entitlement in every breach of contract action."). For Northpointe, the answer is clearly "yes."

Specifically, the undisputed material facts demonstrate that State Farm promptly paid Northpointe its *full costs* incurred for repairs (less its deductible), including all recoverable depreciation, on July 25, 2016—the same day that Northpointe advised that the repair work had been completed. Mot. 9-10, 27-28. That was the maximum amount Northpointe could have received under its policy. *See* Doc. 130-8 at 61 (stating that State Farm "will pay the cost to repair or replace" but "not more" than that amount). Furthermore, it was the exact amount that State Farm and Northpointe's labor depreciation attorney, Whetstone, had previously agreed Northpointe would receive (assuming repairs were completed) when they reached an agreed settlement of Northpointe's claim. The only reasonable inference from these undisputed facts is that Northpointe has been fully compensated.

That conclusion is only strengthened by Northpointe's undisputed failure to submit a proof of loss for any alleged underpayment as required under its policy, which requirement Ohio courts have enforced as a precondition to an insurer's liability for prejudgment interest. *See* Mot. 28-29 (citing cases). While Northpointe contends that its failure to submit a proof of loss is somehow excused by Ohio's insurance regulations, *see* Opp'n 29-30, the regulation it cites—Ohio Admin. Code 3901-1-54(G)(1)—does not apply. That regulation requires an insurer to provide a claimant with a proof of loss form and instructions for completing it, but only if the "form" of the proof of loss is material to the insurer. *Id.*[15] Here, while Northpointe's policy makes clear that no amount is due until after the policyholder has submitted "a properly executed proof of loss," it does not require any particular form for that document. Doc. 130-8 at 16. As a result, State Farm was not required to provide Northpointe with a proof of loss form and instructions for completing it. Northpointe's undisputed failure to submit such a form thus is further dispositive of its claim.[16]

### 2. The Undisputed Material Facts Refute Northpointe's "Installment Payment" Theory.

In an effort to transform State Farm's full payment of Northpointe's claim into something less than that and avoid summary judgment, Northpointe mischaracterizes the agreed settlement payment that its counsel accepted for ACV as a purported "installment due under the contract."

---

[15] In other words, as the regulation explains, "[a]n insurer shall not otherwise deny a claim solely on the basis the proof of loss is not on the insurer's usual form." Ohio Admin. Code 3901-1-54(G)(1).

[16] While Northpointe also contends that State Farm waived the proof of loss requirement by making a payment on its claim, Opp'n 29, the sole authority Northpointe cites, *Dehart v. Aetna Life Insurance Company*, 8th Dist. No. 42932, 1982 WL 2473 (Ohio Ct. App. July 15, 1982), does not support its argument. In fact, the court in *Dehart* reached the *opposite* conclusion, finding that the insurer did *not* waive its right to deny interest by making a payment on the claim. *Id.* at *6 (holding that Aetna had a "legal right to dishonor the claim" and should not be additionally "penalized" by being liable for interest). Contrary to Northpointe's argument, Ohio courts have consistently refused to award prejudgment interest in the absence of a properly submitted proof of loss. *See, e.g., Evanoff v. The Standard Fire Ins. Co.*, No. 1:07CV00631, 2007 WL 2407069, at *4 (N.D. Ohio Aug. 21, 2007) (granting summary judgment to insurer where plaintiff failed to refute insurer's evidence that a proof of loss was not filed as required); *Gourmet Café v. Travelers Indem. Co.*, No. 5:01CV2658, 2003 WL 27381210, at *11 (N.D. Ohio June 10, 2003) (same).

Opp'n 27. There is no affidavit from either Whetstone or a representative of Northpointe showing that this was their understanding of the payment; Northpointe's characterization of the payment is simply argument. Nonetheless, according to Northpointe, because this "installment" payment was lower than it should have been due to labor depreciation, it began accruing interest immediately, which means (again, per Northpointe) that State Farm's subsequent full payment to Northpointe did not in fact constitute a payment of all amounts due under Northpointe's policy. *See id.*

Northpointe's "installment" theory fails for a simple reason: State Farm's ACV payment to Northpointe was not an "installment" payment, but rather a previously agreed-upon payment (down to the penny) made as part of the full settlement of Northpointe's claim. The undisputed record evidence confirms the nature of State Farm's payment.

In particular, after State Farm had completed its inspection of Northpointe's claim, Northpointe and State Farm submitted competing estimates of the damage with materially different repair costs, and State Farm then made an effort to reconcile the differences. *See* Doc. 130-9 ¶16. On June 6, 2016, State Farm provided Northpointe (via its counsel, Whetstone) with a second, revised estimate. The new estimate reflected a higher estimated replacement cost than had appeared on State Farm's initial estimate, $453,594.61, with total depreciation of $209,626.09, resulting in an ACV payment of $173,957.22. Mot. 9. After discussing the settlement with his client (Northpointe), Whetstone expressly accepted the settlement offer for Northpointe. *See id.* at 10. State Farm subsequently issued the ACV payment pursuant to the agreed settlement figures. *Id.* And as agreed by the parties, Northpointe was to receive the depreciation as replacement cost benefits upon its completion of actual repairs. *Id.* Importantly, however, the parties did *not* agree to any provisions allowing for interest between payments. Instead, once Northpointe's attorney submitted confirmation of the completed work, State Farm issued a second check for the remaining

-28-

amounts that the parties had previously agreed would be paid in settlement of Northpointe's claim. *Id.*; *see also* Doc. 130-9 ¶23 (Northpointe's request for the release of depreciation based on the amounts to which State Farm and Northpointe previously "had agreed"). Northpointe did not challenge State Farm's calculation of ACV, including the application of labor depreciation in the calculation, at any point during these negotiations, and instead affirmatively accepted State Farm's settlement terms—including the amount the ACV payment—*before* ACV was paid.

As State Farm demonstrated in its Motion, Ohio law is clear that there is no cause of action for prejudgment interest on a debt where the complaining party has accepted payment of the principal. *See, e.g.*, *Prepakt Concrete Co. v. Koski Constr. Co.*, 573 N.E.2d 209, 211 (Ohio Ct. App. 1989) ("Various courts have interpreted [Section 1343.03(A)] to apply to debt obligations *only* when the principal has not been fully paid prior to commencement of suit.") (emphasis added); *Kuntz Drug Stores, Inc. v. Ohio Dep't of Pub. Welfare*, No. 82AP-23, 1982 WL 4316, at *2 (Ohio Ct. App. Aug. 3, 1982) (no interest owing because "claims were extinguished (paid) prior to commencement of the action"); *Gawne v. Casanova*, 90 N.E.2d 444, 445 (Ohio Ct. App. 1948) ("[A]n action to recover the interest cannot be maintained after the payment of the principal, as such interest cannot exist without the debt, and, the debt being extinguished, the right to claim interest must necessarily be extinguished also."). Northpointe's cited authorities on the calculation and application of interest to partial or installment payments (*see* Opp'n 24) are simply inapposite here, given that Northpointe accepted State Farm's settlement offer (including its ACV calculation) before *any* payments were made. Having already received full payment on its claim, Northpointe has no cause of action for breach of contract as a matter of law.

3.      **The Undisputed Material Facts Establish Accord and Satisfaction, Thereby Defeating Northpointe's Claim.**

Finally, State Farm demonstrated in its Motion that, based on the undisputed material facts, Northpointe's claim is barred by the doctrine of accord and satisfaction. Mot. 29-30. Northpointe's only response to this showing is to argue that it supposedly did not know that labor depreciation had been applied when State Farm calculated its ACV payment. Opp'n 30. Yet Northpointe provides no evidence in support of this contention; there is no affidavit or declaration submitted from an officer of Northpointe or from Northpointe's labor depreciation attorney, Whetstone. *See* Fed. R. Civ. P. 56(c)(4). Moreover, the undisputed evidence submitted by State Farm shows that (1) Northpointe's attorney *knew* the material facts to the accord—the offer and its basis (including the method by which State Farm calculated the offer); and (2) State Farm's accord was accepted in settlement of Northpointe's claim in its entirety. Therefore, the undisputed material facts show that State Farm is entitled to judgment as a matter of law on Northpointe's claim pursuant to the doctrine of accord and satisfaction.

## **CONCLUSION**

For the foregoing reasons, Defendant State Farm Fire and Casualty Company respectfully requests that judgment be entered in its favor on the individual claims brought by Plaintiffs Charles Cranfield and The Condominiums at Northpointe.

Dated: August 20, 2021                    Respectfully submitted,

                                          */s/ Jacob L. Kahn*
                                          _____

                                          Karl A. Bekeny
                                          Benjamin C. Sassé
                                          Elisabeth C. Arko
                                          Tucker Ellis LLP
                                          950 Main Avenue, Suite 1100
                                          Cleveland, OH 44113-7213
                                          T: 216.592.5000
                                          F: 216.592.5009

karl.bekeny@tuckerellis.com
benjamin.sasse@tuckerellis.com
Elisabeth.arko@tuckerellis.com

Joseph A. Cancila, Jr. (IL #6193252)
Jacob L. Kahn (IL #6296867) (*pro hac vice*)
Brian Neff (NY # 4304648) (*pro hac vice*)
Rachel F. Sifuentes (IL #6304016) (*pro hac vice*)
Allison N. Siebeneck (IL #6313603)
Riley Safer Holmes & Cancila, LLP
70 W. Madison Street, Suite 2900
Chicago, IL 60602
T: 312.471.8700
F: 312.471.8701
jcancila@rshc-law.com
jkahn@rshc-law.com
bneff@rshc-law.com
rsifuentes@rshc-law.com
asiebeneck@rshc-law.com

*Attorneys for Defendant State Farm Fire and Casualty Company*

## LOCAL RULE 7.1(f) CERTIFICATION

I hereby certify that this case has been assigned to the complex track, Doc. 62, and that this memorandum adheres to the thirty (30) page limitation for reply briefs in support of dispositive motions in complex track cases, as set forth in Local Rule 7.1(f).

/s/ Jacob L. Kahn
*One of the Attorneys for Defendant State Farm Fire & Casualty Company*